*Exhibit A*

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
COUNTY OF SKAGIT

**11 2 01156 1**

JOSEPH JEROME WILBUR, a Washington resident; JEREMIAH RAY MOON, a Washington resident; and ANGELA MARIE MONTEGUE, a Washington resident, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CITY OF MOUNT VERNON, a Washington municipal corporation; and CITY OF BURLINGTON, a Washington municipal corporation,

Defendants.

NO.

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiffs Joseph Jerome Wilbur, Jeremiah Ray Moon, and Angela Marie Montague ("Plaintiffs"), by and through their respective undersigned counsel, upon knowledge with respect to their own acts and circumstances, and on information and belief as to other matters, allege as follows:

## I. INTRODUCTION

1.    The Sixth and Fourteenth Amendments to the United States Constitution and Sections 3 (due process), 12 (equal protection), and 22 (right to counsel) of Article I of the



COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 1

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Washington State Constitution guarantee indigent persons charged with crimes the right to effective assistance of counsel. This right is fundamental and is essential to a fair trial. *See Gideon v. Wainwright*, 372 U.S. 335, 342-45, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972).

2.     Defendant City of Mount Vernon ("Mount Vernon") and Defendant City of Burlington ("Burlington") (collectively "Defendants") have a constitutional duty to operate a public defense system that provides effective assistance of counsel to indigent persons charged with crimes.

3.     Mayor Bud Norris is the executive officer of Mount Vernon and is responsible for the execution of policies set by Mount Vernon's city council. Mayor Norris is assisted in the performance of his duties by Project Administrator Eric Stendal and City Attorney Kevin Rogerson. The members of Mount Vernon's city council are Bob Fiedler, Joe Lindquist, Scott McMullen, Gary Molenaar, Ken Quam, Dale Ragan and Mike Urban.

4.     Mayor Edward J. Brunz is the executive officer of Burlington and is responsible for the execution of policies set by Burlington's city council. Mayor Brunz is assisted in the performance of his duties by City Attorney Scott G. Thomas. The members of Burlington's city council are Ted Montgomery, Edie Edmundson, Joanne Valentine, Tonya Bieche, Chris Loving, Bill Aslett and Steve Sexton.

5.     The mayors of Mount Vernon and Burlington, the mayors' assistants, and the city council members are responsible for establishing, implementing, and maintaining their public defense system.

6.     Defendants, under the direction of their respective mayors and city councils, have breached their constitutional duties by operating a public defense system that regularly and systematically deprives indigent persons of the right to assistance of counsel. Among other things, Defendants have failed to impose reasonable caseload limits on public defenders, have failed to monitor and oversee the public defense system, have failed to provide adequate funds

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 2

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 816 6603 • FAX 206.350 3528
www.tmdwlaw com

for public defense, and have failed to provide representation at all critical stages of prosecution. As a result of these systemic and structural deficiencies, Defendants have constructively denied indigent defendants of the right to counsel that is guaranteed under *Gideon*.

7.    Defendants, through their officers, representatives and employees, have known of the structural deficiencies of their public defense system for many years. Numerous complaints have been lodged regarding Richard M. Sybrandy and Morgan M. Witt, both of whom have long provided the primary public defender services for Mount Vernon and Burlington under contracts with Defendants. Those complaints detail a systemic denial of the constitutional right to assistance of counsel. Furthermore, Sybrandy and Witt have submitted reports to Defendants showing that each attorney handles between 950 and 1,150 public defense cases per year, if not more, while also maintaining a busy private practice. Remarkably, Defendants' contract with Sybrandy and Witt allows each attorney to handle up to 1,200 cases per year even though such a caseload is three times the maximum allowable amount for a full-time public defender pursuant to standards established by the Washington State Bar Association. Despite being aware of the extensive number of indigent defendants who need assistance of counsel each year, Defendants have failed to provide adequate funding for their public defense system.

8.    Despite knowing of the deficiencies in their public defense system, Defendants have failed to take reasonable steps to protect the constitutional rights of indigent persons. Indeed, Defendants recently chose to extend their contract with Sybrandy and Witt by two years.

9.    Indigent persons have suffered and continue to suffer harm as a result of Defendants' violations of constitutional rights. Among other things, indigent persons are deprived of adequate consultation and communication with their attorneys; indigent persons must make decisions about their rights or contest issues without adequate factual or legal investigation by their attorneys; indigent persons are deprived of meaningful opportunities to

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 3

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-6869
TEL. 206 816 6603 • FAX 206.350 3528
www.tmdwlaw.com

present defenses; the rights of indigent persons are waived without proper consultation and advice; indigent persons are deprived of the services of investigators and expert witnesses; the cases of indigent persons are not properly prepared for trial; and indigent persons do not receive meaningful benefits in exchange for guilty pleas.

10.    Pursuant to 42 U.S.C. § 1983, the Sixth and Fourteenth Amendments to the United States Constitution, and Sections 3, 12, and 22 of Article I of the Washington State Constitution, Plaintiffs bring this class action lawsuit to ask this Court for injunctive and declaratory relief to prevent further violations and to protect the constitutional rights of all indigent persons charged with crimes in the municipal courts of Mount Vernon and Burlington.

## II. JURISDICTION AND VENUE

11.    The Court has jurisdiction over this action pursuant to 42 U.S.C. § 1983 in that this is an action for deprivation of rights, privileges and immunities secured by the United States Constitution.

12.    The Court has jurisdiction over this action pursuant to Article IV, Section 6 of the Washington State Constitution and RCW 2.08.010 in that this is a case in equity.

13.    The Court has jurisdiction over this action pursuant to Article IV, Section 6 of the Washington State Constitution and RCW 2.08.010 in that exclusive jurisdiction over this matter has not been vested in some other court.

14.    Venue is proper in this Court pursuant to RCW 4.12.025(1) because Defendants are located and reside in Skagit County.

## III. THE PARTIES

15.    Plaintiff Joseph Jerome Wilbur is an indigent person who has been charged with crimes in Burlington Municipal Court. Plaintiff Wilbur has been assigned a public defender and, as of the date of the filing of this complaint, that public defender was Richard Sybrandy. Plaintiff Wilbur's case in Burlington Municipal Court is currently pending.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 4

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816 6603 • FAX 206 350.3528
www.tmdwlaw.com

16.    Plaintiff Jeremiah Ray Moon is an indigent person who has been charged with crimes in Mount Vernon Municipal Court. Plaintiff Moon has been assigned a public defender and, as of the date of filing of this complaint, that public defender was Morgan Witt. Plaintiff Moon's case in Mount Vernon Municipal Court is currently pending.

17.    Plaintiff Angela Marie Montague is an indigent person who has been charged with crimes in Burlington Municipal Court. Plaintiff Montague has been assigned a public defender and, as of the date of the filing of this complaint, that public defender was Morgan Witt. Plaintiff Montague has been sentenced in relation to the charges filed in Burlington Municipal Court, but her case remains in active status because she has the right to seek in-patient treatment in lieu of jail time.

18.    Defendant City of Mount Vernon is a Washington municipal corporation located in Skagit County.

19.    Defendant City of Burlington is a Washington municipal corporation located in Skagit County.

## IV. CLASS ACTION ALLEGATIONS

20.    Plaintiffs Wilbur, Moon, and Montague (collectively, the "Class Plaintiffs") bring this action pursuant to Civil Rule 23(a) and (b)(2) on behalf of themselves and all others similarly situated (collectively the "Class Members") as members of the following proposed plaintiff class (the "Class"):

> All indigent persons who have or will have criminal cases pending in the municipal courts of either Mount Vernon or Burlington, who are appointed an attorney, and who have not entered into a plea agreement or been convicted.

21.    The Class is so numerous that the individual joinder of all members is impracticable. At any point in time, scores of indigent persons with criminal cases pending in the municipal courts of Mount Vernon or Burlington rely on appointed counsel for legal representation.

22.    There are questions of law and fact common to the Class.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 5

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 816 6603 • FAX 206 350 3528
www.tmdwlaw.com

23.    The questions of law and fact common to all members of the Class include but are not limited to: (a) whether Defendants have a duty to provide indigent persons charged with crimes with assistance of counsel; and (b) whether Defendants have breached their duties.

24.    The Class Plaintiffs' claims are typical of the claims of the Class.

25.    The Class Plaintiffs will fairly and adequately protect the interests of the Class. There are no conflicts of interest between the Class Plaintiffs and other Class Members. The Class Plaintiffs will vigorously prosecute this action on behalf of the Class. The Class Plaintiffs are represented by competent counsel who will vigorously prosecute the case on behalf of the Class.

26.    Defendants have acted or refused to act on grounds generally applicable to the entire Class.

27.    The claims asserted herein are capable of repetition while evading review. There is a continuing and substantial public interest in these matters.

## V. FACTS ENTITLING PLAINTIFFS TO RELIEF

**A.    Defendants' Duty to Provide Effective Assistance of Counsel for Indigent Persons Charged with Crimes**

28.    The Sixth and Fourteenth Amendments to the United States Constitution and Sections 3, 12, and 22 of Article I of the Washington State Constitution guarantee to every indigent person charged with a crime the right to effective assistance of counsel.

29.    Each Defendant has a constitutional duty to provide every indigent person charged with a crime in that city's municipal court with effective assistance of counsel.

30.    The Washington State Legislature has specifically found that effective legal representation should be provided for all indigent persons where the right to counsel attaches: "The legislature finds that effective legal representation should be provided for indigent persons and persons who are indigent and able to contribute, consistent with the constitutional requirements of fairness, equal protection, and due process in all cases where the right to counsel attaches." RCW 10.101.005.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 6

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

31.    Washington law requires cities to adopt specific standards for the delivery of public defense services and provides that "the standards endorsed by the Washington State Bar Association for the provision of public defense services may serve as guidelines to contracting authorities." RCW 10.101.030. A copy of the standards endorsed by the Washington State Bar Association for the provision of public defense services (the "WSBA Standards") is attached hereto as Exhibit A.

32.    Defendants have failed to comply with RCW 10.101.030. Instead, Defendants have established a public defense system that falls short of the requirements of RCW 10.101.030 and deviates in important respects from the WSBA Standards.

**B.    Overview of Defendants' Public Defense Contract System**

33.    For nearly a decade, Defendants have jointly maintained a contract system of providing for the defense of indigent persons charged with crimes in the municipal courts of Mount Vernon and Burlington.

34.    Under that system, Defendants have contracted with two attorneys—Richard Sybrandy and Morgan Witt—to provide all indigent defense services in the municipal courts of Mount Vernon and Burlington except where those attorneys determine there is an actual legal, ethical or professional conflict of interest as prohibited by RPC 1.6 – 1.8.

35.    The current contract between Defendants and Sybrandy/Witt is dated January 1, 2009 and titled as follows:

City of Mount Vernon
City of Burlington
Public Defense Services 2009 – 2010
Contract for Services

(the "Contract"). A copy of the Contract is attached hereto as Exhibit B.

36.    On December 15, 2010, pursuant to the First Amendment to City of Mount Vernon and City of Burlington Public Defense Services Contract (the "Amendment"),

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 7

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206 816 6603 • FAX 206 350.3528
www.tmdwlaw.com

Defendants and Sybrandy/Witt agreed to extend the duration of the Contract by two years to December 31, 2012. A copy of the Amendment is attached hereto as Exhibit C.

37. Under the Contract, Sybrandy and Witt are referred to as the single "Public Defender." The Public Defender's clients include all indigent persons who are assigned to the Public Defender by the City of Mount Vernon, the City of Burlington, the Office of Assigned Counsel, or the municipal courts of Mount Vernon and Burlington.

38. Pursuant to the Contract, Mount Vernon pays Sybrandy/Witt (as the Public Defender) "$117,400/year for combined services, or $121,750/year if arraignment is necessary as described [in the Contract]." Burlington pays Sybrandy/Witt (as the Public Defender) "$57,600/year for combined services, or $60,750/year if arraignment is necessary as described [in the Contract]." The Contract provides "[t]he Public Defender shall invoice each City on a monthly basis," and "[t]he cities shall divide each monthly amount equally between each primary defender who is a signatory to [the Contract]."

39. Pursuant to the Contract, the Public Defender "shall provide adequate investigative, paralegal, and clerical services and facilities necessary for representation of indigent defendants," and these services shall be paid out of the compensation provided to the Public Defender. Likewise, "[a]dministrative expenses shall be paid out of compensation provided to the Public Defender." Finally, expert services must be paid out of the Public Defender's compensation unless those services have been approved by a court.

C.  **Defendants Have Failed to Impose Reasonable Caseload Limits on Sybrandy and Witt**

40. Defendants have failed to impose reasonable caseload limits on Sybrandy and Witt. As a result, the indigent defense caseloads of Sybrandy and Witt are excessive.

41. The WSBA Standards provide that "[a] case is defined as the filing of a document with the court naming a person as defendant or respondent, to which a public defense attorney is appointed in order to provide representation."

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 8

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

42.     The WSBA Standards provide that "[t]he caseload of a full-time public defense attorney or assigned counsel shall not exceed . . . 300 misdemeanor cases per attorney per year." This caseload "may be adjusted to no more than 400 cases depending upon . . . [t]he caseload distribution between simple misdemeanors and complex misdemeanors."

43.     The WSBA Standards provide that "[i]n jurisdictions where assigned counsel or contract attorneys also maintain private law practices, the contracting agency should ensure that attorneys not accept more cases than they can reasonably discharge. In these situations, the caseload should be based on the percentage of time the lawyer devotes to public defense."

44.     Sybrandy and Witt spend a substantial amount of their professional time on private practice. This includes both criminal cases and civil cases for paying clients.

45.     On the legal directory Avvo.com, Sybrandy lists his "Practice Areas" as follows: "40% Family"; "20% Criminal Defense"; "20% DUI/DWI"; "10% Construction/Development"; "5% Landlord/Tenant"; and "5% Foreclosure." On his website, www.sybrandy-law.org, Sybrandy also lists "Bankruptcy" as a practice area.[1]

46.     On the legal directory Avvo.com, Witt lists his "Practice Areas" as follows: "67% Litigation" and "33% Criminal Defense." On his website, www.legalwitt.com, Witt lists the following practice areas in this order: "Civil Disputes"; "Real Estate Matters"; "Estate Planning Services"; "Dissolutions/Divorces"; "Traffic Infractions"; "D.U.I."; and "Criminal Matters."[2]

47.     Pursuant to the WSBA Standards, the caseload limit for an attorney who devotes only 33 percent of his time to public defense work is 100 to 133, depending on the complexity of those cases.

48.     The public defense caseloads of Sybrandy and Witt greatly exceed the limits established by the WSBA Standards. In 2010, Sybrandy handled more than 950 public defense

---

[1] Websites last visited on June 8, 2011.

[2] Websites last visited on June 8, 2011.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 816 6603 • FAX 206 350 3528
www.tmdwlew.com

cases, and Witt handled more than 1,150 public defense cases. These figures are limited to cases involving indigent defendants and do not include the criminal or civil cases that Sybrandy and Witt handled for private clients. On information and belief, Sybrandy and Witt had similarly large public defense caseloads in prior years.

49. Defendants have knowingly permitted the public defense caseloads of Sybrandy and Witt to exceed the WSBA standards. Indeed, the Contract specifically allows each attorney to handle as many as 1,200 cases per year. This is because Defendants only grant "1/3" of a case credit for the following charges: driving while license suspended third degree (first two offenses); theft third degree (first two offenses); NVOL without identification (first three offenses); malicious mischief under $50 (first offense); unlawful issuance of bank checks; or any other "misdemeanor case of similar complexity as determined by the Contract Administrator." Likewise, Defendants grant only "1/2" of a case credit for several other charges, including driving while license suspended third degree (third or greater offense); driving while license suspended second degree; malicious mischief under $50 (second or greater offense); malicious mischief over $50; negligent driving first degree; theft third degree (third or greater offense); or any other "misdemeanor case of similar complexity as determined by the Contract Administrator."

50. Furthermore, the Contract does not prohibit the attorneys from taking private cases, nor does it reduce the maximum number of public defense cases that may be handled by an amount proportional to the time spent on private cases. Thus, Defendants have failed to place "limitations on private practice of contract attorneys," as required by RCW 10.101.030. Likewise, Defendant Mount Vernon has failed to set a "caseload ceiling . . . based on the percentage of time the lawyer devotes to public defense," as required by Mount Vernon Municipal Code § 2.62.030.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206.816.6603 • FAX 206.360.3528
www.tmdwlaw.com

**D.    Defendants Are Systematically Failing to Provide Assistance of Counsel to Indigent Defendants Who Have Cases Pending in the Municipal Courts of Mount Vernon and Burlington**

51.    Defendants are systematically failing to provide assistance of counsel to indigent defendants who have cases pending in the municipal courts of Mount Vernon and Burlington.

52.    As noted above, Defendants have hired two attorneys—Sybrandy and Witt—to provide the indigent defense services in their cities.  Sybrandy and Witt fail to provide the services to which indigent defendants are entitled under the United States Constitution and the Washington State Constitution.  Among other things:

a.    Sybrandy and Witt rarely, if ever, meet with indigent defendants while those defendants are in custody.  Indigent defendants who have cases pending in the municipal courts of Burlington and Mount Vernon are jailed at the Skagit County jail.  In 2010, Sybrandy and Witt made only six visits to the jail, meeting with a total of seven clients.[3]  By contrast, attorneys from the Skagit County Public Defender's Office made 750 visits to the jail and met with 1,551 clients.  The results were similar for 2009.  Sybrandy and Witt made five visits to the Skagit County jail and met with eight clients, whereas attorneys from the Skagit County Public Defender's Office made 691 visits to the jail and met with 1,232 clients;

b.    Sybrandy and Witt regularly fail to return calls from indigent defendants in a timely manner, if at all;

c.    Sybrandy and Witt regularly fail to meet with indigent defendants in advance of court hearings;

d.    Sybrandy and Witt regularly fail to devote sufficient time to interviewing and counseling indigent defendants;

e.    Sybrandy and Witt rarely, if ever, investigate the charges made against indigent defendants;

---

[3] It is not known whether those clients were indigent defendants or private clients.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 11

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL  206 816 6603 • FAX 206 350.3528
www.tmdwlaw.com

f.    Sybrandy and Witt regularly fail to pursue or review discovery from the prosecution in public defense cases;

g.    Sybrandy and Witt regularly fail to make sufficient preparations for court hearings involving indigent defendants;

h.    Sybrandy and Witt regularly fail to stand with indigent defendants during court hearings.  Moreover, Sybrandy and Witt often pay no attention to those proceedings because they are busy talking with other clients; and

i.    Sybrandy and Witt rarely, if ever, take cases to trial on behalf of indigent defendants.

53.    Under Defendants' public defense contract system, indigent persons are being deprived of adequate consultation and communication with attorneys.

54.    Under Defendants' public defense contract system, indigent defendants must make decisions about their rights and contest issues without adequate factual or legal investigation by attorneys.

55.    Under Defendants' public defense contract system, indigent defendants are being deprived of meaningful opportunities to present defenses.

56.    Under Defendants' public defense contract system, indigent defendants are waiving their rights without proper consultation with or advice from attorneys.

57.    Under Defendants' public defense contract system, indigent defendants are not receiving accurate information regarding jail alternatives, plea alternatives, dispositional alternatives, plea consequences, and consequences associated with immigration status.

58.    Defendants have breached their constitutional duties by establishing and perpetuating a public defense system that deprives indigent persons of the constitutional right to assistance of counsel.

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206.816.6603 • FAX 206 350 3528
www.tmdwlaw.com

**E.    Defendants Have Received Numerous Complaints Regarding Their Failure to Provide Assistance of Counsel to Indigent Defendants**

59.    On December 31, 2008, the director of the Skagit County Office of Assigned Counsel emailed Sybrandy and Witt to inform them that indigent defendants in Mount Vernon and Burlington would "go to court, come to our office, and [go] again to court with no attorney there to represent them even though counsel has been appointed." The director told Sybrandy and Witt that "lack of attorney contact or communication has been a major complaint from the [Mount Vernon] clients." Finally, the director stated that "representation complaints . . . will no longer be forward[ed] . . . to the court" but instead "will now be forwarded to the contract manager who will be monitoring [the public defense] contract for the cit[ies] of Mount Vernon and Burlington." Copied on the email to Sybrandy and Witt were the Honorable David A. Svaren and the Honorable Warren M. Gilbert, judges in the municipal courts of Mount Vernon and Burlington; the Honorable Lindford Smith, a commissioner in the municipal courts of Mount Vernon and Burlington; Jon Aarstad, city administrator for Burlington; and Eric Stendal, Mount Vernon Project Administrator and public defense contract manager. In response to the director's email, Witt acknowledged that he often "get[s] blamed by [his] clients or others for lack of communication." In an attempt to excuse his behavior, Witt stated: "[I]n most cases we are not in any position to talk to clients about their respective cases until just before the next assigned pretrial conference date" because "we do not get police reports until just before the next assigned pretrial conference date."

60.    On May 11, 2009, an indigent defendant with the initials A.A. submitted a written complaint to Mount Vernon regarding Sybrandy. In the complaint, A.A. stated that he visited Sybrandy's office and left contact information, but Sybrandy never called him. Moreover, Sybrandy failed to appear at A.A.'s first hearing. When he eventually spoke to A.A., Sybrandy asked A.A. whether he was guilty. A.A. said no, and Sybrandy responded, "come on . . . ." A.A. told Sybrandy that he felt as though Sybrandy was "on the side of [the] Mount Vernon Police Department." Sybrandy responded by saying, "I['ll] see you in the court

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 13

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 96103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

house," and then he hung-up. A.A.'s complaint was processed by Eric Stendal. In a responsive letter to Mr. Stendal, Sybrandy stated: "Overall, I just do not see anything to substantively respond to in his complaint."

61.    On May 19, 2009, an indigent defendant with the initials K.M. submitted a written complaint to Mount Vernon regarding both Sybrandy and Witt. In the complaint, K.M. stated that Sybrandy and Witt failed to meet with her regarding her case: "I have not been fairly represented by either [Morgan Witt or Richard Sybrandy]. They have neglected to help my case at all. I would like a new public defender appointed to my cases please. Someone who will go over my case w/ me, discuss my options, meet w/ me before court e[tc.]." In response to the complaint, Witt asserted that K.M. "arrived at the Skagit County Jail . . . on or about May 15, 2009" and that he "filed a Notice of Appearance on May 21, 2009." Witt did not deny that he failed to meet or talk with K.M. before June 2, 2009. Witt acknowledged that K.M. had a probation review hearing on May 26, 2009, but he asserted that he was "out of town" that day and that "Sybrandy continued the case to June 2, 2009." Though he took over for Witt at the May 26, 2009 hearing, Sybrandy's response to the complaint stated as follows: "I do not represent [K.M.] in her current proceedings . . . . [I]t has been Mr. Witt who represents her. That being the case, her complaint against me is without merit and I have no way or need to respond." K.M.'s complaint was processed by Eric Stendal.

62.    On September 4, 2009, an indigent defendant with the initials J.B. submitted a written complaint to Mount Vernon regarding Sybrandy. In the complaint, J.B. stated that Sybrandy failed to return her calls or meet with her in advance of her court appearance: "I call[ed] Sybrandy 3 time[s] before court and left 2 message[s] asking for him to call me back so we may talk about my case. He did not respond back. I waited about 2 weeks for a call." J.B. also stated that when she appeared in court, she asked for Sybrandy. He identified himself and told her to sit down and wait for him to call her. Approximately 15 minutes later, Sybrandy read her file and then asked her about the charges. When J.B. started to explain her position,

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 616 6603 • FAX 206 350 3528
www.tmdwlaw.com

Sybrandy told her she was "not special" and "need[ed] to face what [she] did." He also told her that she was "luck[y]" to only have been charged with a misdemeanor and recommended that she "should just end [it] today." Feeling she had "no cho[ic]e," J.B. pled guilty to the charge. J.B.'s complaint was processed by Eric Stendal.

63.     On September 16, 2009, an indigent defendant with the initials V.M. submitted a written complaint to Mount Vernon regarding Sybrandy. In the complaint, V.M. stated that she met with Sybrandy at her court hearing, and Sybrandy asked her whether she was guilty. V.M. answered, "I'm not and I'm not going to sign anything that is not true." Sybrandy then asked, "So you want to take it to trial[?]" When V.M. answered yes, Sybrandy told her "good luck with that" and said she was "going to wa[ste] [everyone's] time and his but it's ok." Sybrandy then asked, "Who do you think the judge is going to believe: you or the officer?" (Punctuation added.) Sybrandy answered his own question with "the officer." When V.M. again said that she was not going to plead guilty because she was innocent, Sybrandy told her that she would be convicted and "was going to be in jail for a very long time." V.M.'s complaint was processed by Eric Stendal.

64.     In November 2009, Eric Stendal received a series of emails from Mount Vernon's Chief of Police, Ken Bergsma, and City Attorney, Kevin Rogerson, regarding complaints that Mount Vernon police officers had been making about "the public defender services being provided by Witt and Sybrandy." Those complaints included the following statement from Detective Toby Ruxton:

> Officer Cohen was assisting defendant in calling a public Defender for DUI arrest. He was unable to make any contact by the phone numbers supplied by them. This isn't an isolated case. I also had difficulty contacting Public Defenders S[y]brandy and Witt. My discussions with other officers was the same on previous incidents. Since they are contracted through the city, can this issue be brought to their attention that we are not getting the service that is their obligation to perform[?]

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 15

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 816 6603 • FAX 206 350 3528
www.tmdwlaw.com

(Emphasis added.) Also included in the emails was the following statement from Lieutenant Greg Booth: "[There] has been a pretty consistent inability to contact them after hours. After this initial e-mail from Toby, several other officers have come forward to say they've experienced the same thing and have then had to spend time trying to call some other attorneys in the phone book."

65. On December 8, 2009, the husband of an indigent defendant with the initials L.G. emailed a complaint to Mount Vernon Mayor Bud Norris regarding the public defender assigned to his wife's case. In the email, the husband stated:

> In June of 2009 my wife was arrested for shoplifting . . . . [W]e hoped that the legal system would clear the matter up. We both have college degrees and neither of us have any record or smidgen of problems with the law . . . . The prosecutor[']s office would not discuss the matter with us unless we had an attorney. We wanted to hire an attorney to fight the matter but . . . we could not afford the large retainer required. We appeared at the arraignment and she pleaded not guilty. We sought a public defender . . . . The assigned attorney did not appear at the [next] hearing. Another attorney came and told us that we could settle the matter quick and easy with a bail for[f]eiture. This was offered to us[] at the [prior] arraignment. They told us if we paid $100 the matter would be dropped. We were angry enough to want a trial . . . . This time we were told it was $250 as the amount had [gone] up July 1st. We still wanted to go to trial but [were] concerned . . . since our assigned attorney would not meet with us prior to the hearing and then didn't even show up at the hearing. We avoided trial by paying bail forfeiture.

The husband also stated that he and his wife "spent no more than 5 minutes with [the second] attorney," and "[i]n that time [the second attorney] called a half dozen others from the court room offering them the same paper to sign." The mayor's office forwarded the email to Sybrandy, who gave the following response: "Please advise both Mr. Stendal and Mayor Norris that this was not my case, it was [Witt's] . . . . Quite honestly, I looked at the file, and the result . . . was excellent."

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 16

66.     On June 18, 2010, an indigent defendant with the initials J.F. submitted a written complaint to Burlington regarding Sybrandy. The complaint referenced an attached letter from three days earlier to an unnamed judge. In the letter, J.F. wrote: "I am very concerned with my case. I don't feel like my lawyer is adequate counsel for this case. Reason being is he has yet to come to see me to speak of my case. So I have no knowledge of this case or its status. And when I did see him a couple of minutes before my last court date, he told me he couldn't help me because of me being in c[u]stody and my past record." (Capitalization altered from original.) For these reasons, J.F. asked the judge to appoint him "new counsel, one that will at least try and help me in this situation I regret putting myself into." (Capitalization altered from original.) The complaint was directed to Burlington Mayor Edward J. Brunz, who forwarded it to Sybrandy. In a responsive letter to Mayor Brunz, Sybrandy wrote: "As a preliminary matter, what [J.F.] alleges in his complaint does not amount to a violation of legal standards of practice, a violation of ethical rules, or a breach of my contract with the City of Burlington . . . . [A]ssuming everything he says is true, it does not amount to a matter which should require a response from me."

67.     On June 28, 2010, an indigent defendant with the initials T.G. submitted a written complaint to Mount Vernon regarding Sybrandy. In the complaint, T.G. wrote: "Prior to court, I had my girlfriend . . . contact Mr. Sybrandy's office. We were making sure Mr. Sybrandy would talk to us prior to court and obtain the police records. He did not obtain the police records. His secretary stated that he could not and would not obtain the police records. When Mr. Sybrandy's secretary called back, she stated that Mr. Sybrandy only discusses cases at Mount Vernon Municipal Court the day of a court appearance. Upon the date of court, we arrived early. Mr. Sybrandy did not want to give us any of his time, nor did he receive the police reports about this case. Then, it was my turn to go before the Judge. [Sybrandy] told me to plea[d] guilty. Take the 20 days of jail and $1000.00 fine. The amount of time Mr. Sybrandy spent defending me, if you can call it that, before the Judge was less than 3 minutes

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 17

TERRELL MARSHALL DAUDT & WILLIE PLLC
938 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

total on my case." T.G.'s complaint was processed by Eric Stendal. Mr. Stendal forwarded the complaint to Sybrandy, who responded: "[T.G.] is greatly confused about his case, principally because if he does not hear what he thinks he wants to hear, he refuses to listen." In his response, Sybrandy did not deny that he only discusses cases with clients on the day of the court appearance, and he admitted that his office told T.G. it would not obtain the police records. Nevertheless, Sybrandy concluded: "I don't think I really have to explain to anyone why it is that we were unable to make [T.G.] happy," and "I hope . . . this demonstrates why [T.G.'s] complaint should be directed at himself, not me." Mr. Stendal sent Sybrandy's letter to T.G. along with a note stating, "I am satisfied with Mr. Sybrandy's response and will not be taking any further action."

68.     On October 26, 2010, an indigent defendant with the initials B.C. submitted a written complaint to Mount Vernon regarding Witt and Sybrandy. In the complaint, B.C. stated that Witt was assigned to defend him. On the day of his hearing, B.C. asked to speak to Witt before his case was called but the other attorney at the table "flipped out" on B.C., told B.C. "to leave him alone," and said "that he would call [B.C.] to review [the] case." Nobody called, however. In response to the complaint, Witt stated as follows: "I was meeting with another client when [B.C.] walked up to counsel's table. He spoke with Mr. Sybrandy, who was the one who 'flipped out.' At that time, I did not know who [B.C.] was and believed he was Mr. Sybrandy's client . . . . [T]he Court called the case before I had a chance to review the case with the client." B.C.'s complaint was processed by Eric Stendal.

69.     On December 13, 2010, the mother of an indigent defendant with the initials A.G. submitted a written complaint to Burlington regarding Witt. In the complaint, the mother stated that Witt "doesn't answer" the flyers her son sends from jail or the calls she makes. After the mother went to visit Witt in person and explain that her son believed he was not getting credit for time served, Witt said he would help. When he met with the son, however, Witt failed to discuss the situation. The mother's complaint was processed by Eric Stendal.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 18

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350 3528
www.tmdwlaw.com

After calling and discussing the issue with Witt, who informed Stendal that he "will call back the mother," Stendal wrote: "I am satisfied with [Witt's] responses."

70.    On January 20, 2011, the director of the Skagit County Office of Assigned Counsel wrote to Eric Stendal, Mount Vernon Project Administrator and public defense contract manager, and notified Mr. Stendal that the Office of Assigned Counsel "continues to receive complaints" about public defense services, "especially from clients who are in custody."

71.    On information and belief, numerous other complaints have been made regarding Sybrandy and Witt and the lack of public defense services in Mount Vernon and Burlington. These complaints include the repeated failure of Sybrandy and Witt to do the following: make themselves readily accessible to indigent defendants; return phone calls or respond to inquiries from indigent defendants; meet with indigent defendants in advance of court hearings; meet with clients in custody; investigate the charges against indigent defendants; prepare for court hearings involving indigent defendants; attend court hearings with indigent defendants; adequately represent indigent defendants; and assist indigent defendants in making informed decisions as to whether to plead guilty or proceed to trial. The failure to assist indigent defendants in making informed decisions includes the failure to provide accurate information regarding jail alternatives, plea alternatives, dispositional alternatives, plea consequences, and consequences associated with immigration status.

72.    On March 22, 2011, Sybrandy wrote to Eric Stendal in response to a complaint by an indigent defendant with the initials M.B. At the end of his letter, Sybrandy stated: "I would request that the City of Mount Vernon, as administrator for our [public defense] contract, **INSTRUCT** the office of assigned counsel to stop their involvement in providing the "PUBLIC DEFENDER COMPLAINT FORM" to criminal defendants." (Emphasis in original.)

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 19

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 816 6603 • FAX 206 350 3528
www.tmdwlaw.com

73.    In addition to filing complaints, indigent defendants incarcerated at the Skagit County jail have sent numerous "Public Defender Request Form[s]" to Sybrandy and Witt, and those forms demonstrate the failure of the attorneys to provide assistance of counsel. Copies of the forms, also known as "kites," are maintained by the Skagit County Office of Assigned Counsel.

74.    For example, between January 6 and 11, 2010, an incarcerated indigent defendant with the initials J.M. sent 10 separate Public Defender Request Forms to Witt asking him to call. In one of the kites, J.M. wrote: "I am having problems with my Public Defender [Witt] . . . . [H]e promise[d] me if I sign I would get out for [C]hris[t]mas and he wasn[']t honest to me and I[']ve been trying to get a hold of him for 3 weeks and my mom has called his office ever[y] day and he never returns her call . . . ." Notes kept by the Skagit County Office of Assigned Counsel confirm that J.M.'s mother left messages with Witt, but he did not call her back.

75.    On January 12, 2010, an incarcerated indigent defendant with the initials F.S. sent a Public Defender Request Form to the Skagit County Office of Assigned Counsel, making the following complaint about Sybrandy and Witt: "I need a different attorney who can properly represent me please. I have been here since December 25th and have yet to speak to Sybandy and Witt. I have sent countless kites and [have had] family members call them but to no use."

76.    On May 20, 2010, an incarcerated indigent defendant with the initials M.A. sent a Public Defender Request Forms to Sybrandy and Witt, stating "I need to [k]no[w] who my Public Defender is and if he can contact me please." Though she sent a second kite to Sybrandy and Witt on May 24, 2010, M.A. had still not heard from them as of May 26, 2010, six days after the original request for contact was made.

77.    On December 30, 2010, an incarcerated indigent defendant with the initials A.C. sent a Public Defender Request Form to Sybrandy and Witt that stated: "I need to speak to you.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 20

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 350 3528
www.tmdwlaw.com

I have been here since Dec 20 2010 and have court Jan 4th or 5th . . . . Please don't leave me hanging like last time. I would really like to know what's going on."

78.    On January 16, 2011, an incarcerated indigent defendant with the initials A.M. sent a Public Defender Request Form to Sybrandy regarding the fact that A.M. had been in custody for nearly five weeks but hadn't been contacted by Sybrandy. Two days later, A.M.'s case was continued by Witt, who did not speak to A.M. at the court appearance. On January 26, 2011, having still not heard from his attorney, A.M. sent a kite to Witt with the following message: "I have 6 weeks [i]n here and I want to know what's going to happen in my next court date. Can you please come see me or at least give me a call[?]"

79.    On January 17, 2011, an incarcerated indigent defendant with the initials M.S. sent a Public Defender Request Form to Sybrandy that stated: "I have been here 20 days and you have yet come to see me, call or write. In my eyes that is completely disrespectful and completely dehumanizing [and] you really should be ashamed of yourself!!!" Four days earlier, M.S. sent a separate kite to Sybrandy that stated: "I need either a global resolution or bail reduction hearing as soon as possible [because] I will be homeless + posse[ssi]onless and veh[icle]less [unless I can get out of jail and take care of my affairs]."

80.    On January 26, 2011, an incarcerated indigent defendant with the initials G.P. sent a Public Defender Request Form to Sybrandy that stated: "I have cases that you were appointed to me and would appreciate you following up with me about the cases you are supposed to be representing me on."

81.    Despite the serious complaints made against Sybrandy and Witt, Defendants have failed to take reasonable steps to protect indigent persons and secure their constitutional rights. Among other things, Defendants have not terminated the Contract with Sybrandy and Witt. To the contrary, Defendants recently extended the Contract by two years.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 21

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 816.6603 • FAX 206 350.3528
www.tmdwlaw.com

**F.    Defendants Have Failed to Adequately Monitor or Oversee Their Public Defense System**

82.    Defendants have not implemented effective mechanisms for monitoring the performance of public defenders.

83.    Defendants have not adopted meaningful publicized criteria for evaluating public defenders.

84.    Defendants do not engage in systematic monitoring and evaluation of the performance of public defenders based on published criteria.

85.    Defendants collect only the most basic of information from Sybrandy and Witt regarding public defense services.  Specifically, Defendants ask Sybrandy and Witt to submit monthly reports on all completed cases with client names, case numbers, charges, dispositions, custody and probation statuses, and time spent on cases.  Though he is obligated under the Contract to provide these basic reports, Witt regularly fails to do so.  Instead, he often submits his reports months after they are due.  Sybrandy also submits reports in an untimely manner.

86.    Defendants do not obtain the meaningful information essential to fulfilling their constitutional duties of providing indigent defense services.

87.    Defendants have not established any system for ensuring that Sybrandy and Witt investigate cases, prepare for trial, and communicate timely and adequately with clients.

88.    Defendants do not take reasonable steps to ensure that the private practices of Sybrandy and Witt do not impair the public defense system.

89.    Defendants have failed to establish an effective system for preventing conflicts of interest.

90.    Defendants have failed to adequately respond to complaints about their public defense system, including complaints regarding Sybrandy and Witt.

91.    If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that Sybrandy and Witt rarely, if ever, meet with indigent defendants in custody.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 22

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 816 6603 • FAX 206.350 3528
www.tmdwlaw.com

92. If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that Sybrandy and Witt regularly fail to return calls from indigent defendants in a timely manner, if at all.

93. If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that Sybrandy and Witt regularly fail to meet with indigent defendants in advance of court hearings.

94. If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that Sybrandy and Witt regularly fail to devote sufficient time to interviewing and counseling indigent defendants.

95. If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that Sybrandy and Witt rarely, if ever, investigate the charges made against indigent defendants.

96. If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that Sybrandy and Witt regularly fail to pursue or review discovery from the prosecution in public defense cases.

97. If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that Sybrandy and Witt regularly fail to make sufficient preparations for court hearings involving indigent defendants.

98. If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that Sybrandy and Witt regularly fail to stand with indigent defendants during court hearings.

99. If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that Sybrandy and Witt rarely, if ever, take cases to trial on behalf of indigent defendants.

100. If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that Sybrandy and Witt fail to report the actual amount of time that they spend on

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 23

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 816 6603 • FAX 206.350.3528
www.tmdwlaw.com

indigent defense cases. In Paragraph 67 above, for example, the complainant wrote that "[t]he amount of time Mr. Sybrandy spent defending me, if you can call it that . . . was less than 3 minutes total on my case." In his report to Mount Vernon, however, Sybrandy claimed that he spent one hour working on the case. Likewise, in Paragraph 65 above, the complainant stated that Witt was assigned to his wife's case but failed to appear at the hearing. At that point, Sybrandy took over but "spent no more than 5 minutes" with the wife, who ultimately pled guilty. Though Witt never met with the client and did not appear at the hearing, he submitted a report to Mount Vernon in which he claimed that he spent one hour working on the case. A review of the reports submitted to Defendants shows that Sybrandy and Witt routinely record the same amount of time per charge—either 30 minute or one hour. Not only is this recorded time often insufficient to provide assistance of counsel but also, as shown above, it often overstates the actual amount of time spent on the matter.

101.    If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that Sybrandy and Witt devote a substantial portion (if not a majority) of their time to working on private cases, whether civil or criminal.

102.    If Defendants adequately monitored Sybrandy and Witt, Defendants would have found that the private work performed by Sybrandy and Witt is performed to the detriment of public defense services.

G.    **Defendants Have Failed to Provide Adequate Funds for Public Defense**

103.    Defendants are responsible for funding the public defense system in the municipal courts of Mount Vernon and Burlington.

104.    Defendants have consistently failed to fund indigent defense services at a level that is sufficient to ensure constitutionally adequate representation.

105.    Under the Contract, the total amount of funds available to pay for all aspects of indigent defense services in the municipal courts of Mount Vernon is capped at $121,750 per year. The total amount of funds available to pay for all aspects of indigent defense services in

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 24

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

the municipal courts of Burlington is capped at $60,750 per year. When Defendants recently extended the Contract with Sybrandy and Witt by an additional two years, Defendants did so without any increase in compensation.

106. The amounts paid under the Contract must cover attorneys' fees, investigation costs, administrative costs, and all other costs other than approved expert fees for all proceedings in which indigent persons were entitled to court-appointed counsel.

107. These amounts are not sufficient to ensure constitutionally adequate representation. Moreover, the inadequate funding creates a conflict of interest for Sybrandy and Witt, whose income is diminished by the amount of any funds expended in the defense of a client, including investigator, consulting expert and non-court-approved expert fees.

108. Rule 1.8(m) of the Washington Rules of Professional Conduct provides that "[a] lawyer shall not: (1) make or participate in making an agreement with a governmental entity for the delivery of indigent defense services if the terms of the agreement obligate the contracting lawyer . . . to bear the cost of providing investigation or expert services, unless a fair and reasonable amount for such costs is specifically designated in the agreement in a manner that does not adversely affect the income or compensation allocated to the lawyer . . . ." This provision "prohibits agreements that do not provide that such services are to be funded separately from the amounts designated as compensation to the contracting lawyer or law firm." RPC 1.8, Cmt. 28. Furthermore, "a conflict of interest exists [where] there is significant risk that the lawyers representation of the client will be materially limited by the lawyer's own interest in the fee arrangement . . . ." RPC 1.8, Cmt. 12.

109. Pursuant to RCW 10.101.050, Defendants are entitled to apply for moneys to fund indigent defense services pursuant to the grant program set forth in RCW 10.101.080. In order to receive such funds, however, Defendants must require that attorneys providing public defense services attend training approved by the Office of Public Defense at least once per calendar year. Moreover, Defendants must report the expenditure for all public defense

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 25

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street  Suite 400
Seattle, Washington  98103-8869
TEL  206 616.6603 • FAX 206 350 3528
www.tmdwlaw.com

services in the previous calendar year, as well as case statistics for that year, including per attorney caseloads, and must provide a copy of each current public defense contract to the office of public defense with their application. Finally, each individual that contracts to perform public defense services for Defendants must report to the city hours billed for nonpublic defense legal services in the previous calendar year, including number and types of private cases. On information and belief, Defendants have never applied for funds pursuant to the grant program established in RCW Chapter 10.101.

H.   **Defendant Mount Vernon Has Violated RCW 10.101.040 and Created a Conflict of Interest in the Selection of Public Defenders**

110.   Pursuant to RCW 10.101.040, "[c]ity attorneys . . . shall not select the attorneys who will provide indigent defense services."

111.   The City Attorney for Mount Vernon is Kevin Rogerson. As City Attorney, Mr. Rogerson supervises the prosecution of criminal matters.

112.   In December 2010, while acting as Mount Vernon's City Attorney, Mr. Rogerson recommended that the city council authorize the mayor to extend the public defense contract with Sybrandy/Witt by two years. He did this despite his knowledge of the complaints made against Sybrandy and Witt for their failure to take calls from and meet with indigent defendants. In his recommendation, Mr. Rogerson noted that there would be "no raise in the amount of consideration for the provision of these services." He concluded that an extension of the Contract without any increase in compensation "is within the best interests of the City." Mr. Rogerson presented his recommendation to the city council on December 15, 2010, and the city council voted unanimously to adopt his recommendation and extend the Contract.

113.   In his capacity as City Attorney of Mount Vernon, Mr. Rogerson was involved in selecting Sybrandy and Witt as the attorneys who will provide indigent defense services in Mount Vernon in 2011 and 2012.

114.   By allowing Mr. Rogerson to be involved in the selection of Sybrandy and Witt as public defenders, Defendant Mount Vernon has violated RCW 10.101.040 and created a

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 26

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206 816.6603 • FAX 206 350 3528
www.tmdwlaw.com

conflict of interest. Mount Vernon is prosecuting criminal charges against indigent defendants who lack assistance of counsel because of Mount Vernon's decision to maintain a contract with Sybrandy and Witt and Mount Vernon's decision to inadequately fund its public defense system, among other things.

J.     **Defendants Have Failed to Provide Assistance of Counsel to Class Plaintiffs**

    **(i)     Plaintiff Joseph Jerome Wilbur**

115.    On or about November 12, 2008, Plaintiff Wilbur was charged in Burlington Municipal Court with driving a motor vehicle while license suspended in the third degree and operating a motor vehicle that is not equipped with a required interlock device. These charges were filed under case number BUC11136, which is currently pending. Defendant Burlington has assigned an attorney to represent Plaintiff Wilbur on these charges, and that attorney is Richard Sybrandy.

116.    On or about August 28, 2009, Plaintiff Wilbur was charged in Burlington Municipal Court with theft in the third degree. This charge was filed under case number BUC12231, which is currently pending. Defendant Burlington has assigned an attorney to represent Plaintiff Wilbur on this charge, and that attorney is Richard Sybrandy.

117.    On or about March 25, 2010, Plaintiff Wilbur was charged in Burlington Municipal Court with two counts of theft in the third degree. These charges were filed under case numbers BUC12486 and BUC13018, both of which are currently pending. Defendant Burlington has assigned an attorney to represent Plaintiff Wilbur on these charges, and that attorney is Richard Sybrandy.

118.    On or about February 14, 2011, Plaintiff Wilbur was charged in Burlington Municipal Court with bail jumping. This charge was filed under case number BUC005013, which is currently pending. Defendant Burlington has assigned an attorney to represent Plaintiff Wilbur on this charge, and that attorney is Richard Sybrandy.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 27

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 816 6603 • FAX 206 350 3528
www.tmdwlaw.com

119.    Plaintiff Wilbur has been incarcerated in the Skagit County jail at various times in relation to these charges. While in jail, Plaintiff Wilbur made numerous efforts to contact Sybrandy in advance of court hearings, but Sybrandy never responded. Plaintiff Wilbur's mother and grandmother also made efforts to contact Sybrandy, but Sybrandy never responded to them as well. Assistants at Sybrandy's office told Plaintiff Wilbur's mother that Sybrandy was "too busy" to communicate or meet with Plaintiff Wilbur.

120.    Sybrandy regularly failed to communicate the circumstances of Plaintiff Wilbur's cases or the charges filed against him during court hearings.

121.    Plaintiff Wilbur understands that he is entitled to enter in-patient treatment on or about June 20, 2011, and that he must first obtain a treatment order from the court before he can do so. Plaintiff Wilbur has attempted to contact Sybrandy to get his assistance with this, but Sybrandy has failed to respond to Plaintiff Wilbur. A drug and alcohol counselor has also tried to contact Sybrandy on Plaintiff Wilbur's behalf regarding this issue, but Sybrandy has failed to respond to the counselor.

122.    Plaintiff Wilbur was previously charged with crimes in Mount Vernon municipal court, and Mount Vernon assigned Sybrandy to represent him. Plaintiff Wilbur experienced the same problems with Sybrandy in regard to the Mount Vernon charges as he has experienced with Sybrandy in regard to the Burlington charges.

123.    Defendants Mount Vernon and Burlington have failed to assign an attorney to Plaintiff Wilbur who will communicate or meet with him while in custody.

124.    Defendants Mount Vernon and Burlington have failed to assign an attorney to Plaintiff Wilbur who will communicate or meet with him in advance of court hearings.

125.    Defendants Mount Vernon and Burlington have failed to assign an attorney to Plaintiff Wilbur who will respond to his requests for assistance of counsel.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 28

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 816 6603 • FAX 206.350 3528
www.tmdwlaw.com

126. Defendants Mount Vernon and Burlington have failed to assign an attorney to Plaintiff Wilbur who will devote time to interviewing and counseling his on the charges filed against his or the substantive legal issues related to his case.

127. Defendants Mount Vernon and Burlington have failed to assign an attorney to Plaintiff Wilbur who will provide his with the representation to which he is entitled under the constitutions of the United States and Washington.

128. The attorneys that Defendants Mount Vernon and Burlington have assigned to Plaintiff Wilbur's cases have had excessive caseloads.

129. The attorneys that Defendants Mount Vernon and Burlington have assigned to Plaintiff Wilbur's cases have not been adequately funded.

130. The attorneys that Defendants Mount Vernon and Burlington have assigned to Plaintiff Wilbur's cases have not been adequately monitored.

131. Plaintiff Wilbur has had to make decisions about his rights without adequate factual or legal investigation by his attorneys.

132. Plaintiff Wilbur has been deprived of meaningful opportunities to present defenses.

133. Plaintiff Wilbur has waived his rights without proper consultation and advice.

134. Plaintiff Wilbur has not received meaningful benefits in exchange for guilty pleas.

135. Defendants Mount Vernon and Burlington have constructively deprived Plaintiff Wilbur of his right to the assistance of counsel.

(ii)     **Plaintiff Jeremiah Ray Moon**

136. On or about May 21, 2011, Plaintiff Moon was charged in Mount Vernon Municipal Court with assault in the fourth degree and interfering with reporting. These charges were filed under case number BUC009935, which is currently pending. Defendant Mount

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 29

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

Vernon has assigned an attorney to represent Plaintiff Moon on these charges, and that attorney is Morgan Witt.

137.    Mount Vernon has assigned Witt to represent Plaintiff Moon on previous charges, including the charge of driving a motor vehicle while under the influence of alcohol or drugs. Plaintiff Moon attempted to contact Witt numerous times in relation to that charge, but Witt failed to respond to him. The only time Witt spoke with Plaintiff Moon was during court proceedings. Because numerous other individuals were present during those proceedings—including the judge, the prosecutor, other indigent defendants, and members of the public—Plaintiff Moon was not able to communicate in private with Witt. Furthermore, Plaintiff Moon did not have sufficient time to discuss with Witt the circumstances of his case or the charges filed against him.

138.    As of June 8, 2011, Plaintiff Moon has been confined in the Skagit County jail for several weeks, serving a commitment on a different charge. Plaintiff Moon has contacted Witt in an effort to get credit toward for time spent on work crew. Though he is currently assigned to represent Plaintiff Moon, Witt has failed to respond to Plaintiff Moon.

139.    Witt has not contacted Plaintiff Moon to discuss the currently pending charge of assault in the fourth degree. A hearing on that charge is scheduled for June 21, 2011.

140.    Defendant Mount Vernon has failed to assign an attorney to Plaintiff Moon who will communicate or meet with him while in custody.

141.    Defendant Mount Vernon has failed to assign an attorney to Plaintiff Moon who will communicate or meet with him in advance of court hearings.

142.    Defendant Mount Vernon has failed to assign an attorney to Plaintiff Moon who will respond to his requests for assistance of counsel.

143.    Defendant Mount Vernon has failed to assign an attorney to Plaintiff Moon who will devote time to interviewing and counseling his on the charges filed against his or the substantive legal issues related to his case.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 30

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206 350.3528
www.tmdwlaw.com

144.    Defendant Mount Vernon has failed to assign an attorney to Plaintiff Moon who will provide his with the representation to which he is entitled under the constitutions of the United States and Washington.

145.    The attorneys that Defendant Mount Vernon has assigned to Plaintiff Moon's cases have had excessive caseloads.

146.    The attorneys that Defendant Mount Vernon has assigned to Plaintiff Moon's cases have not been adequately funded.

147.    The attorneys that Defendant Mount Vernon has assigned to Plaintiff Moon's cases have not been adequately monitored.

148.    Plaintiff Moon has had to make decisions about his rights without adequate factual or legal investigation by his attorneys.

149.    Plaintiff Moon has been deprived of meaningful opportunities to present defenses.

150.    Plaintiff Moon has waived his rights without proper consultation and advice.

151.    Plaintiff Moon has not received meaningful benefits in exchange for guilty pleas.

152.    Defendant Mount Vernon has constructively deprived Plaintiff Moon of his right to the assistance of counsel.

(iii)    **Plaintiff Angela Marie Montague**

153.    On or about July 9, 2007, Plaintiff Montague was charged in Burlington Municipal Court with driving a motor vehicle while license suspended in the third degree and driving a motor vehicle while under the influence of alcohol or drugs.  These charges were filed under case number BUC009935. Defendant Burlington assigned an attorney to represent Plaintiff Montague on these charges, and that attorney was Richard Sybrandy.

154.    In November 2008, while in custody at the Skagit County jail, Plaintiff Montague tried multiple times to contact Sybrandy regarding a court appearance scheduled for

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 31

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 205.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

December 3, 2008. Sybrandy failed to respond to her. The only time Sybrandy spoke with Plaintiff Montague was during court proceedings. Because numerous other individuals were present during those proceedings—including the judge, the prosecutor, other indigent defendants, and members of the public—Plaintiff Montague was not able to communicate in private with Sybrandy. Furthermore, Plaintiff Montague did not have sufficient time to discuss with Sybrandy the circumstances of her case or the charges filed against her.

155. Because Sybrandy was not providing her with assistance of counsel, Plaintiff Montague asked to have another attorney appointed to her case. Shortly thereafter, Defendant Burlington assigned Morgan Witt as Plaintiff Montague's attorney.

156. Like Sybrandy, Witt failed to provide Plaintiff Montague with assistance of counsel. Witt did not respond to efforts by Plaintiff Montague to speak with her in advance of court appearances. The only time Witt spoke with Plaintiff Montague was during court proceedings, which did not allow for private communications or sufficient time to discuss the circumstances of the case or the charges filed against Plaintiff Montague.

157. On December 2, 2009, Plaintiff Montague entered into a deferred prosecution agreement regarding the charges brought against her in Burlington. At some point it became difficult for Plaintiff Montague to meet the terms of that agreement, so she tried to contact Witt to resolve her issues in a proactive manner with the court. Witt failed to respond to her. Because Plaintiff Montague was unable to work out a resolution with the court, a warrant was issued for her arrest.

158. Plaintiff Montague was arrested and brought back to court to be sentenced on the underlying charges. Witt did not talk with Plaintiff Montague before the court sentenced her. Though he was present at the hearing, Witt did not stand with Plaintiff Montague while she was being sentenced. Witt did not explain the circumstances of Plaintiff Montague's situation to the court or to ask the court to credit Plaintiff Montague for time served.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 32

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

159. As of June 8, 2011, Plaintiff Montague has been confined in the Skagit County jail for several weeks. Plaintiff Montague has been attempting to get in-patient treatment in lieu of jail time, but she understands she cannot do so unless she first obtains a treatment order from the court.

160. Plaintiff Montague understands that Morgan Witt continues to serve as her assigned attorney and that the assistance of his counsel is necessary for her to obtain a review hearing and treatment order. Over the past two weeks, Plaintiff Montague has sent numerous kites to Witt requesting his assistance, but Witt has not responded to her.

161. Defendant Burlington has failed to assign an attorney to Plaintiff Montague who will communicate or meet with her while in custody.

162. Defendant Burlington has failed to assign an attorney to Plaintiff Montague who will communicate or meet with her in advance of court hearings.

163. Defendant Burlington has failed to assign an attorney to Plaintiff Montague who will respond to her requests for assistance of counsel.

164. Defendant Burlington has failed to assign an attorney to Plaintiff Montague who will devote time to interviewing and counseling her on the charges filed against her or the substantive legal issues related to her case.

165. Defendant Burlington has failed to assign an attorney to Plaintiff Montague who will provide her with the representation to which she is entitled under the constitutions of the United States and Washington.

166. The attorneys that Defendant Burlington has assigned to Plaintiff Montague's cases have had excessive caseloads.

167. The attorneys that Defendant Burlington has assigned to Plaintiff Montague's cases have not been adequately funded.

168. The attorneys that Defendant Burlington has assigned to Plaintiff Montague's cases have not been adequately monitored.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 33

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8669
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

169.    Plaintiff Montague has had to make decisions about her rights without adequate factual or legal investigation by her attorneys.

170.    Plaintiff Montague has been deprived of meaningful opportunities to present defenses.

171.    Plaintiff Montague has waived her rights without proper consultation and advice.

172.    Plaintiff Montague has not received meaningful benefits in exchange for guilty pleas.

173.    Defendant Burlington has constructively deprived Plaintiff Montague of her right to the assistance of counsel.

**K.    Plaintiffs Face a Continuing Risk that their Constitutional Rights Will Be Violated**

174.    As a result of Defendants' acts and omissions, including the policies, practices and procedures for public defense that Defendants have maintained and countenanced, indigent persons charged with crimes in the municipal courts of Mount Vernon and Burlington have suffered or are at imminent and serious risk of suffering harm.  Among other things, these indigent persons are deprived of adequate consultation and communication with their attorneys.  These indigent persons must make decisions about their rights or contest issues without adequate factual or legal investigation by their attorneys.  These indigent persons are deprived of meaningful opportunities to present defenses.  The rights of these indigent persons are waived without proper consultation and advice.  These indigent persons are deprived of the services of investigators and expert witnesses. The cases of these indigent persons are not properly prepared for trial.  These indigent persons do not receive meaningful benefits in exchange for guilty pleas.

175.    There is a substantial risk that Defendants' violations will continue and will deprive the Class Plaintiffs and other Class Members of their rights.  Among other things:

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 34

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington  98103-8869
TEL  206 816 6603 • FAX 206.350.3528
www.tmdwlaw.com

a.    Defendants have persisted in a wrongful course of conduct for many years;

b.    Defendants have persisted in a wrongful course of conduct even though Defendants knew or should have known that indigent persons were being deprived of their rights;

c.    Defendants have failed to take prompt action to fix their public defense system;

d.    Defendants have allowed their public defense system to descend into chaos.

## VI.  CAUSES OF ACTION – COUNT ONE
### (Violation of the Sixth and Fourteenth Amendments to the United States Constitution (42 U.S.C. § 1983)

176.    The allegations of paragraphs 1 through 175 above are incorporated herein.

177.    Acting under color of state law, Defendants have violated and caused violations of the Class Plaintiffs' rights to the assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution.

178.    Unless enjoined by the Court, Defendants will continue to violate and cause the violation of the constitutional rights of the Class Plaintiffs and the Class Members.

## VII.  CAUSES OF ACTION – COUNT TWO
### (Violation of Article I, §§ 3, 12 and 22 of the Washington State Constitution

179.    The allegations of paragraphs 1 through 178 above are incorporated herein.

180.    Acting under color of state law, Defendants have violated and caused violations of the Class Plaintiffs' rights to the assistance of counsel pursuant to Article I, Sections 3, 12, and 22 of the Washington State Constitution.

181.    Unless enjoined by the Court, Defendants will continue to violate and cause the violation of the constitutional rights of the Class Plaintiffs and the Class Members.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 35

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
TEL 206 816.6603 • FAX 206 350 3528
www.tmdwlaw.com

## VIII.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for relief as follows:

A.      For certification of a class as defined above;

B.      For a declaration that Defendants are depriving Class Members of their rights to the assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Sections 3, 12, and 22 of Article I of the Washington State Constitution;

C.      For the issuance of preliminary and permanent injunctions restraining Defendants from violating the Sixth and Fourteenth Amendments to the United States Constitution and Sections 3, 12, and 22 of Article I of the Washington State Constitution in the provision of indigent defense services;

D.      For a preliminary and permanent injunction enjoining defendant Defendants from making expenditures of funds on indigent defense services likely to result in constitutional violations;

E.      For an award of plaintiffs' costs and attorneys' fees; and

F.      For such other and further relief as the Court may deem just and proper.

DATED this 9th day of June, 2011.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: _____

Beth E. Terrell, WSBA #26759
Email: bterrell@tmdwlaw.com
Toby J. Marshall, WSBA #32726
Email: tmarshall@tmdwlaw.com
Jennifer Rust Murray, WSBA #36983
Email: jmurray@tmdwlaw.com
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
Telephone: 206.816.6603

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 36

Darrell W. Scott, WSBA #20241
Email: scottgroup@mac.com
Matthew J. Zuchetto, WSBA #33404
Email:  matthewzuchetto@mac.com
SCOTT LAW GROUP
926 W Sprague Avenue, Suite 583
Spokane, Washington 99201
Telephone:  509.455.3966

*Attorneys for Plaintiffs*

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 37

TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 400
Seattle. Washington 98103-8869
TEL 206 816 6603 • FAX 206 350 3528
www.tmdwlaw.com

# EXHIBIT A



# Washington State Bar Association

## Standards for Indigent Defense Services

**On September 20, 2007, the Washington State Bar Association Board of Governors adopted updated Standards for indigent defense services as proposed by the WSBA Committee on Public Defense.**

**STANDARD ONE: Compensation**

**Standard:**

Public defense attorneys and staff should be compensated at a rate commensurate with their training and experience. To attract and retain qualified personnel, compensation and benefit levels should be comparable to those of attorneys and staff in prosecutorial offices in the area.

For assigned counsel, reasonable compensation should be provided. Compensation should reflect the time and labor required to be spent by the attorney and the degree of professional experience demanded by the case. Assigned counsel should be compensated for out-of-pocket expenses.

Contracts should provide for extraordinary compensation over and above the normal contract terms for cases which require an extraordinary amount of time and preparation, including, but not limited to, death penalty cases. Services which require extraordinary fees should be defined in the contract.

Attorneys who have a conflict of interest should not have to compensate the new, substituted attorney out of their own funds.

Flat fees, caps on compensation, and lump-sum contracts for trial attorneys are improper in death penalty cases. Private practice attorneys appointed in death penalty cases should be fully compensated for actual time and service performed at a reasonable hourly rate with no distinction between rates for services performed in court and out of court. Periodic billing and payment should be available. The hourly rate established for lead counsel in a particular case should be based on the circumstances of the case and the attorney being appointed, including the following factors: the anticipated time and labor required in the case, the complexity of the case, the skill and experience required to provide adequate legal representation, the attorney's overhead expenses, and the exclusion of other work by the attorney during the case. Under no circumstances should the hourly rate for lead counsel, whether private or public defender, appointed in a death penalty case be less than $125 per hour (in 2006 dollars).

**Related Standards:**

American Bar Association, **Standards for Criminal Justice**, 5-2.4 and 5-3.1.

American Bar Association, **Guidelines for the Appointment and Performance in Death Penalty Cases**, 1988, Standard 10-1.

National Advisory Commission on Criminal Justice Standards and Goals, **Task Force on Courts**, 1973, Standards 13.7 and 13.11.

National Legal Aid and Defender Association, **Standards for Defender Services**, Standard IV-4.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Legal Defense Contracts**, 1984, Standard III-10 and III-11. 1

Seattle-King County Bar Association Indigent Defense Services Task Force, **Guidelines for Accreditation of Defender Agencies**, 1982, Guideline No. 6.

**STANDARD TWO: Duties and Responsibilities of Counsel**

**Standard:**

The legal representation plan shall require that defense services be provided to all clients in a professional, skilled manner consistent with minimum standards set forth by the American Bar Association, applicable state bar association standards, the Rules of Professional Conduct, case law and applicable court rules defining the duties of counsel and the rights of defendants in criminal cases. Counsel's primary and most fundamental responsibility is to promote and protect the best interests of the client.

**Related Standards:**

American Bar Association, **Standards for Criminal Justice**, 4-1.1, 5-5.1 and 5-1.1.

National Advisory Commission on Criminal Justice Standards and Goals, **Task Force on Courts**, 1973, Standards 13.1.

National Legal Aid and Defender Association, **Standards for Defender Services**, Standard II-2.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Defense Contracts**, 1984, Guideline III-18.

American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases
http://www.abanet.org/deathpenalty/guidelines.pdf

**STANDARD THREE: Caseload Limits and Types of Cases**

**Standard:**

The contract or other employment agreement or government budget shall specify the types of cases for which representation shall be provided and the maximum number of cases which each attorney shall be expected to handle. The caseload of public defense attorneys should allow each lawyer to give each client the time and effort necessary to ensure effective representation. Neither defender organizations, county offices, contract attorneys nor assigned counsel should accept workloads that, by reason of their excessive size, interfere with the rendering of quality representation.

The caseload of a full-time public defense attorney or assigned counsel shall not exceed the following:

150 Felonies per attorney per year; or

300 misdemeanor cases per attorney per year; or in certain circumstances described below the caseload may be adjusted to no more than 400 cases, depending upon:
- The caseload distribution between simple misdemeanors and complex misdemeanors; or
- Jurisdictional policies such as post-filing diversion and opportunity to negotiate resolution of large number of cases as non-criminal violations;
- Other court administrative procedures that permit a defense lawyer to handle more cases

250 Juvenile Offender cases per attorney per year; or

80 open Juvenile dependency cases per attorney; or

250 Civil Commitment cases per attorney per year; or

1 Active Death Penalty cases at a time; or

36 Appeals to an appellate court hearing a case on the record and briefs per attorney per year. (*The 36 standard assumes experienced appellate attorneys handling cases with transcripts of an average length of 350 pages. If attorneys do not have significant appellate experience and/or the average transcript length is greater than 350 pages, the caseload should be accordingly reduced.*)

**Definition of Case:**

A case is defined as the filing of a document with the court naming a person as defendant or respondent, to which a public defense attorney is appointed in order to provide representation.

**General Considerations:**

Caseload limits should be determined by the number of cases being accepted and on the local prosecutor's charging and plea bargaining practices. If a defender or assigned counsel is carrying a mixed caseload including cases from more than one category of cases, these standards should be applied proportionately to determine a full caseload. In jurisdictions where assigned counsel or contract attorneys also maintain private law practices, the contracting agency should ensure that attorneys not accept more cases than they can reasonably discharge. In these situations, the caseload should be based on the percentage of time the lawyer devotes to public defense.

**Related and Source Standards**

American Bar Association, **Standards for Criminal Justice, 4-1.2, 5-4.3.**

*ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases.* http://www.abanet.org/deathpenalty/guidelines.pdf

National Advisory Commission on Criminal Standards and Goals, **Task Force on Courts,** 1973, Standard 13.12.

American Bar Association Disciplinary Rule 6-101.

American Bar Association Ten Principles of a Public Defense Delivery System. See,
http://www.abanet.org/legalservices/downloads/sclaid/indigentdefense/tenprincipl esbooklet.pdf (2002).

*ABA Standards of Practice for Lawyers who Represent Children in Abuse & Neglect Cases,* (1996) American Bar Association, Chicago, IL

The American Council of Chief Defenders Ethical Opinion 03-01 (2003).
National Legal Aid and Defender Association, **Standards for Defender Services,** Standards IV-I.

National Legal Aid and Defender Association, Model Contract for Public Defense Services (2002), available on line at www.nlada.org/DMS/Documents/1025702469/Full%20volume.doc

NACC Recommendations for Representation of Children in Abuse and Neglect Cases (2001, available online at http://naccchildlaw.org/training/standards.html)

City of Seattle Ordinance Number: 12501 (2004).

Seattle-King County Bar Association Indigent Defense Services Task Force, Guideline Number 1.

Washington State Office of Public Defense, Proposed Standards for Dependency and Termination Defense Attorneys (1999), available online at http://www.opd.wa.gov/Publications/Dependency%20&%20Termination%20Reports/1999%20Cost%20of%20Defense%20Dep%20&%20Ter.pdf

**STANDARD FOUR: Responsibility for Expert Witnesses**

**Standard:**

Reasonable compensation for expert witnesses necessary to preparation and presentation of the defense case shall be provided. Expert witness fees should be maintained and allocated from funds separate from those provided for defender services. Requests for expert witness fees should be made through an ex parte motion. The defense should be free to retain the expert of its choosing and in no cases should be forced to select experts from a list pre-approved by either the court or the prosecution.

**Related Standards:**

American Bar Association, **Standards for Criminal Justice**, 5-1.4.

National Legal Aid and Defender Association, **Standards for Defender Services**, Standard IV 2d, 3.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Defense Contracts**, 1983, Standard III-8d.

National Advisory Commission, **Task Force on Courts**, 1973, Standard 13.14.

**STANDARD FIVE: Administrative costs**

**Standard:**

Contracts for public defense services shall provide for or include administrative costs associated with providing legal representation. These costs should include but are not limited to travel, telephones, law library, including electronic legal research, financial accounting, case management systems, computers and software, office space and supplies, training, meeting the reporting requirements imposed by these standards, and other costs necessarily incurred in the day-to-day management of the contract. Public defense attorneys should have an office that accommodates confidential meetings with clients and receipt of mail, and adequate telephone services to ensure prompt response to client contact.

**Related Standards:**

American Bar Association, **Standards for Criminal Justice, Providing Defense Services**.

National Study Commission on Defense Services, **Guidelines for Legal Defense Systems in the United States**, (1976), Guideline 3.4.

National Legal Aid and Defender Association, **Standards for Defender Services**, 1976 I-3, IV 2a-e, IV 5.

**STANDARD SIX: Investigators**

**Standard:**

Public defender offices, assigned counsel, and private law firms holding public defense contracts should employ investigators with investigation training and experience. A minimum of one investigator should be employed for every four attorneys.

**Related Standards:**

American Bar Association, **Standards for Criminal Justice**, 4-4.1 and 5-1.14.

National Advisory Commission on Criminal Justice Standards and Goals, **Task Force on Courts**, 1973, Standard 13.14.

National Legal Aid and Defender Association, **Standards for Defender Services**, Standard IV-3.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Defense Contracts**, 1984, Standard III-9.

Seattle-King County Bar Association Indigent Defense Services Task Force, **Guidelines for Accreditation of Defender Agencies**, 1982, Guideline Number 8.

**STANDARD SEVEN: Support Services**

**Standard:**

The legal representation plan should provide for adequate numbers of investigators, secretaries, word processing staff, paralegals, social work staff, mental health professionals and other support services, including computer system_staff and network administrators. These professionals are essential to ensure the effective performance of defense counsel during trial preparation, in the preparation of dispositional plans, and at sentencing.

1. Legal Assistants - At least one full-time legal assistant should be employed for every four attorneys. Fewer legal assistants may be necessary, however, if the agency has access to word processing staff, or other additional staff performing clerical work. Defenders should have a combination of technology and personnel that will meet their needs.
2. Social Work Staff - Social work staff should be available to assist in developing release, treatment, and dispositional alternatives.
3. Mental Health Professionals - Each agency should have access to mental health professionals to perform mental health evaluations.
4. Investigation staff should be available as provided in Standard Six.
5. Each agency or attorney providing public defense services should have access to adequate and competent interpreters to facilitate communication with non-English speaking and hearing-impaired clients for attorneys, investigators, social workers, and administrative staff.

**Related Standards:**

American Bar Association, **Standards for Criminal Justice**, 4-8.1 and 5-1.4.

National Advisory Committee on Criminal Justice Standards and Goals, **Task Force on Courts**, Standard 13.14.

National Legal Aid and Defender Association, **Standards for Defender Services**, Standard IV-3.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Defense Contracts**, 1984, Standard III-8.

Seattle-King County Bar Association Indigent Defense Services Task Force, **Guidelines for Accreditation of Defender Agencies**, 1982, Guideline Number 7.

**STANDARD EIGHT: Reports of Attorney Activity**

**Standard:**

The legal representation plan shall require that the defense attorney or office maintain a case-reporting and management information system which includes number and type of cases, attorney hours and disposition. This information shall be provided regularly to the Contracting Authority and shall also be made available to the Office of the Administrator of the Courts. Any such system shall be maintained independently from client files so as to disclose no privileged information.

A standardized voucher form shall be used by assigned counsel attorneys seeking payment upon completion of a case. For attorneys under contract, payment should be made monthly, or at times agreed to by the parties, without regard to the number of cases closed in the period.

**Related Standards:**

American Bar Association, **Standards for Criminal Justice**, 5-3.3. (b) xii, The Report to the Criminal Justice Section Council from the Criminal Justice Standards Committee, 1989.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Defense Contracts**, 1984 Standard III-22.

National Study Commission on Defense Services, **Guidelines for Legal Defense Systems in the United States**, 1976, Guideline 3.4, 4.1, and 5.2.

**STANDARD NINE:  Training**

**Standard:**

The legal representation plan shall require that attorneys providing public defense services participate in regular training programs on criminal defense law, including a minimum of seven hours of continuing legal education annually in areas relating to their public defense practice.

In offices of more than seven attorneys, an orientation and training program for new attorneys and legal interns should be held to inform them of office procedure and policy. All attorneys should be required to attend regular in-house training programs on developments in criminal law, criminal procedure and the forensic sciences.

Attorneys in civil commitment and dependency practices should attend training programs in these areas. Offices should also develop manuals to inform new attorneys of the rules and procedures of the courts within their jurisdiction.

Every attorney providing counsel to indigent accused should have the opportunity to attend courses that foster trial advocacy skills and to review professional publications and other media.

**Related Standards:**

American Bar Association, **Standards for Criminal Justice**, 5-1.4.

National Advisory Commission on Criminal Justice Standards and Goals, **Task Force on Courts**, 1973, Standard 13.16.

National Legal Aid and Defender Association, **Standards for Defender Services**, Standard V.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Legal Defense Contracts**, 1984, Standard III-17.

Seattle-King County Bar Association Indigent Defense Services Task Force, **Guidelines for Accreditation of Defender Agencies**, 1982, Guideline Number 3.

National Legal Aid and Defender Association, **Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases**, 1988, Standard 9.1.

**STANDARD TEN: Supervision**

**Standard:**

Each agency or firm providing public defense services should provide one full-time supervisor for every ten staff lawyers or one half-time supervisor for every five lawyers. Supervisors should be chosen from among those lawyers in the office qualified under these guidelines to try Class A felonies. Supervisors should serve on a rotating basis, and except when supervising fewer than ten lawyers, should not carry caseloads.

**Related Standards:**

National Advisory Commission on Criminal Justice Standards and Goals, **Task Force on Courts**, 1973, Standard 13.9.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Legal Defense Contract**, 1984, Standard III-16.

Seattle-King County Bar Association Indigent Defense Services Task Force, **Guidelines for Accreditation of Defender Agencies**, 1982, Guideline Number 4.

**STANDARD ELEVEN: Monitoring and Evaluation of Attorneys**

**Standard:**

The legal representation plan for provision of public defense services should establish a procedure for systematic monitoring and evaluation of attorney performance based upon publicized criteria. Supervision and evaluation efforts should include review of time and caseload records, review and inspection of transcripts, in-court observations, and periodic conferences.

Performance evaluations made by a supervising attorney should be supplemented by comments from judges, prosecutors, other defense lawyers and clients. Attorneys should be evaluated on their skill and effectiveness as criminal lawyers or as dependency or civil commitment advocates.

**Related Standards:**

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Defense Contracts**, 1984, Standard III-16.

National Study Commission on Defense Services, **Guidelines for Legal Defense Systems in the United States**, 1976, Recommendations 5.4 and 5.5.

National Advisory Commission on Criminal Justice Standards and Goals, **Task Force on Courts**, 1973, Standard 13.9.

**STANDARD TWELVE:  Substitution of Counsel**

**Standard:**

The attorney engaged by local government to provide public defense services should not sub-contract with another firm or attorney to provide representation and should remain directly involved in the provision of representation. If the contract is with a firm or office, the contracting authority should request the names and experience levels of those attorneys who will actually be providing the services, to ensure they meet minimum qualifications. The employment agreement shall address the procedures for continuing representation of clients upon the conclusion of the agreement.  Alternate or conflict counsel should be available for substitution in conflict situations at no cost to the counsel declaring the conflict.

**Related Standards:**

American Bar Association, **Standards for Criminal Justice**, Standard 5-5.2.

National Advisory Commission on Criminal Justice Standards and Goals, **Task Force on Courts**, 1973, Standard 13.1.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Defense Contracts**, 1984, Guideline III-23.

**STANDARD THIRTEEN: Limitations on Private Practice of Contract Attorneys**

**Standard:**

Contracts for public defense representation with private attorneys or firms shall set limits on the amount of privately retained work which can be accepted by the contracting attorney. These limits shall be based on the percentage of a full-time caseload which the public defense cases represent.

**Related Standards:**

American Bar Association, **Standards for Criminal Justice**, 4-1.2(d), 5-3.2.

American Bar Association, **Ethical Obligations of Lawyers Who Represent Indigent Criminal Defendants When Excessive Caseloads Interfere With Competent and Diligent Representation**, May 13, 2006, Formal Opinion 06-441. http://www.abanet.org/cpr/pubs/ethicopinions.html

National Advisory Commission on Criminal Justice Standards and Goals, **Task Force on Courts**, 1973, Standard 13.7.

National Legal Aid and Defender Association, **Standards for Defender Services**, Standard III-3 and IV-1.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Legal Defense Contracts**, 1984, Guideline III-6.

## STANDARD FOURTEEN:

## QUALIFICATIONS OF ATTORNEYS

**1. In order to assure that indigent accused receive the effective assistance of counsel to which they are constitutionally entitled, attorneys providing defense services should meet the following minimum professional qualifications:**

A. Satisfy the minimum requirements for practicing law in Washington as determined by the Washington Supreme Court;

B. and be familiar with the statutes, court rules, constitutional provisions, and case law relevant to their practice area; and

C. be familiar with the collateral consequences of a conviction, including possible immigration consequences and the possibility of civil commitment proceedings based on a criminal conviction; and

D. Be familiar with mental health issues and be able to identify the need to obtain expert services; and

E. Complete seven hours of continuing legal education within each calendar year in courses relating to their public defense practice.

## 2. Trial attorneys' qualifications according to severity or type of case:

A. Death Penalty Representation. Each attorney acting as lead counsel in a death penalty case or an aggravated homicide case in which the decision to seek the death penalty has not yet been made shall meet the following requirements:

i. The minimum requirements set forth in Section 1; and

ii. at least five years criminal trial experience; and

iii. have prior experience as lead counsel in no fewer than nine jury trials of serious and complex cases which were tried to completion; and

iv. have served as lead or co-counsel in at least one jury trial in which the death penalty was sought; and

v. have experience in preparation of mitigation packages in aggravated homicide or persistent offender cases; and

vi. have completed at least one death penalty defense seminar within the previous two years; and

vii. meet the requirements of SPRC 2.[1]

---

[1]     SPRC 2

APPOINTMENT OF COUNSEL

At least two lawyers shall be appointed for the trial
and also for the direct appeal. The trial court shall retain

The defense team in a death penalty case should include, at a minimum, the two attorneys appointed pursuant to SPRC 2, a mitigation specialist and an investigator. Psychiatrists, psychologists and other experts and support personnel should be added as needed.

B. <u>Adult Felony Cases - Class A.</u>  Each staff attorney representing a defendant accused of a Class A felony as defined in RCW 9A.20.020 shall meet the following                                                                     requirements:

    i.   Minimum requirements set forth in Section 1, and

---

responsibility for appointing counsel for trial. The Supreme Court shall appoint counsel for the direct appeal. Notwithstanding RAP 15.2(f) and (h), the Supreme Court will determine all motions to withdraw as counsel on appeal.

A list of attorneys who meet the requirements of proficiency and experience, and who have demonstrated that they are learned in the law of capital punishment by virtue of training or experience, and thus are qualified for appointment in death penalty trials and for appeals will be recruited and maintained by a panel created by the Supreme Court. All counsel for trial and appeal must have demonstrated the proficiency and commitment to quality representation which is appropriate to a capital case. Both counsel at trial must have five years' experience in the practice of criminal law be familiar with and experienced in the utilization of expert witnesses and evidence, and not be presently  serving as appointed counsel in another active trial level death penalty case. One counsel must be, and both may be, qualified for appointment in capital trials on the list, unless circumstances exist such that it is in the defendant's interest to appoint otherwise qualified counsel learned in the law of capital punishment by virtue of training or experience. The trial court shall make findings of fact if good cause is found for not appointing list counsel.

At least one counsel on appeal must have three years' experience in the field of criminal appellate law and be learned in the law of capital punishment by virtue of training or experience.  In appointing counsel on appeal, the Supreme Court will consider the list, but will have the final discretion in the appointment of counsel.

Available at
http://www.courts.wa.gov/court_rules/?fa=court_rules.display&group=sup&set=SPRC&ruleid=supspr c2.

ii. Either: has served two years as a prosecutor; or
    a. has served two years as a public defender; or two years in a private criminal practice, and
    b. has been trial counsel alone or with other trial counsel and handled a significant portion of the trial in three felony cases that have been submitted to a jury.

C. Adult Felony Cases - Class B.  Violent Offense or Sexual Offense. Each attorney representing a defendant accused of a Class B violent offense or sexual offense as defined in RCW 9A.20.020 shall meet the following requirements:
    i.  Minimum requirements set forth in section 1, and
    ii. Either:
        a. has served one year as prosecutor; or
        b. has served one year as public defender; or one year in a private criminal practice; and
    iii. Has been trial counsel alone or with other counsel and handled a significant portion of the trial in two Class C felony cases that have been submitted                    to                    a                    jury.


D. Adult Felony Cases - All other Class B Felonies, Class C Felonies, Probation or Parole Revocation. Each staff attorney representing a defendant accused of a Class B felony not defined in c above or a Class C felony, as defined in RCW 9A.20.020, or involved in a probation or parole revocation hearing shall meet the following                                                        requirements:

    i.  Minimum requirements set forth in section 1, and
    ii. Either:
        a. has served one year as a prosecutor; or
        b. has served one year as a public defender; or one year in a private criminal practice; and
    iii. Has been trial counsel alone or with other trial counsel and handled a significant portion of the trial in two criminal cases that have been submitted to a jury; and
    iv. Each attorney shall be accompanied at his or her first felony trial by a supervisor if available.


E. Persistent Offender (Life Without Possibility of Release) Representation. Each attorney acting as lead counsel in a "two-strikes" or "three strikes" case in which a conviction will result in a mandatory sentence of life in prison without parole shall meet the following requirements:

    i.  The minimum requirements set forth in Section 1; [2] and

---

[2]    RCW 10.01.060 provides that counties receiving funding from the state Office of Public Defense under that statute must require "attorneys who handle the most serious cases to meet specified qualifications as set forth in the Washington state bar

  ii. Have at least:
  a. four years criminal trial experience; and
  b. one year experience as a felony defense attorney; and
  c. experience as lead counsel in at least one Class A felony trial; and
  d. experience as counsel in cases involving each of the following:
  1) Mental health issues; and
  2) Sexual offenses, if the current offense or a prior conviction that is one of the predicate cases resulting in the possibility of life in prison without parole is a sex offense; and
  3) Expert witnesses; and
  4) One year of appellate experience or demonstrated legal writing ability.

F. <u>Juvenile Cases - Class A</u> - Each attorney representing a juvenile accused of

a Class A felony shall meet the following requirements:

  i. Minimum requirements set forth in section 1, and
  ii. Either:
  a. has served one year as a prosecutor; or
  b. has served one year as a public defender;  one year in a private criminal practice and
  iii. Has been trial counsel alone of record in five Class B and C felony trials; and
  iv. Each attorney shall be accompanied at his or her first juvenile trial by a supervisor, if available.

  G. <u>Juvenile Cases - Classes B and C</u> - Each attorney representing a juvenile accused of a Class B or C felony shall meet the following requirements:

  i. Minimum requirements set forth in Section 1; and

  ii. Either:
  a. has served one year as a prosecutor; or
  b. has served one year as a public defender; or one year in a private  criminal practice, and

---

association endorsed standards for public defense services or participate in at least one case consultation per case with office of public defense resource attorneys who are so qualified. The most serious cases include all cases of murder in the first or second degree, persistent offender cases, and class A felonies.

     c. as been trial counsel alone in five misdemeanor cases brought to a final resolution; and

  iii. Each attorney shall be accompanied at his or her first juvenile trial by a supervisor if available.

H. <u>Juvenile Status Offenses Cases</u>.  Each attorney representing a client in a "Becca" matter shall meet the following requirements:

  i. The minimum requirements as outlined in Section 1; and
  ii. Either:
     a. have represented clients in at least two similar cases under the supervision of a more experienced attorney or completed at least three hours of CLE training specific to "status offense" cases or
     b. have participated in at least one consultation per case with a more experienced attorney who is qualified under this section.

I.  <u>Misdemeanor Cases</u>. Each attorney representing a defendant involved in a matter concerning a gross misdemeanor or condition of confinement, shall meet the requirements as outlined in Section 1.

J.  <u>Dependency Cases</u>. Each attorney representing a client in a dependency matter shall meet the following requirements:
  i. The minimum requirements as outlined in Section 1; and
  ii. Attorneys handling termination hearings shall have six months dependency experience or have significant experience in handling complex litigation.

  iii. Attorneys in dependency matters should be familiar with expert services and treatment resources for substance abuse.
  iv. Attorneys representing children in dependency matters should have knowledge, training, experience, and ability in communicating effectively with children, or have participated in at least one consultation per case either with a state Office of Public Defense resource attorney or other attorney qualified under this section.

K. <u>Civil Commitment Cases</u>. Each attorney representing a respondent shall meet the following requirements:

  i. Minimum requirements set forth in Section 1; and
  ii. Each staff attorney shall be accompanied at his or her first 90 or 180 day commitment hearing by a supervisor; and
  iii. Shall not represent a respondent in a 90 or 180 day commitment hearing unless he or she has either:

        a. served one year as a prosecutor, or
        b. served one year as a public defender, or one year in a private civil commitment practice, and
        c. been trial counsel in five civil commitment initial hearings; and

iv.    Shall not represent a respondent in a jury trial unless he or she has conducted a felony jury trial as lead counsel; or been co-counsel with a more experienced attorney in a 90 or 180 day commitment hearing.

### L.   Sex Offender "Predator" Commitment Cases

Generally, there should be two counsel on each sex offender commitment case. The lead counsel shall meet the following requirements:

i.    The minimum requirements set forth in Section 1; and
ii.   Have at least:
        a. Three years criminal trial experience; and
        b. One year experience as a felony defense attorney or one year experience as a criminal appeals attorney; and
        c. Experience as lead counsel in at least one felony trial; and
        d. Experience as counsel in cases involving each of the following:
            1) Mental health issues; and
            2) Sexual offenses; and
            3) Expert witnesses; and
        e. Familiarity with the Civil Rules; and
        f. One year of appellate experience or demonstrated legal writing ability.

Other counsel working on a sex offender commitment cases should meet the Minimum Requirements in Section 1 and have either one year experience as a public defender or significant experience in the preparation of criminal cases, including legal research and writing and training in trial advocacy.

### M. Contempt of Court Cases

Each attorney representing a respondent shall meet the following requirements:

i.    Minimum requirements set forth in Section 1; and
ii.   Each staff attorney shall be accompanied at his or her first three contempt of court hearings by a supervisor or more experienced attorney, or participate in at least one consultation per case with a state Office of Public Defense resource attorney or other attorney qualified in this area of practice.

### N. Specialty Courts

Each attorney representing a client in a specialty court (e.g., mental health court, drug diversion court, homelessness court) shall meet the following requirements:

    i.    Minimum requirements set forth in Section 1; and

    ii.    The requirements set forth above for representation in the type of practice involved in the specialty court (e.g., felony, misdemeanor, juvenile); and

    iii.    Be familiar with mental health and substance abuse issues and treatment    alternatives.

### 3. Appellate Representation.

Each attorney who is counsel for a case on appeal to the Washington Supreme Court or to the Washington Court of Appeals shall meet the following requirements:

A. The minimum requirements as outlined in Section 1; and
B. Either:

    i. has filed a brief with the Washington Supreme Court or any Washington Court    of Appeals in at least one criminal case within the past two years; or

    ii. has equivalent appellate experience, including filing appellate briefs in other    jurisdictions, at least one year as an appellate court or federal court clerk,    extensive trial level briefing or other comparable work.

    iii. Attorneys with primary responsibility for handling a death penalty appeal shall    have at least five years' criminal experience, preferably including at least one    homicide trial and at least six appeals from felony convictions.

**RALJ Misdemeanor Appeals to Superior Court:** Each attorney who is counsel alone for a case on appeal to the Superior Court from a Court of Limited Jurisdiction should meet the minimum requirements as outlined in Section 1, and have had significant training or experience in either criminal appeals, criminal motions practice, extensive trial level briefing, clerking for an appellate judge, or assisting a more experienced attorney in preparing and arguing an RALJ appeal.

### 4. Legal Interns.

A. Legal interns must meet the requirements set out in APR 9.
B. Legal interns shall receive training pursuant to APR 9 and Standard Nine, Training.

**Related Standards:**

National Advisory Commission on Criminal Justice Standards and Goals, **Task Force on Courts,** Standard 13.15.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Public Defense Contracts**, 1984, Standard III-7.

National Legal Aid and Defender Association, **Standards for the Appointment and Performance of Counsel in Death Penalty Cases**, 1987, Standard 5.1.

**STANDARD FIFTEEN: Disposition of Client Complaints**

**Standard:**

Each agency or firm or individual contract attorney providing public defense services shall have a method to respond promptly to client complaints. Complaints should first be directed to the attorney, firm or agency which provided representation. If the client feels that he or she has not received an adequate response, the contracting authority or public defense administrator should designate a person or agency to evaluate the legitimacy of complaints and to follow up meritorious ones. The complaining client should be informed as to the disposition of his or her complaint within one week.

**Related Standards:**

The American Bar Association, Standards for Criminal Justice, 4-5.1 and 4-5.2.

**STANDARD SIXTEEN: Cause for Termination of Defender Services and Removal of Attorney**

### Standard:

Contracts for indigent defense services shall include the grounds for termination of the contract by the parties. Termination of a provider's contract should only be for good cause. Termination for good cause shall include the failure of the attorney to render adequate representation to clients; the willful disregard of the rights and best interests of the client; and the willful disregard of the standards herein addressed.

Removal by the court of counsel from representation normally should not occur over the objection of the attorney and the client.

### Related Standards:

American Bar Association, **Standards for Criminal Justice**, Standard 5-1.3, 5-5.3.

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Defense Contracts**, 1984, Guideline III-5.

National Study Commission on Defense Services, **Guidelines for Legal Defense Systems in the United States**, 1976, Recommendations 2.12 and 2.14.

National Advisory Commission on Criminal Justice Standards and Goals, **Task Force on Courts**, 1973, Standard 13.8.

## STANDARD SEVENTEEN: Non-Discrimination

### Standard:

Neither the Contracting Authority, in its selection of an attorney, firm or agency to provide public defense representation, nor the attorneys selected, in their hiring practices or in their representation of clients, shall discriminate on the grounds of race, color, religion, national origin, age, marital status, gender, sexual orientation or disability. Both the contracting authority and the contractor shall comply with all federal, state, and local non-discrimination requirements.

### Related Standards:

American Bar Association, **Standards for Criminal Justice**, Providing Defense Services, Standard 5-3.1.

National Legal Aid and Defender Association, **Standards for Defender Services**, 1976, Standard III-8.

**STANDARD EIGHTEEN: Guidelines for Awarding Defense Contracts**

**Standard:**

The county or city should award contracts for public defense services only after determining that the attorney or firm chosen can meet accepted professional standards. Under no circumstances should a contract be awarded on the basis of cost alone. Attorneys or firms bidding for contracts must demonstrate their ability to meet these standards.

Contracts should only be awarded to a) attorneys who have at least one year's criminal trial experience in the jurisdiction covered by the contract (i.e., City and District Courts, Superior Court or Juvenile Court), or b) to a firm where at least one attorney has one year's trial experience.

City attorneys, county prosecutors, and law enforcement officers should not select the attorneys who will provide indigent defense services.

**Related Standards:**

National Legal Aid and Defender Association, **Guidelines for Negotiating and Awarding Indigent Legal Defense Contracts**, 1984, Standard IV-3.

King County Bar Association Indigent Defense Services Task Force, **Guidelines for Accreditation of Defender Agencies**, 1982, Statement of Purpose.

# EXHIBIT B

City of Burlington

Contract/Agreement Coversheet

CONTRACT NO.   2009-06          DEPARTMENT __Administration____

FEDERAL TAXPAYER I.D ._____

GRANTEE /CONSULTANT:  Richard M. Sybrandy & Morgan M. Witt_____

SERVICES PROVIDED   Public Defense Services 2009 - 2010_____

AMOUNT   $57,600/year for combined services or $60,750 if arraignment is necessary

FUND SOURCE _____

DURATION FROM:  January 1, 2009_____  TO   December 31, 2010_____

                        Original:    City of Mount Vernon

                        Copies:    City of Burlington
                                   Finance Department
                                   Municipal Court

# City of Mount Vernon
# City of Burlington
# Public Defense Services
# 2009 – 2010 Contract for Services
### January, / 2009

1

## Table of Contents

Section 1: DEFINITIONS ...............................................................................
Section 2: PUBLIC DEFENSE STANDARDS.................................................
Section 3: DURATION OF CONTRACT........................................................
Section 4: SCOPE OF WORK..........................................................................
Section 5: PERFORMANCE AND QUALIFICATIONS ................................
Section 6: PAYMENT......................................................................................
Section 7: REPORTING REQUIREMENTS...................................................
Section 8: INTERNAL CONTROL AND ACCOUNTING SYSTEM.....................
Section 9: ADDRESSES FOR NOTICES AND DELIVERABLE MATERIALS.
Section 10: CORRECTIVE ACTION...............................................................
Section 11 TERMINATION AND SUSPENSION ...........................................
Section 12: DISPUTES (OTHER THAN SUSPENSION OR TERMINATION).....
Section 13: EQUAL EMPLOYMENT OPPORTUNITY AND OUTREACH.........
Section 14: SECONDARY DEFENDER..........................................................
Section 15: OTHER LEGAL REQUIREMENTS ..............................................
Section 16: INDEMNIFICATION....................................................................
Section 17: INSURANCE..................................................................................
Section 18: ESTABLISHMENT AND MAINTENANCE OF RECORDS...............
Section 19: AUDITS, RECORDS, AND ANNUAL FINANCIAL STATEMENTS
Section 20: CONTRACTUAL RELATIONSHIP................................................
Section 21: ASSIGNMENT AND SUBCONTRACTING....................................
Section 22: ERRORS & OMISSIONS; CORRECTION .....................................
Section 23: CONFIDENTIALITY.....................................................................
Section 24: MISCELLANEOUS PROVISIONS.................................................

ATTACHMENT 1 – PUBLIC DEFENDER PAYMENT SCHEDULE......................
ATTACHMENT 2 – SECONDARY DEFENDER PAYMENT SCHEDULE ..........

## 2009 – 2010 CONTRACT FOR
## CITY OF MOUNT VERNON PUBLIC DEFENSE SERVICES
## CITY OF BURLINGON PUBLIC DEFENSE SERVICES

WHEREAS, this Contract is made and entered into by and between the City of Mount Vernon ("Mount Vernon"), a Washington municipal corporation, the City of Burlington ("Burlington"), a Washington municipal corporation collectively referred to herein as "the Cities" or individually as "the City" and Richard M. Sybrandy, P.O. Box 175 Mount Vernon, WA 98273-0175, and Morgan M. Witt, P.O. Box 726, Mount Vernon, WA 98273-0726 (together, the "Public Defender"), who are licensed to practice law within the State of Washington.

WHEREAS, the Cities desire to have legal services, as described in the Contract, performed for indigent persons legally entitled to appointed representation in the City of Mount Vernon, and the City of Burlington by the Public Defender as an independent contractor.

WHEREAS, the Cities and the Public Defender agree that any and all funds provided pursuant to this Contract are provided for the sole purpose of provision of legal services to indigent persons charged with crimes in the Municipal Department of the Skagit County District Court.

NOW, THEREFORE, in consideration of the mutual benefits to be derived, the promises and covenants contained herein, and other good and valuable consideration, the Parties CONTRACT AND AGREE as follows:

### Section 1: DEFINITIONS

A. Case Assignment: A case assignment is that particular case assigned by the Cities, the Office of Assigned Counsel, or the Court to the Public Defender.

B. Case Credit: Case credit is a unit of work computed as follows. The Public Defender will receive no credit for a misdemeanor case when the Court dismisses the case upon the motion of the prosecuting attorney before any legal services have been provided. The Public Defender will receive no credit for work done on cases which are subsequently identified as conflicts with the exception of cases in which (after work has been performed) the client obtains a new attorney at his own expense or through a request to the Court, or for other extraordinary circumstances approved by the City including, but not limited to, information or evidence which Public Defender could not have reasonably known or discovered at the time of the initial conflicts check. Each pre-trial case is counted once only, irrespective of any subsequent reappointments pursuant to when a client fails to appear (FTA). They will be counted at the time of first appointment. Cases where a defendant was previously represented by the Public Defender, that were previously counted when they were in a pre-trial status, will not be counted again unless the defendant FTA's at a post-conviction hearing. Post-conviction cases where

3

defendants FTA and are subsequently reappointed to the Public Defender will be counted again; however, this will occur only once. No matter how many times a defendant FTA's and the Public Defender is reappointed when the case is in a post-conviction status, the case will be recounted only once.

The Parties recognize that there exists a distinction in types of misdemeanors which require different time and effort to ensure effective representations. Moreover court administrative procedures and jurisdictional policies are in place for certain simple misdemeanors such as bail forfeitures, post and forfeiture stipulations, and civil compromises for offenders of certain misdemeanors that permit a Public Defender to handle more misdemeanor cases. Therefore the following units of credits shall be considered when determining case credit workload standards:

1. Driving While License Suspended Third Degree first three offenses, Theft Third Degree first or second offense, NVOL w/o Identification first three offenses, Malicious Mischief under $50 first offense, Unlawful Issuance of Bank Checks [other] or misdemeanor case of similar complexity as determined by the Contract Administrator shall be 1/3 a case credit.

2. Driving While License Suspended Third Degree third or greater offense, Driving While License Suspended Second Degree, Malicious Mischief under $50 second or greater offense, Malicious Mischief over $50, Negligent Driving First Degree, Theft Third Degree third or greater offense, or misdemeanor case of similar complexity as determined by the Contract Administrator shall be ½ a case credit.

3. All other misdemeanors shall be 1 case credit. Under no circumstances shall the crimes of Driving under the Influence, Physical Control, Reckless Driving, Assault Fourth Degree (either Non-Domestic or Domestic Violence), Violation of a No Contact Order, Protection Order, or Restraining Order, or any appeal of any misdemeanor be considered less than 1 case credit.

C. Cities/City: Cities or City refers to both the City of Mount Vernon and the City of Burlington.

D. Client: An indigent person who has been assigned to the Public Defender by a City, the Office of Assigned Counsel, or the Court.

E. Completed Case: A completed case involves all necessary legal action from arraignment through disposition or the necessary withdrawal of counsel after the substantial delivery of legal services. This includes the filing of a notice of appeal upon the client's request, application to proceed in forma pauperis on appeal, and a motion for appointment of appellate counsel. It shall not include a misdemeanor probation review unless such review occurs within forty-five (45) days of disposition. Additionally, it shall not include any hearing ordered at the conclusion of a deferred sentence unless such hearing occurs within forty-five (45) days of sentencing.

4

F. Contract Administrator: The Contract Administrator for the City of Mount Vernon shall be the Project Administrator in the Office of the Mayor; the Contract Administrator for the City of Burlington shall be the City Administrator

G. Court: Court is the Municipal Court of Burlington and the Municipal Court of Mount Vernon; both are municipal departments of the Skagit County District Court.

H. Criminal Case: A case is any one charge or series of related charges filed against one defendant/respondent set for one court hearing that will ultimately lead to one disposition. If additional charges are filed against a defendant/respondent while the initial assignment remains pending, the additional charges shall be counted as a new case only if the charges arise out of a separate incident.

I. Criminal Case Disposition: Case disposition shall mean the dismissal of charges, the entering of an order of deferred prosecution, an order or result requiring a new trial, imposition of sentence or deferral of same, or dispositional continuance and further hearing on that cause number, entry of an order for deferral of sentence, or exhaustion of appellate rights. A restitution hearing ordered at the time of original disposition, whether it is held within forty-five (45) days or subsequently, shall be included as part of the case as defined by this disposition description. It shall include the filing of a notice of appeal, if applicable. It shall not include a misdemeanor probation review unless such review occurs within forty-five (45) days of disposition, or a review set at the time of sentencing. Additionally, it shall not include any hearing ordered at the conclusion of a deferred sentence unless such hearing occurs within forty-five (45) days of sentencing.

J. Discovery: Discovery consists of those reports, letters, memorandums, after-action reports, incidents reports, witness statements, officers' statements, expert witness reports which the City Prosecutor is obligated to provide on a continuing basis under State law or court rule and pursuant to State and Federal Constitutional requirements.

K. Legal Service: Legal service is legal representation provided by an individual licensed attorney and associated paraprofessional staff to an individual client, pursuant to a case assignment or court appointment. The attorney is required by the Public Defender to satisfy the Code of Professional Responsibility, the law of the State of Washington and the United States in the full discharge of the attorney's duties to each individual client under this Contract.

L. Indigent Defendant: An indigent defendant is a person who has been determined to be indigent by the Court, the City, or the Office of Assigned Counsel as being eligible for a court-appointed attorney, pursuant to RCW 10.101.

M. Mayor: Mayor is the Mayor of Mount Vernon or designee and the Mayor of Burlington or designee.

5

N. Misdemeanor Practice Area:

1. Misdemeanor Case: Any criminal case filed by the Mount Vernon or Burlington City Attorney in their respective Municipal Courts whether a misdemeanor or a gross misdemeanor.

2. Misdemeanor Appeal: A misdemeanor appeal involves filing the notice of appeal, if necessary, perfecting the record following the filing of the notice of appeal, preparation of the transcript pursuant to Rule 6.3a RALJ, preparing such briefs and memoranda as are required, arguing the case in superior court, and handling such paperwork as the superior court's decision and orders direct.

3. Misdemeanor Writ: A writ involves filing notice, perfecting the record, preparing such briefs and memoranda as required, arguing the case in superior court and handling such paperwork as the superior court's decision and orders direct.

O. Paraprofessional Staff: Investigators, social workers and paralegals.

P. Public Defender: The Public Defender is Richard M. Sybrandy, P.O. Box 175 Mount Vernon, WA 98273-0175, and Morgan M. Witt, P.O. Box 726, Mount Vernon, WA 98273-0726

Q. Secondary Defender: The Secondary Defender is Glen Hoff-Attorney at Law– whose address is 121 W Broadway, Mount Vernon WA 98273

## Section 2: PUBLIC DEFENSE STANDARDS

The City adopts the following standards for the delivery of Public Defense Services, pursuant to RCW 10.101.030:

A. Compensation of Counsel: Compensation of counsel shall be in accordance with the schedule set forth in Attachment 1.

B. Duties and Responsibilities of Counsel: The duties and responsibilities of counsel shall be in accordance with Section 4 F as well as the practice standards required by Section 5 A.

C. Caseload Limits. The maximum number of cases which each Public Defender serving under the Contract shall handle shall not exceed 400 caseload credits per year.

D. Responsibility for Expert Witness Costs: After approval by the Court, expert witness fees will be paid by the City.

E. Administrative Expenses: Administrative expenses shall be paid out of compensation provided to the Public Defender as described in Attachment 1.

6

F. Support Services: The Public Defender warrants that it shall provide adequate investigative, paralegal, and clerical services and facilities necessary for representation of indigent defendants. The Public Defender shall establish reasonable office hours in which to meet with defendants prior to the day of hearing or trial. The Public Defender shall be responsible for ensuring that they are able to properly communicate with defendants. Parties acknowledge that many clients will speak English as a second language or not at all.

G. Twenty-Four Hour Telephone Access: At the time of execution of this agreement, the Public Defender shall provide to the police departments of the Cities the telephone number or numbers at which the Public Defender can be reached for critical stage advice to defendant during the course of police investigation and/or arrests twenty-four (24) hours each day.

H. Supervision. The Public Defender shall provide for appropriate and competent supervision of attorneys, if necessary, depending on their experience, skill and the simplicity or complexity of the cases they are assigned. The Public Defender shall ensure compliance with RPC 5.1 and 5.3.

I. Non-discrimination. The Public Defender in their representations of defendants shall not discriminate on the grounds of race, color, religion, national origin, age, marital status, gender, sexual orientation, or disability. The Public Defender shall comply with all federal, state, and local non-discrimination requirements, including RPC 8.4 (h).

## Section 3: DURATION OF CONTRACT

This Contract shall commence on the first (1st) day of January 2009 and terminate the thirty-first (31st) day of December 2010 unless extended or terminated earlier pursuant to the terms and conditions of this Contract. The Parties may mutually agree to extend the Contract for an additional term of two (2) years, terminating on December 21, 2012. The Public Defender shall notify the Cities on or before September 1, 2010 in the event the Public Defender desires to extend the Contract.

## Section 4: SCOPE OF WORK

The Scope of Work of this Contract is as described in the RFP and the Response to the RFP which are attached to and made a part of this Contract.

A. Purpose: The purpose of this Contract is to provide legal services through effective assistance of counsel to indigent persons. Legal Services shall be statutorily and constitutionally based, within the framework of an efficient and fiscally responsible independent Public Defender.

B. Professional Conduct:

1. The Public Defender shall provide the services of attorneys and staff members in compliance with all of the applicable laws and administrative regulations of the State

7



of Washington, the United States, Mount Vernon Municipal Code, Burlington Municipal Code, and the Washington State Rules for Professional Conduct (RPC).

2. Nothing in this Contract shall be construed to impair or inhibit the exercise of independent, professional judgment by an attorney employed by the Public Defender with respect to any client wherein an attorney-client relationship has been established pursuant to the terms of this Contract.

3. Nothing in this Contract shall require or permit, without the consent of the defendant, access to, or disclosure of, any confidential communication made by a defendant to any attorney employed by the Public Defender or any such confidential communications made to agents or employees of the Public Defender for such attorney; the advice given by an attorney to a defendant; or any other statements and materials privileged from disclosure in a court of law, provided, however, that the Public Defender may disclose such information in accordance with RPC 1.6.

4. Attorneys and staff employed by the Public Defender shall not solicit or accept any compensation, gifts, gratuities, or services from any defendant.

C. Eligible Population: The population served shall be indigent persons legally entitled to appointed legal services in Mount Vernon Municipal Court and Burlington Municipal Court as assigned by the Court or by the Office of Assigned Counsel on behalf of the Court.

D. Conflicts: The Public Defender reserves the right to decline to advise or represent any person on the basis of actual legal, ethical, or professional conflict of interest as is prohibited by RPC 1.6 – 1.8. The Public Defender shall perform a conflicts check before any substantial work is done on the case. No payment shall be made for work done on cases which are subsequently identified as conflicts with the exception of extraordinary circumstances approved by the City including, but not limited to, information or evidence which the Public Defender could not have reasonably known or discovered at the time of the initial conflicts check.

E. Duties and Responsibilities of the Public Defender-Independent Contractor: The Public Defender shall:

1. Hire all Public Defender personnel;

2. Provide fiscal management; establish compensation of personnel; maintain payroll records and provide payments for all personnel including withholding of income taxes, payment of social security taxes, payment of worker compensation and industrial insurance taxes (where applicable), and fringe benefits;

3. Supervise and maintain the quality of staff and services received or performed, and provide internal evaluation sessions as necessary;

8



4. Suspend, remove, or terminate personnel not adequately performing the duties and responsibilities assigned, mishandling funds, engaging or condoning misconduct, or whose conduct or continued performance of duties is detrimental to the Public Defender program;

5. Accept and represent all cases and defendants officially referred by the Court (or by the Office of Assigned Counsel on behalf of the Court) unless withdrawal from such representation is allowed in accordance with provisions as stated above;

6. In the event that this Contract is terminated or not renewed, continue the representation of all defendants who have been referred by the Court during the period in which the Contract is in effect for the compensation received or receivable under the terms of the Contract, provided that completed representation is not made impossible by a client's failure to appear, until withdrawal or termination of representation is permissible under RPC 1.16 as now or hereafter amended including obtaining permission by the Court for withdrawal when required..

F. Duties and Responsibilities of **Public Defender Attorneys**: In order to perform their duties under this Contract, staff attorneys of the Public Defender shall:

1. Counsel and represent in all ensuing criminal proceedings before appeal those defendants who are officially referred by the Court. Such services include, but are not limited to: preparation for and representation of the client at the pre-trial hearings, trial, sentencing, post conviction review, and any appeals to Superior Court of Washington Appellate Courts, and attending all court hearings required by the Washington Court or Local Court Rules now or hereafter adopted.

2. Use City funding to represent defendants only in criminal matters in Mount Vernon and Burlington municipal courts. Attorneys shall not use City funding to represent persons in any matter which is civil in nature, including civil infractions and property forfeiture actions brought pursuant to Chapter 59.50 RCW.

3. Counsel defendants with regard to their rights to appellate review and file any necessary notice for appellate review when requested by a defendant.

4. The Public Defender will be available to talk and meet in person with indigent defendants in the Skagit County Jail and/or an appropriate location in either the City of Burlington or the City of Mount Vernon that provides adequate assurances of privacy.

## Section 5: PERFORMANCE AND QUALIFICATIONS

A. Practice Standards and Records

1. The Public Defender shall ensure that all attorneys, paraprofessional staff, and supervisors shall maintain contemporaneous records of all legal services provided on

9



a specific case. The records shall provide a factual description of the work done and shall be sufficiently detailed to allow monitoring of legal service activity by the Contract Administrator.

2. .The Public Defender agrees that, within available resources, reasonable efforts will be made by the Public Defender to continue the initial attorney assigned to a defendant throughout any case in which representation is undertaken. The Public Defender is not prohibited from rotating attorneys or from assigning a single attorney to handle various aspects of legal proceedings for all indigent persons where such method of assignment is the most reasonable method of obtaining effective legal representation for indigent persons.

3. A member of the Public Defender staff shall obtain basic contact and other fundamental intake information for a bail hearing within one (1) court day from notification to the Public Defender of the assignment of the case and the in-custody status of the defendant.

4. The Public Defender shall provide defendants with contact information for availability during office hours. The Public Defender will also return phone calls or other attempts to contact the Public Defender within forty-eight (48) hours, excluding weekends.

5. Discovery. Each City shall provide through their City Attorney's Office to the Public Defender at no cost to the Public Defender or the defendant one (1) copy of all discoverable materials concerning each assigned case with the exception of audio and video tapes which shall be made available for inspection in accordance with rules for discovery.

6. Discovery shall be reviewed within five (5) days after receipt for purposes of determining any conflicts of interest. The Public Defender shall notify the Contract Administrator of any conflict of interest as defined by the Washington State Rules of Professional Conduct. The Public Defender shall provide the Contract Administrator with a written explanation stating the basis for the conflict in its notification.

7. The Public Defender shall establish and enforce policies and procedures to ensure that attorney time and other Defender resources funded by this Contract shall only be used for work which is authorized by this Contract.

8. The Public Defender shall ensure that a preliminary written response to any written complaints concerning services provided by the employees of the Defender or the Defender itself shall be submitted to the Contract Administrator within three (3) working days of the date the complaint is received by the Public Defender. Written complaints include e-mail communications from the Contract Administrator.

9. The Public Defender shall establish policies and procedures for other work that may be provided by staff or attorneys of the Public Defender. These policies and

10



procedures shall assure that any such work is not provided to the exclusion or detriment of legal services that are the subject of this Contract.

10. The Public Defender shall provide defense services in a professional, skilled manner consistent with the Rules of Professional Conduct, case law and applicable court rules defining the duties of counsel and the right of defendants in criminal cases and will act with reasonable diligence and promptness in representing a defendant.

B. Minimum Attorney Qualifications:

1. Every Public Defender attorney providing indigent defense services must be a licensed member of the Washington State Bar and be a member in good standing of the Bar.

2. Every Public Defender attorney shall satisfy the minimum requirements for practicing law in Washington as determined by the Washington Supreme Court; seven (7) hours of each year's required continuing legal education credits shall be in courses relating to criminal law practice or other areas of law in which the Public Defender provides legal services to defendants under the terms of this Contract. The Public Defender will maintain for inspection on its premises records of compliance with this provision.

3. The Public Defender may employ interns pursuant to Admission to Practice Rule (APR) 9. No more than 30% of the cases handled by the Public Defender may be assigned to Rule 9 interns.

4. Any Public Defender attorney who supervises a misdemeanor attorney must have at least three years of criminal defense experience in superior, district or municipal courts in Washington State.

5. Unless prior written approval has been granted by the Contract Administrator, no attorney may provide services under this Contract if that attorney has been removed from representation in a case for failure to perform basic services necessary to the case or person, or in any manner has been found to be ineffective on appeal by either an ethics panel or by an appellate court.

C. Monitoring and Evaluations:

With respect to a nonlawyer employed or retained by or associated with the Public Defender, the Public Defender shall ensure that the Public Defender has in effect measures giving reasonable assurance that the persons conduct is compatible with professional obligation of the Public Defender required under RPC 5.3 as now or hereafter amended including performing professional performance evaluations of paraprofessional staff when warranted and engaging in appropriate discipline when the Public Defender knows of specific conduct that would be a violation of the Rules of

11

Professional Conduct. The Public Defender shall submit to the City a report of any discipline arising out of the performance of this agreement by paraprofessional staff. Subordinate attorneys may not be employed by the Public Defender to be used in the performance of this agreement unless agreed to by the parties and a systematic monitoring and evaluation of attorney performance is established

## Section 6: PAYMENT

A. The Cities shall reimburse the Public Defender for the services as specified in Section 4, Scope of Work, in accordance with the fee schedule set forth in Attachment 1.

B. The Public Defender shall provide the Cities with a certification of completed case assignments twenty (20) working days after the close of each calendar month.

C. Should the Contract terminate prior to December 31, 2010, the Public Defender will refund any pro-rated portion of payments back to the City.

D. No payment shall be made for work done on cases which are subsequently identified as conflicts with the exception of extraordinary circumstances approved by the Contract Administrator of the applicable City including, but not limited to, information or evidence which Public Defender could not have reasonably known or discovered at the time of the initial conflicts check.

E. In the event of failure to comply with any items and conditions of this Contract or to provide in any manner the work or services as agreed to herein, the City reserves the right to withhold any payment until the City is satisfied that corrective action has been taken or completed. This option is in addition to and not in lieu of the City's right to termination as provided in Section 11 of this Contract.

## Section 7: REPORTING REQUIREMENTS
Case Management System: The Public Defender will implement a case management system that will allow them to file the monthly reports described below.

Reporting: The Public Defender will provide the City with monthly reports in spreadsheet format on all completed cases. These reports must contain:

- ➢ Defendant's name
- ➢ Cause number(s)
- ➢ Criminal charges filed
- ➢ If it was a probation review hearing
- ➢ Disposition of each charge
- ➢ Defendant's jail custody status prior to sentencing
- ➢ Bench Trial, Jury Trial, Plea or Dismissal
- ➢ Whether an appeal was filed
- ➢ Attorney(s) name(s)

12

> Hours spent by attorney

The City, or any of its duly authorized representatives, shall have access to any such books, records and documents for inspection, audit and copying. The report is due on or before the twentieth (20th) day of the following month for services of the prior month. Payment may be withheld until such reports are submitted.

The Public Defender will immediately notify the Contract Administrator in writing when it becomes aware that a complaint lodged with the Bar Association has resulted in reprimand, suspension, or disbarment of an attorney providing services under this Contract.

## Section 8: INTERNAL CONTROL AND ACCOUNTING SYSTEM

The Public Defender shall establish and maintain a system of accounting and internal controls that comply with generally accepted accounting principles and financial reporting standards applicable to publicly supported corporations as prescribed by the Financial Accounting Standards Board.

## Section 9: ADDRESSES FOR NOTICES AND DELIVERABLE MATERIALS

All official notices under this Contract shall be delivered to the following addresses (or such other address(es) as either party may designate in writing:

If to City of Burlington:

City Administrator
833 S. Spruce Street
Burlington, WA  98233-1945

If to the City of Mount Vernon:

Project Administrator
910 Cleveland Avenue
Mount Vernon, WA 98273

If to the Public Defender:

Richard M. Sybrandy
P.O. Box 175
Mount Vernon, WA  98273-0175, and

Morgan M. Witt
P.O. Box 726
Mount Vernon, WA  98273-0726

13

### Section 10: CORRECTIVE ACTION

If the City believes that a breach of this Contract has occurred, and if the City believes said breach to warrant corrective action, the following sequential procedure shall apply:

A.  The City will notify the Public Defender in writing the nature of the breach;

B.  The Public Defender shall respond in writing within three (3) working days of its receipt of such notification, which response shall indicate the steps being taken to correct the specified deficiencies, and the proposed completion date for bringing the Contract into compliance, which date shall not be more than ten (10) working days from the date of the Public Defender's response;

C.  The City will notify the Public Defender in writing of the City's determination as to the sufficiency of the Public Defender's corrective action plan. The determination of the sufficiency of the Public Defender's corrective action plan will be at the sole discretion of the City; however, the City's determination of the sufficiency of the Public Defender's corrective action plan shall take into consideration the reasonableness of the proposed corrective action, in light of the alleged breach. In all cases where corrective action is determined by the City to be appropriate, the City shall work with the Public Defender to implement the plan;

D.  In the event that the Public Defender does not respond within the appropriate time with the corrective action plan, or the Public Defender's corrective action plan is determined by the City to be insufficient, the City may commence termination of this Contract in whole or in part pursuant to Section 11 (A) Termination and Suspension;

E.  In addition, the City may withhold any payment owed the Public Defender or prohibit the Public Defender from incurring additional obligations of funds until the City is satisfied the corrective action has been taken or completed; and

F.  Nothing herein shall be deemed to affect or waive any rights the Parties may have pursuant to Section 11 Termination and Suspension.

### Section 11: TERMINATION AND SUSPENSION

A. Either Burlington or Mount Vernon may terminate this Contract in whole or in part upon ten (10) days' written notice to the Public Defender in the event:

1. The Public Defender substantially breaches any duty, obligation, or service required pursuant to this Contract including the failure to render adequate representation to defendants; the willful disregard of the rights and best interests of the defendant; and the willful disregard of the standards set out in this Contract. Any violation of the Rules of Professional Conduct, as determined by the WSBA, will be cause for Contract termination.

14

2. The Public Defender engages in misappropriation of funds or fraudulent disbursement of funds.

3. The duties, obligations, or services herein become impossible, illegal, or not feasible.

A termination by either Burlington or Mount Vernon shall constitute a termination of the entire Contract including the rights and obligations under the Contract for both Cities. Should the non-terminating City wish to have the Public Defender continue providing services, it shall enter into a separate Contract with the Public Defender.

Before a City terminates this Contract pursuant to subsection 11. A. - Termination and Suspension, the City shall provide all Parties written notice of termination, which notice shall include the reasons for termination and the effective date of termination. The Public Defender shall have the opportunity to submit a written response to the City within (10) working days from the date of the City's notice. If the Public Defender elects to submit a written response, the Contract Administrator will review the response and make a determination within ten (10) days after receipt of the Public Defender's response. In the event the Public Defender does not concur with the determination, the Public Defender may request a review of the decision by the Mayor. In the event the Mayor reaffirms termination, the Contract shall terminate in ten (10) days from the date of the final decision of the Mayor. If the Mayor does not make a final determination within twenty (20) days provided herein, the Contract shall remain in full force and effect until such decision is made and communicated to the Public Defender. Once a final determination is made by the Mayor, and if such determination sustains the decision of termination, said decision shall become effective ten (10) days from the date the final determination is made and communicated to the Public Defender.

In the event this Contract is terminated in whole or in part pursuant to Subsection A of this Section, the Public Defender shall be liable for damages, including the reasonable costs of the procurement of similar services from another source unless it is determined by the Contract Administrator that (i) no default actually occurred, or (ii) the failure to perform was without the Public Defender's control, fault or negligence.

B. In the event of the termination or suspension of this Contract, the Public Defender shall remit any unexpended balance of funds paid for cases assigned and not completed, less the amount the City and the Public Defender agree shall be necessary to deliver services in those cases. The Contract Administrator may request the Public Defender to attempt to withdraw from any case assigned and not completed. Provided that, should a court require, after the Public Defender has attempted to withdraw, the appearance of counsel from the Public Defender for any defendant previously represented by the Public Defender where such representation is no longer the obligation of the Public Defender pursuant to the terms of this Contract, the City will honor payment to the Public Defender upon judicial verification that continued representation is required. The amount to be paid to the Public Defender shall be on the same basis as assigned counsel payments.

15

C. The Public Defender reserves the right to terminate this Contract with cause with thirty (30) days written notice should the City substantially breach any duty, obligation or service pursuant to this Contract. In the event that the Public Defender terminates this Contract for reasons other than cause resulting from substantial breach of this Contract by the City, the Public Defender shall be liable for damages, including the excess costs of the procurement of similar services from another source, unless it is determined by the Contract Administrator that (i) no default actually occurred, or (ii) the failure to perform was without the Public Defender's control, fault or negligence. A termination by the Public Defender shall constitute a termination of the entire Contract including the rights and obligations under the Contract for both Cities. Should a City and the Public Defender desire to have the Public Defender continue providing public defender services, the Parties shall enter into a separate Contract.

D. In the event that termination is due to misappropriation of funds, non-performance of the scope of services, or fiscal mismanagement, the Public Defender shall return to the City those funds, unexpended or misappropriated, which, at the time of termination, have been paid to the Public Defender by the City.

E. Otherwise, this Contract shall terminate on the date specified herein, and shall be subject to extension only by mutual agreement of the Parties hereto in writing.

F. Nothing herein shall be deemed to constitute a waiver by either Party of any legal right or remedy for wrongful termination or suspension of the Contract. In the event that legal remedies are pursued for wrongful termination or suspension or for any other reason, the non-prevailing Party shall be required to reimburse the prevailing Party for all attorneys' fees.

G. In the event of termination, suspension, or non-renewal of this Contract, all cases not required to be completed by the Public Defender shall be returned to the Contract Administrator for reassignment.

## Section 12: DISPUTES (OTHER THAN SUSPENSION OR TERMINATION)

A. The Public Defender shall address questions or claims regarding meaning and intent of the Contract or arising from this Contract in writing to both Cities Contract Administrators, within ten (10) calendar days of the date in which the Public Defender knows or should know of the question or claim. The Cities will ordinarily respond to the Public Defender in writing with a decision, but absent such written response, the question or claim shall be deemed denied upon the thirtieth (30th) day following receipt by the City.

B. In the event the Public Defender disagrees with any determination or decision of the City, the Public Defender may, within ten (10) calendar days of the date of such determination or decision, appeal the determination or decision in writing to both Contract Administrators. Such written notice of appeal shall include all documents and

16

other information necessary to substantiate the appeal. The Contract Administrators will review the appeal and transmit a decision or determination in writing. The decision will be considered final. Appeal to the Contract Administrators shall be a condition precedent to litigation hereunder.

C. Pending final decision of a dispute hereunder, the Public Defender shall proceed diligently with the performance of the Contract and in accordance with the direction of the Cities. Failure to comply precisely with the time deadlines under this subsection as to any claim shall operate as a waiver and release of that claim and an acknowledgment of prejudice to the Cities.

## Section 13: EQUAL EMPLOYMENT OPPORTUNITY AND OUTREACH

The Public Defender shall not discriminate against any employee or applicant for employment because of race, religion, creed, age, color, sex, marital status, sexual orientation, gender identity, political ideology, ancestry, national origin, or the presence of any sensory, mental or physical handicap, unless based upon a bona fide occupational qualification. The Public Defender shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their creed, religion, race, age, color, sex, national origin, marital status, political ideology, ancestry, sexual orientation, gender identity, or the presence of any sensory, mental or physical handicap.

## Section 14: SECONDARY DEFENDER

In the event the Public Defender must withdraw from a case because of a conflict of interest, the Public Defender shall refer the Defendant to the secondary Defender who shall provide another attorney competent and able to provide legal services to indigents. The cost of conflict counsel shall be paid according to the schedule set forth in Attachment 2.

## Section 15: OTHER LEGAL REQUIREMENTS

A. General Requirement: The Public Defender, at no expense to the City, shall comply with all applicable laws of the United States and the State of Washington; the ordinances of The City of Mount Vernon and The City of Burlington; rules, regulations, orders, and directives of their administrative agencies and the officers thereof. Without limiting the generality of this paragraph, the Public Defender shall specifically comply with the following requirements of this section.

B. Licenses and Similar Authorizations: The Public Defender, at no expense to the City, shall secure and maintain in full force and effect during the term of this Contract all required licenses, permits, and similar legal authorizations, and comply with all requirements thereof.

17

C. Americans with Disabilities Act: The Public Defender shall comply with all applicable provisions of the Americans with Disabilities Act of 1990 (ADA) in performing its obligations under this Contract. Failure to comply with the provisions of the ADA shall be a material breach of, and grounds for the immediate termination of, this Contract.

## Section 16: INDEMNIFICATION

The Public Defender does hereby release and shall defend, indemnify, and hold the Cities and its employees, officers and agents harmless from all losses, liabilities, claims (including claims arising under federal, state or local environmental laws), costs (including attorneys' fees), actions or damages of any sort whatsoever arising out of the Public Defender's performance of the services contemplated by this Contract to the extent attributable to the negligent acts or omissions, willful misconduct or breach of this Contract by the Public Defender, its servants, agents, and employees. In furtherance of these obligations, and only with respect to the Cities, its employees, officers and agents, the Public Defender waives any immunity it may have or limitation on the amount or type of damages imposed under any industrial insurance, worker's compensation, disability, employee benefit or similar laws. The Public Defender acknowledges that the foregoing waiver of immunity was mutually negotiated and agrees that the indemnification provided for in this section shall survive any termination or expiration of this Contract.

## Section 17: INSURANCE

**Insurance certification required.**   The Public Defender must carry the following coverages and limits of liability, naming the Cities as an additional insureds:

- General Liability with a minimum limit of liability of $1,000,000 combined single limit each occurrence bodily injury and property damage.
- Automobile Liability covering owned and non-owned vehicles with a minimum limit of liability of $1,000,000 combined single limit each occurrence bodily injury and property damage.
- Professional Liability (Errors, and Omissions) for attorneys with a minimum limit of liability of $1,000,000 each claim.
- Workers' Compensation per statutory requirements of the Washington industrial insurance RCW Title 51.

Written proof of the insurance policy for calendar year 2009 shall be filed with the Cities at the inception of this Contract, and no later than December 31, 2008, and again no later than January 1 of each succeeding year of the Contract. The Public Defender shall provide the Cities with proof of insurance for "tail coverage" no later than December 31, 2008. The purpose of "tail coverage" is to provide insurance coverage for all claims that might arise from occurrences during the term of the Contract or extension(s) thereof, but not filed during the term of the Contract.

## Section 18: ESTABLISHMENT AND MAINTENANCE OF RECORDS

18

A. The Public Defender covenants and agrees that it shall maintain all records which sufficiently and properly reflect all costs and indirect costs of any nature for any subcontracts or personal service contracts. Said records shall include, but not be limited to, documentation of any funds expended by the Public Defender for said personal service contracts or subcontracts, documentation of the nature of the service which is rendered, and records which demonstrate the amount of time spent by each subcontractor or personal service contractor rendering service pursuant to the subcontract or personal service contract.  '

B. These records shall be maintained for a period of (6) years after termination hereof unless permission to destroy them is granted by the Office of the Archivist in accordance with RCW Chapter 40.14.

C. Willful failure to maintain or produce records or other required documentation during the time for maintenance of records may result in specific, related costs being disallowed. In the event the City has reason to believe that such a failure exists, notice shall be given to the Public Defender and the Public Defender shall respond in writing. The time for notification and response shall be the same as set forth in Section 10.

If the Public Defender's response is deemed unacceptable, the question of whether or not specific costs are disallowed shall be determined by a City appointed, qualified independent Certified Public Accountant, in a manner consistent with generally accepted auditing standards and accounting principles. Disallowed costs may be recovered from. the Public Defender by the City.

## Section 19: AUDITS, RECORDS, AND ANNUAL FINANCIAL STATEMENTS

A. The Public Defender shall maintain records and accounts in accordance with Section 7 of this agreement, including records of the time spent by the Public Defender on each case.

The Public Defender must ensure that the City has full access to materials necessary to verify compliance with all terms of this Contract. At any time, upon reasonable notice during business hours and as often as the City may deem necessary for a period of six (6) years, the Public Defender shall provide to the City right of access to its facilities, including those of any subcontractor, to auditing records, data, invoices, materials, payrolls and other data relating to all matters covered by this Contract. Provided that if any such data, records or materials are subject to any privilege or rules of confidentiality the Public Defender must maintain such data in a form or manner to provide same to the City that will not breach such confidentiality or privilege.

The Public Defender shall maintain such data and records in an accessible location and condition for a period of not less than six (6) years following the receipt of final payment under this Contract, unless the City agrees in writing to an earlier disposition. The Public Defender agrees to cooperate with the City or its agent in the evaluation of the Public

19



Defender's performance under this Contract and to make available all information reasonably required by any such evaluation process or ongoing reporting requirements established by the City. The results and records of said evaluations and reports shall be maintained and disclosed in accordance with RCW Chapter 42.17.

Notwithstanding any of the above provisions of this paragraph, all Constitutional, statutory, and common law rights and privileges of any indigent client are not waived. Provided further that nothing in this section shall require the disclosure of the names of any persons represented pursuant to RCW 13.34 et seq, or RCW 71.02 et seq, or RCW 71.05 et seq.

B. All such reports as are required under the terms of this Contract shall be submitted to the City via electronic media (e-mail attachment or diskette) within the time limits for each report.

## Section 20: CONTRACTUAL RELATIONSHIP

The relationship of the Public Defender to the City by reason of this Contract shall be that of an independent contractor. This Contract does not authorize the Public Defender to act as the agent or legal representative of the City for any purpose whatsoever and neither the Public Defender nor its employees shall be deemed employees of the City. The Public Defender is not granted any express or implied right or authority to assume or create any obligation or responsibility on behalf of or in the name of the City or to bind the City in any manner or thing whatsoever. It is expressly understood and agreed that the Public Defender and the Public Defender's employees shall in no event be entitled to any benefits to which City employees are entitled, including, but not limited to overtime, any retirement benefits, worker's compensation benefits, injury leave or leave benefits. The Public Defender shall complete this Contract according to the Public Defender's own means and methods of work, which shall be in the exclusive charge and control of the Public Defender and which shall not be subject to control or supervision by the City, except such requirements for performance as are specified in this Agreement.

The Public Defender agrees that it has secured or will secure at the Public Defender's own expense, all persons, employees, and equipment required to perform the services contemplated/required under this Contract. The Public Defender further agrees that any equipment or materials acquired with funds provided by this Contract shall be utilized for the purpose of performing the services contemplated/required by this Contract.

## Section 21: ASSIGNMENT AND SUBCONTRACTING

The Public Defender shall not assign or subcontract any of its obligations under this Contract without the Cities' written consent, which may be granted or withheld in the Cities' sole discretion. Said consent must be sought in writing by the Public Defender not less than fifteen (15) days prior to the date of any proposed assignment. Any subcontract made by the Public Defender shall incorporate by reference all the terms of this Contract.

20



The Public Defender shall ensure that all subcontractors comply with the obligations and requirements of the subcontract. The City's consent to any assignment or subcontract shall not release the Public Defender from liability under this Contract, or from any obligation to be performed under this Contract, whether occurring before or after such consent, assignment, or subcontract.

## Section 22: ERRORS & OMISSIONS; CORRECTION

The Public Defender shall be responsible for the professional quality, technical accuracy, and the coordination of all designs, drawings, specifications, and other services furnished by or on the behalf of the Public Defender under this Contract. The Public Defender, without additional compensation, shall correct or revise any errors or omissions in the designs, drawings, specifications, and/or other Public Defender services immediately upon notification by the City. The obligation provided for in this section with respect to any acts or omissions during the term of this Contract shall survive any termination or expiration of this Contract.

## Section 23: CONFIDENTIALITY

The Parties agree that they will not permit the duplication or disclosure of any information designated in advance by the other Party as "Confidential and Proprietary" to any person (other than its own employee, agent, or representative who must have such information for the performance of that Party's obligations hereunder) unless such duplication, use or disclosure is specifically authorized in writing by the other Party or is required by law. "Confidential and Proprietary" information does not include ideas, concepts, know-how, or techniques related to information that, at the time of disclosure, is in the public domain unless the entry of that information into the public domain is a result of any breach of this Contract. Likewise, "Confidential and Proprietary" information does not apply to information that is independently developed, already possessed without obligation of confidentiality, or rightfully obtained from a third party without an obligation of confidentiality.

## Section 24: MISCELLANEOUS PROVISIONS

A. Amendments: No modification of this Contract shall be effective unless in writing and signed by an authorized representative of each of the Parties hereto.

B. Binding Contract: This Contract shall not be binding until signed by the Parties. The provisions, covenants, and conditions in this Contract shall bind the Parties, their legal heirs, representatives, successors, and assigns.

C. Applicable Law/Venue: This Contract shall be construed and interpreted in accordance with the laws of the State of Washington. The venue of any action brought hereunder shall be in the Superior Court for Skagit County.

21

D. Remedies Cumulative: Rights under this Contract are cumulative and nonexclusive of any other remedy at law or in equity.

E. Captions: The titles of sections are for convenience only and do not define or limit the contents.

F. Severability: If any term or provision of this Contract is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Contract shall not be affected thereby, and each term and provision of this Contract shall be valid and enforceable to the fullest extent permitted by law.

G. Waiver: No covenant, term or condition or the breach thereof shall be deemed waived, except by written consent of the Party against whom the waiver is claimed, and any waiver of the breach of any covenant, term or condition shall not be deemed to be a waiver of any preceding or succeeding breach of the same or any other covenant, term or condition. Neither the acceptance by the City of any performance by the Public Defender after the time the same shall have become due nor payment to the Public Defender for any portion of the Work shall constitute a waiver by the City of the breach or default of any covenant, term or condition unless otherwise expressly agreed to by the City, in writing.

H. Entire Contract: This document, along with any exhibits and attachments, constitutes the entire Contract between the Parties with respect to the Work. No verbal agreement or conversation between any officer, agent, associate, or employee of the City and any officer, Public Defender, employee or associate of the Public Defender prior to the execution of this Contract shall affect or modify any of the terms or obligations contained in this Contract.

I. Negotiated Agreement: The Parties acknowledge that this is a negotiated Contract, that they have had the opportunity to have this Contract reviewed by their respective legal counsel, and that the terms and conditions of this Contract are not to be construed against any Party on the basis of such Party's draftsmanship thereof.

IN WITNESS WHEREOF, in consideration of the terms, conditions, and covenants contained herein, or attached and incorporated and made a part hereof, the Parties have executed this Contract by having their representatives affix their signatures below.

PUBLIC DEFENDER

By: _____

Morgan M. Witt, Esq. _PRESIDENT, IN AND FOR,_
_WITT LAW FIRM, P.S._

Date: ___12/29/08___

22

By: _____
Richard M. Sybrandy, Esq.

Date: __1/8/09__

SECONDARY DEFENDER

BY: _____ GLEN HOFF (NIT AFFILIATED WITH SKAGIT COUNTY PUB. DEF.)

Title: ATTORNEY AT LAW

Date: JAN. 21, 2009

APPROVED:

CITY OF MOUNT VERNON

_____
Bud Norris, Mayor

Approved as to Form:

_____
Kevin Rogerson, City Attorney

Attest:

_____
Alicia D. Huschka, Finance Director

APPROVED:

CITY OF BURLINGTON

_____
Edward J. Brunz, Mayor

Approved as to Form:

_____
Scott G. Thomas, City Attorney

Attest:

_____
Greg. Thramer, Finance Director

23

ATTACHMENT 1
(Primary Public Defender Compensation)

Mount Vernon shall compensate the Primary Public Defender in the amount of $117,400/year for combined services, or $121,750/year if arraignment is necessary as described herein.

Burlington shall compensate the Primary Public Defender in the amount of $57,600/year for combined services, or $ 60,750 if arraignment is necessary as described herein.

The Public Defender shall invoice each City on a monthly basis. Electronic invoices will be accepted. In the event arraignment is necessary, the invoice shall so reflect arraignment as an additional charge.

The cities shall divide each monthly amount equally between each primary defender who is a signatory to this agreement.

24

## ATTACHMENT 2
(Secondary Defender Compensation)

The Secondary Public Defender shall be compensated directly by the Cities in the event a case for indigent defense is assigned as a result of a conflict of interest with the Primary Public Defender.

The Secondary Public Defender shall submit an invoice at the conclusion of the case to the City in which indigent defense services are provided. The invoice shall reflect the time spent on the matter.

The Secondary Public Defender shall be reimbursed by the City in which indigent defense services are provided for time spent on the case at an hourly rate of fifty five dollars per hour ($55.00/hr).

25

# EXHIBIT C

City of Burlington

Contract/Agreement Coversheet

CONTRACT NO.  2010-59 ___        DEPARTMENT Administration _____

FEDERAL TAXPAYER I.D ._____

GRANTOR : _____ Morgan Witt & Richard Sybrandy _____

SERVICES PROVIDED  _Extension of agreement Public Defender Services____

AMT/FUND SOURCE _____

DURATION FROM: _1/1/2011_____     TO __12/31/2011_____

Original:    City of Burlington
             City of Mount Vernon

Copies:     Finance Department

BURL_PDR-000217

**FIRST AMENDMENT TO CITY OF MOUNT VERNON AND CITY OF BURLINGTON PUBLIC DEFENSE SERVICES CONTRACT**

**THIS AMENDMENT**, entered into this 20th day of December, 2010, by and between City of Mount Vernon ("Mount Vernon"), a Washington municipal corporation, the City of Burlington ("Burlington"), a Washington municipal corporation collectively referred to herein as "the Cities" or individually as "the City" and Richard M. Sybrandy, P.O. Box 175 Mount Vernon, WA 98273-0175, and Morgan M. Witt, P.O. Box 726, Mount Vernon, WA 98273-0726  (together, the "Public Defender"), who are licensed to practice law within the State of Washington.

**WITNESSETH:**

**WHEREAS** the Cities entered into an Agreement with the Public Defender dated January 1, 2009 for Indigent Defense Services which is set to expire December 31st, 2010 ; and

**WHEREAS** the Agreement allows that the Parties may extend the term for an additional two years terminating on December 31, 2012; and

**WHEREAS**, the Parties hereto wish to extend the Agreement for the additional two years and amend the agreement as set forth below.

**NOW, THEREFORE**, the Parties hereby amend said Agreement, as follows:

1. Section 3 entitled DURATION OF CONTRACT of the Agreement is hereby amended to read as follows:

Section 3: DURATION OF CONTRACT
This Contract shall commence on the first (1st) day of January 2009 and terminate the thirty-first (31st) day of December 2010 2012 unless extended or terminated earlier pursuant to the terms and conditions of this Contract. In addition, either Party may opt to shorten the term of the Agreement to terminate on the thirty-first (31st) day of December 2011; provided, however that the Party electing to earlier terminate provides written notice on or before the thirtieth (30th) day of September 2011. ~~The Parties may mutually agree to extend the Contract for an additional term of two (2) years, terminating on December 31, 2012. The Public Defender shall notify the Cities on or before September 1, 2010 In the event the Public Defender desires to extend the Contract.~~

2. All other terms and conditions of the original Agreement remain the same.

**IN WITNESS WHEREOF** the Parties hereto have executed this document as of the day and year first written above.

Amendment to Public Defender Agreement, Page 1 of 3

PUBLIC DEFENDER

By: _____
Morgan M. Witt, Esq.

Date: __12/15/10_____

By: _____
Richard M. Sybrandy, Esq.

Date: __12·14·10_____

SECONDARY DEFENDER

BY: _____

Title: __Conflict Counsel_____

Date: __12/2/10_____

Amendment to Public Defender Agreement, Page 2 of 3

BURL_PDR-000219

APPROVED:

**CITY OF MOUNT VERNON**

_____
Bud Norris, Mayor

Approved as to Form:                Attest:

_____    _____
Kevin Rogerson, City Attorney       Alicia D. Huschka, Finance Director


APPROVED:

**CITY OF BURLINGTON**

_____
Edward J. Brunz, Mayor

Approved as to Form:                Attest:

_____    _____
Scott G. Thomas, City Attorney      Greg. Thramer, Finance Director

Amendment to Public Defender Agreement, Page 3 of 3

BURL_PDR-000220

APPROVED:

### CITY OF MOUNT VERNON

Bud Norris, Mayor

Approved as to Form:                    Attest:

Kevin Rogerson, City Attorney           Alicia D. Huschka, Finance Director

APPROVED:

### CITY OF BURLINGTON

Edward J. Brunz, Mayor

Approved as to Form:                    Attest:

Scott G. Thomas, City Attorney          Greg. Thramer, Finance Director

Amendment to Public Defender Agreement, Page 3 of 3

BURL_PDR-000221