THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEPH JEROME WILBUR, a Washington resident; JEREMIAH RAY MOON, a Washington resident; and ANGELA MARIE MONTAGUE, a Washington resident, individually, and on behalf of all others similarly situated,<br><br>                        Plaintiffs,<br><br>        v.<br><br>CITY OF MOUNT VERNON, a Washington municipal corporation; and CITY OF BURLINGTON, a Washington municipal corporation,<br><br>                        Defendants. | No. C11-01100 RSL<br><br>**PLAINTIFFS' CROSS-MOTION FOR PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>**Note for Consideration:  December 2, 2011**<br><br>***ORAL ARGUMENT REQUESTED*** |

**"The rights of the poor and indigent are the rights that often need the most protection.  Each county or city operating a criminal court holds the responsibility of adopting certain standards for the delivery of public defense services, with the most basic right being that counsel shall be provided."**

***In re Michels*, 150 Wn.2d 159, 174, 75 P.3d 950 (2003).**

PLFS' CROSS-MOTION FOR PRELIMINARY
INJUNCTION & OPP TO DEFS' SJ MOTIONS
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................ 1

      A.    Overview of the Cities' Public Defense Contract System....................... 1

      B.    The Cities Fail to Impose Reasonable Caseload Limits on
            the Public Defender................................................................................. 3

      C.    The Cities' Indigent Defense System Fails to Provide the
            Minimum Constitutionally Required Assistance of Counsel
            to Indigent Persons Charged With Crimes in Municipal
            Court ....................................................................................................... 5

            1.    The Public Defender Refuses to Establish
                  Confidential Attorney-Client Relationships With
                  Indigent Defendants.................................................................... 6

            2.    The Public Defender Refuses to Meet with Indigent
                  Defendants Who Are in Custody ................................................. 8

            3.    The Public Defender Refuses to Stand With or By
                  Indigent Defendants at Hearings, Leaving Them to
                  Speak to the Judge Directly without Representation ................ 10

            4.    The Evidence Shows Indigent Defendants are
                  Constructively Denied the Constitutional Right to
                  Counsel by the Cities ................................................................ 11

      D.    The Cities Systematically Fail to Monitor or Address the
            Deficiencies in their Public Defense System ....................................... 14

      E.    The Experts on Prosecution and Defense Agree That
            Systemic Constitutional Violations Are Occurring ............................. 17

III.  AUTHORITY AND ARGUMENT FOR GRANTING
      PRELIMINARY INJUNCTION ................................................................. 18

      A.    Plaintiffs Have Established a Strong Likelihood of Success
            on the Merits ........................................................................................ 18

            1.    Indigent Defendants Have a Constitutional Right to
                  Counsel ..................................................................................... 18

            2.    Because Plaintiffs Are Challenging the Cities'
                  Systemic Denial of the Right to Counsel, the
                  Strickland Standard Is Not Applicable ..................................... 20

## TABLE OF CONTENTS
(continued)

3.    The Cities Are Violating the Constitutional Rights of Indigent Defendants on a Systemic Basis ........................................... 23

    a.    Likelihood of Success Because the Public Defender's Excessive Caseload Is Resulting in the Constructive Denial of Counsel ........................................ 23

    b.    Likelihood of Success Because the Public Defender Refuses to Form Confidential Attorney-Client Relationships With Indigent Defendants ................................................................. 24

    c.    Likelihood of Success Because the Public Defender Refuses to Attend or Stand Next to Indigent Defendants During Critical Stages of Their Prosecution .................................................... 25

    d.    Likelihood of Success Because the Public Defender Fails to Assess, Discuss, and Explain the Elements of the Criminal Charges with Indigent Defendants ............................... 26

    e.    Likelihood of Success Because the Public Defender Refuses to Consult With and Respond to Client Inquiries and Requests ................. 27

    f.    Likelihood of Success Because the Public Defender Refuses to Investigate Charges, Often Times Leading to Incorrect Information and Dire Consequences for Clients ................................................................... 27

    g.    Likelihood of Success Because the Public Defender Fails to Develop a Plan of Action Based on the Requests and Informed Consent of Clients .................................................... 28

4.    The Cities Have Knowledge of the Multiple Failures of Their Public Defense System, Yet Fail to Do Anything to Correct Them .............................. 29

B.    Indigent Defendants Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction .............................. 30

C.    The Balance of Equities Tips in Favor of Plaintiffs ............................ 30

D.    A Preliminary Injunction Is in the Public Interest ............................ 31

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS
(continued)

IV.  AUTHORITY AND ARGUMENT FOR DENYING SUMMARY
     JUDGMENT .................................................................................................. 32

     A.   Summary Judgment Is Inappropriate Because the Material
          Facts Are Disputed ............................................................................ 33

     B.   Summary Judgment Must Be Denied When Plaintiffs Have
          Not Had An Opportunity to Take Discovery ..................................... 36

     C.   The Cities' Legal Arguments for Summary Judgment Are
          Meritless ........................................................................................... 37

          1.   The Cities Are Liable Under Section 1983 Because
               They Systemically Deprive Indigent Defendants of
               the Right to Counsel That Is Guaranteed Under the
               Sixth Amendment of the U.S. Constitution ............................ 37

               a.   The Cities Are Liable for Subjecting
                    Plaintiffs and Similarly Situated Individuals
                    to a Public Defense System that
                    Systemically Fails to Provide the Right to
                    Counsel ...................................................................... 38

               b.   The Cities Are Liable for Persistently
                    Ignoring the Public Defender's Failure to
                    Provide the Right to Counsel Required by
                    the Public Defender Contract ..................................... 38

               c.   The *Monell* Reckless Indifference Standard
                    Does Not Apply and Even if It Did, the
                    Cities Would Still Be Liable Under Section
                    1983 ............................................................................ 39

               d.   Defendants' Reliance on *Polk County v.
                    Dodson* and on *Gausvik v. Perez* Is
                    Misplaced ................................................................... 41

          2.   Plaintiffs Have Standing to Pursue Their
               Constitutional Claims ............................................................ 43

          3.   Plaintiffs' Claims Present a Live Case and
               Controversy ........................................................................... 46

          4.   Plaintiffs Do Not Have Adequate and Ongoing
               Remedies ............................................................................... 47

          5.   Injunctive Relief Is Designed to Prevent
               Constitutional Violations Like Those Alleged ...................... 48

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – iii
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF CONTENTS
(continued)

6.    Judicial Estoppel Does Not Precludes Plaintiffs' Claims ................................................................... 48

7.    The Equitable Doctrine of Unclean Hands Is Inapplicable to Constitutional Violations ................................................. 49

8.    Plaintiffs Are Not Fugitives and Well-Settled Caselaw Establishes That The Fugitive From Justice Doctrine Does Not Apply in These Circumstances ................................. 50

V.    CONCLUSION ........................................................................................... 51

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# I.    INTRODUCTION

This case is about the systemic denial of the right to counsel to indigent individuals who are accused of crimes in the cities of Mount Vernon and Burlington, Washington ("Defendants" or "the Cities").  Because they have been repeatedly subjected to the Cities' unconstitutional public defense system, these indigent defendants all share the common injury of being denied the constitutionally guaranteed right to counsel at critical junctures of the criminal justice process.

Plaintiffs and proposed class representatives Joseph Jerome Wilbur, Jeremiah Ray Moon, and Angela Marie Montague bring this lawsuit on behalf of themselves and all similarly situated individuals.  Because the evidence gathered thus far justifies it, and there will be irreparable harm without it, Plaintiffs hereby move this Court, pursuant to Rule 65(a), for a preliminary injunction requiring the Cities to take immediate action to bring their public defense system into compliance with the constitutional right to counsel afforded all indigent defendants who are prosecuted for misdemeanor charges within those jurisdictions.  Plaintiffs also respectfully request that the Court deny the Cities' motions for summary judgment.  The evidence in the case to date, and all reasonable inferences from it, demonstrate there are disputed facts warranting additional discovery.  Furthermore, the Cities' arguments lack merit and are based on inapplicable legal standards.  Thus, the Cities fail to demonstrate entitlement to judgment as a matter of law.[1]

# II.    BACKGROUND

## A.    Overview of the Cities' Public Defense Contract System

The Cities jointly maintain a contract system for the public defense of indigent persons charged with crimes in the municipal courts of Mount Vernon and Burlington.  Ex. 1.[2]  Under

---

[1] The Cities have filed individual motions for summary judgment against Plaintiffs Wilbur ("Wilbur SJM"), Moon ("Moon SJM"), and Montague ("Montague SJM").  Plaintiffs' cross-motion and opposition applies to each.

[2] Unless otherwise stated, all exhibits are attached to the Declaration of Toby J. Marshall in Support of Plaintiffs' Cross-Motion for Preliminary Injunction and Opposition to Defendants' Motions for Summary Judgment.  For the sake of brevity, preceding zeros have been deleted from pin cites.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 1
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

this system, the Cities have contracted with two attorneys—Richard Sybrandy and Morgan Witt—to provide all public defense services in the municipal courts except where there is an actual legal, ethical, or professional conflict of interest. *See id*. at 199 (§4(D)). If such a conflict arises, defense services are handled under the same contract by attorney Glen Hoff. *See id*. at 197 (§1(Q)). Sybrandy and Witt have acted as the Public Defender in Mount Vernon since 2000 and in Burlington since 2005. Ex. 2.

Sybrandy and Witt are defined in the joint contract as the "Public Defender." Ex. 1 at 194. The Cities currently pay the Public Defender a total of $178,150 per year—$117,400 from Mount Vernon and $60,750 from Burlington. *Id*. at 215. These funds are used to compensate the attorneys and to pay for "adequate investigative, paralegal, and clerical services and facilities necessary for representation of indigent defendants." *Id*. at 198. "Administrative expenses" are likewise "paid out of [the] compensation provided to the Public Defender." *Id*. at 197; *see also* Ex. 3. In addition, expert services must be paid out of the Public Defender's compensation unless those services have been approved by a court. Ex. 1 at 197.

The compensation the Cities pay to the Public Defender has declined over the years despite significant increases in attorney caseloads. In 2005, for example, Defendant Mount Vernon paid $120,000 to the Public Defender, and the primary assigning entity referred 702 cases to the Public Defender for that jurisdiction. Exs. 4 & 5. In 2009, Defendant Mount Vernon paid $117,400 (or $2,600 less) to the Public Defender, and the primary assigning entity referred 1,128 cases for that jurisdiction, an increase of approximately 61 percent. Exs. 6 & 7. During the same period, Defendant Burlington likewise reduced the amount of compensation paid to the Public Defender from $63,600 per year to $60,750. Exs. 1, 8, & 9. Notably, it is not only the caseloads that have seen a substantial increase over the past decade. According to Sybrandy and Witt, their "costs and overhead" have increased "significantly" as well. Ex. 2. In the only public defense services bid the Cities appear to have obtained from someone other than Sybrandy and Witt, a law firm determined it would cost over $336,000 and require the services

of five full-time attorneys to handle a caseload similar to that of the Public Defender in 2009. Ex. 10.[3]

**B.      The Cities Fail to Impose Reasonable Caseload Limits on the Public Defender**

Washington law requires every city to "adopt standards for the delivery of public defense services," and "[t]he standards endorsed by the Washington state bar association ["WSBA"] for the provision of public defense services should serve as guidelines to local legislative authorities in adopting [such] standards." RCW 10.101.030; *see also In re Michels*, 150 Wn.2d 159, 174, 75 P.3d 950 (2003) ("Each county or city operating a criminal court holds the responsibility of adopting certain standards for the delivery of public defense services, with the most basic right being that counsel shall be provided."); *State v. A.N.J.*, 168 Wn.2d 91, 110, 225 P.3d 956 (2010) ("[E]ach county or city providing public defense . . . [shall be] guided by standards endorsed by the Washington State Bar Association.").

The cases handled by the Public Defender are all misdemeanors. Ex. 1 at 194, 195, 197. Under applicable WSBA standards, the caseload of a full-time public defense attorney should normally be capped at 300 misdemeanor cases per year and "*shall not*" exceed 400 misdemeanor cases per year. Ex. 13 at 4.[4]  "A case is defined as the filing of a document with the court naming a person as defendant or respondent, to which an attorney is appointed in order to provide representation." Ex. 13 at 5. "In jurisdictions where assigned counsel or contract attorneys also maintain private law practices, the caseload [limit] should be based on the percentage of time the lawyer devotes to public defense." *Id.*

Richard Sybrandy and Morgan Witt serve as the Public Defender on a part-time basis only. Exs. 15 & 16; *see also* 2 at 48, 52. Indeed, the attorneys spend the majority of their time

---

[3] The law firm in question proposed a base figure of $202,800 for 1,180 cases and an additional $115 for each case in excess of the base. Ex. 10. There were 2,343 public defense cases in Mount Vernon and Burlington in 2009. Exs. 11 & 12.A. That results in 1,162 cases over the base and an additional payment of $133,630.

[4] In September 2011, the WSBA adopted amended standards that similarly cap the number of misdemeanor cases at 300 per attorney per year or, in jurisdictions that have not adopted a numerical case weighting system as described in the standards, 400 misdemeanor cases per attorney per year. Ex. 14.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 3
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

working on matters for private clients. *Id*. Sybrandy lists his "Practice Areas" as follows: "40% Family," "20% Criminal Defense," "20% DUI/DWI," "10% Construction/Development," "5% Landlord/Tenant," and "5% Foreclosure." Ex. 15 at 4-5. He also handles bankruptcy matters. Ex. 15 at 2. Witt spends "33%" of his time on "Criminal Defense" and the remainder of his time on the following areas: "Civil Disputes," "Real Estate Matters," "Estate Planning Services," "Dissolutions/Divorces," and "Traffic Infractions." Ex. 16 at 2, 4.

Under the WSBA standards, an attorney who devotes only 33 percent of his time to public defense services should not handle more than 133 misdemeanor cases per year for indigent clients. *See* Ex. 13. The public defense caseloads of Sybrandy and Witt greatly exceed this limit. In 2009, for example, Sybrandy served as the Public Defender in 1,206 cases, and Witt served as the Public Defender in 1,136 cases—a total of 2,342. Exs. 11 & 12.A. In 2010, Sybrandy served as the Public Defender in 963 cases and Witt served as the Public Defender in 1,165 cases—a total of 2,128 misdemeanor cases in one year. Exs. 17 & 12.B. The WSBA standards provide that yearly caseloads of this magnitude require the equivalent of 5.32 full-time attorneys and one part-time supervisor. Ex. 13. The combined time Sybrandy and Witt spent on public defense cases, however, was substantially less than one full-time attorney. Ex. 15 at 4; Ex. 16 at 2. Assuming 1,800 billable hours per attorney in 2010, the part-time basis of Sybrandy and Witt limited them to an average of 34 minutes of attorney time per public defense case.[5] In 2009, the attorneys had fewer than 31 minutes per case.[6] Indeed, time records that were submitted to the Cities show the attorneys regularly report spending as little as 30 minutes per case. Exs. 12 and 17.[7] Remarkably, complaints by indigent defendants show these time records are probably grossly overstated. *Compare* Ex. 18.B (stating Public Defender spent only minutes

---

[5] Two attorneys at 1,800 billable hours each equals 3,600 total hours. One-third of 3,600 hours is 1,200 hours. 1,200 hours divided by 2,128 cases equals .5639 hours or 33.8 minutes per case.

[6] Two attorneys at 1,800 billable hours each equals 3,600 total hours. One-third of 3,600 hours is 1,200 hours. 1,200 hours divided by 2,342 cases equals .5124 hours or 30.7 minutes per case.

[7] *See also* Exs. 12.C & 12.B at 33, 143, 169, 273, 303, 330.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 4
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

on case), *with* Ex. 17 at 134 (Public Defender reported spending one hour on case); *compare also* Ex. 18.G (same), *with* Ex. 12.A at 285 (same).

Shortly after this lawsuit was filed, Sybrandy acknowledged that his caseload is "too high," adding "I've been frustrated to the point of tears." Ex. 15 at 11. This is nothing new, as excessive indigent defense caseloads have long been a problem in Mount Vernon. *See City of Mount Vernon v. Weston*, 68 Wn. App. 411, 415, 844 P.2d 438 (1992) ("The evidence was undisputed . . . that the public defenders here were operating with caseload levels in excess of those endorsed by the ABA, by the Washington State Bar Association, and by the Skagit County Code."). Remarkably, the Cities knowingly permit each of their public defense attorneys to handle as many as 1,200 misdemeanor cases per year. *See* Ex. 1 at 195, 197. Their contract provides that each attorney "shall not exceed 400 caseload credits per year," but the Cities allocate as little as "1/3" of a "case credit" to many misdemeanors, including theft, malicious mischief, driving while license suspended, and unlawful issuance of bank checks. *Id*.

Furthermore, the Cities fail to reduce the maximum number of public defense cases that attorneys may handle by an amount proportional to the time those attorneys spend on private cases. *See generally id*. This is not only a violation of state law but also of the Cities' own ordinances and resolutions. *See* RCW 10.101.030 (each city "shall adopt standards" that include "limitations on private practice of contract attorneys"); Mount Vernon Muni. Code 2.62.030 ("the caseload ceiling [of a public defender] should be based on the percentage of time the lawyer devotes to public defense"); Ex. 19 (same for Burlington).

**C.    The Cities' Indigent Defense System Fails to Provide the Minimum Constitutionally Required Assistance of Counsel to Indigent Persons Charged With Crimes in Municipal Court**

The excessive caseloads and other forms of deficient performance of the Public Defender described below have resulted in systemic deficiencies in the most basic aspects of client representation. The impact of those deficiencies is real and substantial: indigent persons who are charged with crimes in the municipal courts of Mount Vernon and Burlington are being

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 5
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

constructively denied their constitutional right to counsel.  Simply put, the Cities' public defense system has devolved to a state of "'meet 'em, greet 'em and plead 'em' justice."  *State v. A.N.J.*, 168 Wn.2d at 98 (quoting Deborah L. Rhode, *Access to Justice*, 69 Fordham L. Rev. 1785, 1793 & n.42 (2001)).

1.     **The Public Defender Refuses to Establish Confidential Attorney-Client Relationships With Indigent Defendants**

When an indigent defendant is charged with a crime in the municipal courts of Mount Vernon or Burlington, the defendant is arraigned without an attorney present.  *See* Declaration of Jaretta Osborne ("Osborne Decl.") ¶ 9; Declaration of Bonifacio Sanchez ("Sanchez Decl.") ¶ 2. If the defendant indicates that she would like an attorney but cannot afford one, she is sent to be screened for indigency and her case is continued.  *See id*.  If a finding of indigency is made, the defendant is assigned either Richard Sybrandy or Morgan Witt to represent her.  Ex. 1 at 194, 196.

According to Plaintiffs and numerous other witnesses, Sybrandy and Witt refuse to talk to their assigned clients outside of court.  Declaration of Angela Montague ("Montague Decl.") ¶¶ 16, 17, 20, 21, 24, 30; Declaration of Joseph Wilbur ("Wilbur Decl.") ¶¶ 7, 10, 11, 14, 18, 19, 22; Declaration of Jeremiah Moon ("Moon Decl.") ¶¶ 3, 11; Osborne Decl. ¶¶ 9-18, 28; Sanchez Decl. ¶ 3; Declaration of Tina Johnson ("Johnson Decl.") ¶ 3; Exs. 18.A-18.C & 18.I.  Indeed, witnesses testify that the Public Defender's office personnel have specifically stated the attorneys do not meet in private with indigent defendants.  Sanchez Decl. ¶ 3; Johnson Decl. ¶ 3; Ex. 18.B ("When Mr. Sybrandy's secretary called back, she stated that Mr. Sybrandy only discusses cases at Mount Vernon Municipal Court the day of a court appearance.").

The case of Ryan Osborne demonstrates the magnitude of this problem.  Mr. Osborne was arraigned on November 12, 2010, and Richard Sybrandy was assigned to represent him the following week.  Osborne Decl. ¶¶ 9-10.  Because Mr. Osborne is a special needs adult with developmental disabilities and mental health conditions, his mother, Jaretta Osborne, started

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 6
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

calling Sybrandy at his office and leaving messages shortly after Sybrandy was assigned, in an attempt to inform him promptly of her son's condition in case they were relevant to his legal case. *Id*. ¶ 11. Ms. Osborne wanted to explain her son's situation to the attorney because her son lacked the capacity to do so himself. *Id*. She continued to call over the course of several months, but Sybrandy never responded to her. *Id*. ¶¶ 11-18, 28. At one point, Ms. Osborne had to write directly to the court to request a continuance on her son's behalf because he was institutionalized in a state-operated residential habilitation center for persons with developmental disabilities and could not attend his hearing. *Id*. ¶¶ 16-17. If she had not done this, a warrant would have been issued for her son's arrest and confinement in jail. *See* Ex. 20; *see also* Ex. 21.

Documentary evidence corroborates the testimony of the witnesses. Exs. 18, 22, 23. In December 2008, for example, the director of the Skagit County Office of Assigned Counsel ("OAC") wrote to Sybrandy and Witt and stated that "lack of attorney contact or communication has been a major complaint" of indigent defendants. Ex. 23.A at 558. The director copied the message to several city officials as well as the judges of the Mount Vernon and Burlington municipal courts. *Id*.; *see also* Ex. 23.C. In January 2011, the director noted that the OAC "continues to receive complaints" about public defense services. Ex. 23.B.

Records confirm this practice and that the typical reason given by the Public Defender for refusing to meet with clients is that the attorneys do not have the police reports. Osborne Decl. ¶ 14; Exs. 18.B, 23.A at 558, 24. In fact, prior to the filing of this lawsuit, Sybrandy and Witt sent a standard one-page memorandum to indigent defendants that referenced their standard policy:

> You are free to make an appointment with our office to meet with your attorney. We will not, however, schedule an appointment with you until we have copies of all the police reports in your case, because without that information, a meeting is completely useless.

Exs. 25 & 26.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 7
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

This policy is totally at odds with the WSBA's established performance guidelines, which provide that a public defender "*shall* make contact with the client at the earliest possible time." Ex. 27 at 3 (emphasis added). Indeed, "[i]f the client is in custody, contact should be within 24 hours of appointment and shall be within no more than 48 hours unless there is an unavoidable extenuating circumstance." *Id.*

Roy Howson, a long-time defense attorney who practices in the municipal courts of Mount Vernon and Burlington, reports it is not difficult for defense attorneys to get police reports in a timely manner. *See* Declaration of Roy Howson ("Howson Decl.") ¶¶ 3-5. Like Sybrandy and Witt, Mr. Howson routinely requests discovery in his notice of appearance, and the Cities typically send the responsive documents to him within a week of that request. Howson Decl. ¶¶ 4-5; Ex. 28. Furthermore, under the contract with the Cities, the Public Defender is supposed to review discovery within five days of receipt "for purposes of determining any conflicts of interest." Ex. 1 at 201. Despite this, numerous witnesses state that Sybrandy and Witt *never* met with them outside of court, regardless of whether it was weeks, months, or even years after the charge was filed. Montague Decl. ¶¶ 17, 24; Sanchez Decl. ¶ 3; Johnson Decl. ¶ 3; Moon Decl. ¶ 3; Osborne Decl. ¶¶ 11-18, 28; Exs. 18.A & 18.B.

## 2. The Public Defender Refuses to Meet with Indigent Defendants Who Are in Custody

The refusal of the Public Defender to meet with or respond to clients extends to indigent defendants who are incarcerated at the Skagit County Jail. Montague Decl. ¶¶ 11-13, 33; Wilbur Decl. ¶¶ 7, 16, 21; Moon Decl. ¶¶ 3, 10; Johnson Decl. ¶ 3; Exs. 23.B & 24. This can be seen in the "Public Defender Request Form[s]" (also known as "kites") that inmates use to request contact with attorneys. Ex. 29. On January 12, 2010, for example, an incarcerated defendant sent a kite to the OAC with the following complaint: "I need a different attorney who can properly represent me please. I have been here since December 25th [nearly three weeks] and have yet to speak to Sybrandy and Witt. I have sent countless kites and [have had] family

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 8
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

members call them but to no use." Ex. 29.B at 260.  In 2011, another incarcerated defendant wrote to Sybrandy:  "I need either a global resolution or bail reduction hearing as soon as possible [because] I will be homeless [and] posse[ssi]onless and veh[icle]less [unless I can get out of jail and take care of my affairs]."  Ex. 29.M at 85.  Four days later, having still not heard from Sybrandy, the defendant sent another request:  "I have been here 20 days and you have yet to come to see me, call or write."  Ex. 29.M at 82; *see also* Ex. 29.H at 46 ("I need to speak to you . . . . Please don't leave me hanging like last time."); Ex. 29.N at 96 ("[I] would appreciate you following up with me about the cases you are supposed to be representing me on."); Ex. 18.C (asserting Witt "doesn't answer" the kites her son sends from jail).

For the entire year of 2010, Sybrandy and Witt made only six visits to the local jail, meeting with a total of seven clients.[8]  Ex. 30.  By contrast, attorneys from the Skagit County Public Defender's Office (who handle district and superior court proceedings) made 750 visits to the jail and met with 1,551 clients.  *Id*.  The results were similar for 2009.  Sybrandy and Witt made only five visits to the jail and met with eight clients, whereas attorneys from the county defender's office made 691 visits and met with 1,232 clients.  *Id*.

Law enforcement officials have also noted the difficulty defendants have contacting the Public Defender.  In November 2009, Mount Vernon's Chief of Police wrote to city officials regarding complaints that his officers had been making about the "public defender services being provided by Witt and Sybrandy." Ex. 31.  The officers were not able to reach the attorneys at designated phone numbers, particularly when assisting defendants who had been arrested and charged with driving under the influence.  *Id*.  The officers noted that this "[w]asn't an isolated case;" rather, "[there] has been a pretty consistent inability to contact them after hours."  *Id*.

---

[8] It is not known whether those clients were indigent defendants or private clients.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 9
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

3.     **The Public Defender Refuses to Stand With or By Indigent Defendants at Hearings, Leaving Them to Speak to the Judge Directly without Representation**

In addition to having a well-known and proven practice of not meeting with clients outside of court, Sybrandy and Witt regularly fail to advocate on behalf of or even stand next to indigent defendants who are appearing before the judge.  *See* Osborne Decl. ¶¶ 19, 24-26; Montague Decl. ¶¶ 36-38; Johnson Decl. ¶¶ 8-10; Sanchez Decl. ¶¶ 10-11; Howson Decl. ¶ 7. Rather, while one defendant is before the court, the attorneys are typically talking with other defendants.  *See id.*  Plaintiff Montague, for example, says that the Public Defender did not stand next to her at numerous hearings and did not advocate on her behalf or explain her circumstances to the judge or prosecutor.  Montague Decl. ¶¶ 36, 38.  Ms. Montague continues, "[w]hen I was in court, I regularly saw indigent defendants appearing without counsel at their side or advocating on their behalf." *Id.* ¶ 37.  Jaretta Osborne testifies that the Public Defender failed to stand next to or advocate on behalf of her developmentally disabled son each time he appeared before the judge.  Osborne Decl. ¶¶ 19, 24-26.  The judge even reprimanded Ms. Osborne's son for laughing at one point, yet the Public Defender "failed to say anything on [the son's] behalf or explain the fact that [he] did not understand what was going on around him" due to his developmental disabilities and mental health conditions.  *Id.* ¶ 26.

As longtime public defense attorney Roy Howson testifies, "[o]ne of the most important things for any defense attorney to do—public or private—is to stand between the client and the judge or prosecutor and advocate on the client's behalf."  Howson Decl. ¶ 9.  This "ensure[s] that the client does not say things that could harm him or her when answering the judge's questions, particularly when the attorney better understands the judge's question and can provide the necessary information in a manner that is helpful to the client."  *Id.*  Like so many other witnesses, Mr. Howson has personally observed "that Mr. Sybrandy and Mr. Witt regularly fail to stand next to or speak for [their] public defense clients while those clients are being addressed

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 10
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

by the judge."  Howson Decl. ¶ 7.  Though Sybrandy and Witt are "present in the courtroom,"

they are off "doing other things" and not representing the clients.  *Id.*

### 4.     The Evidence Shows Indigent Defendants are Constructively Denied the Constitutional Right to Counsel by the Cities

The Cities provide indigent criminal defendants with attorneys who refuse to create

confidential attorney-client relationships, who refuse to provide counsel and advice, who refuse

to advocate for or stand next to their clients in court, and who give incorrect or misleading

information to secure guilty pleas.  As such, the Cities are depriving indigent persons of the most

basic aspects of representation on a systematic basis.  As one defendant put it in a complaint to

the Cities:  "[What I want is] [s]omeone who will go over my case w/ me, discuss my options,

meet w/ me before court e[tc]."  Ex. 18.E; *see also* Ex. 29.G (seeking counsel "that will at least

try and help me in this situation I regret putting myself into").  Given the Public Defender's

excessive caseloads and the fact that the attorneys have little time to devote to any single case,

regardless of the number of charges, it is not difficult to see how this occurs.  The interactions, if

any, that indigent defendants have with their assigned attorney are typically limited to a few

minutes in a crowded courtroom.  Johnson Decl. ¶ 4; Moon Decl. ¶ 3; Montague Decl. ¶ 18;

Sanchez Decl. ¶ 5; Exs. 18.A, 18.B & 18.G.  During that short time, defendants are forced to

make important decisions about their cases, often without any explanation or discussion of the

elements of the charge, the applicable defenses, the options available, or the attendant risks.  *See,

e.g.*, Montague Decl. ¶¶ 18, 19, 39, 40; Moon Decl. ¶¶ 4, 5, 11; Sanchez Decl. ¶ 9; Osborne

Decl. ¶ 22-23; Wilbur Decl. ¶¶ 8-9, 23; *see also* Ex. 18.  Such risks may include loss of

employment, incarceration for failure to comply with probationary conditions and, for non-

citizens, deportation.  Ex. 32.

The story of Bonifacio Sanchez provides a good example of this.  *See generally* Sanchez

Decl.  After he was arraigned, Mr. Sanchez was told that Sybrandy had been assigned to

represent him.  *Id.* ¶ 2.  Mr. Sanchez called Sybrandy's office to discuss the charge but was told

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 11
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

that Sybrandy "would not meet with [him] outside of court." *Id.* ¶ 3.  When he showed up at his

hearing, Mr. Sanchez met with Sybrandy at a table in the courtroom.  *Id.* ¶ 4.  They talked for

only a couple of minutes, and Mr. Sanchez "never had a chance to full explain [his] story."  *Id.*

¶ 5.  Moreover, the meeting lacked any privacy because others were standing around, and "the

prosecutor was only six or seven feet away" from them.  *Id.*  Sybrandy did not go over the police

report with Mr. Sanchez but, instead, told Mr. Sanchez that he had seen many cases like this and

that there was "no way" Mr. Sanchez could win.  *Id.* ¶ 7.  This left Mr. Sanchez feeling that

Sybrandy would not fight on his behalf.  *Id.* ¶ 8.  Thus, having had less than five minutes to

spend with his appointed attorney, Mr. Sanchez pled guilty.  *Id.* ¶ 8.

 Mr. Sanchez's story is echoed by others in several critical respects.  First, witnesses

testify that interactions with the Public Defender are reduced to brief encounters in packed

courtrooms.  *See, e.g.*, Ex. 18.B ("The amount of time Mr. Sybrandy spent defending me, if you

can call it that . . . was less than 3 minutes total on my case."); Ex. 18.G (assigned attorney

"spent no more than 5 minutes" with defendant before she made decision); Montague Decl.

¶¶ 17-18 ("Mr. Sybrandy would not schedule an appointment to meet with me outside of the

courtroom," and "when I saw him in court, I only got a minute or two of his attention").

 Second, witnesses testify that they are not able to obtain advice or counsel from their

attorneys.  As Plaintiff Montague says,

> I was only able to discuss [my cases] with Mr. Sybrandy in the
> courtroom because Mr. Sybrandy did not return any of my calls or
> schedule any meetings with me.  These courtroom conversations
> typically lasted a couple of minutes.  It wasn't possible to have a
> detailed and private conversation regarding deferred prosecution,
> treatment, and how to handle my case in the courtroom while other
> cases were being heard.  I was very confused about what was
> required of me and what was happening with my case.

Montague Decl. ¶ 20; *see also* Wilbur Decl. ¶¶ 7, 16-19; Moon Decl. ¶¶ 6-7, 10.  Several

witnesses also testify that what little information they do receive is often incomplete or incorrect.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 12
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*See, e.g.*, Montague Decl. ¶ 18; Moon Decl. ¶¶ 8-9; Johnson Decl. ¶ 9; Osborne Decl. ¶ 23; Ex. 18.H.

Third, witnesses testify that the attorneys do not investigate their cases or even have a meaningful discussion of the facts.  Moon Decl. ¶¶ 6, 7, 11 (saying "Witt was not interested in discussing the facts of my case with me"); Wilbur Decl. ¶ 23; Montague Decl. ¶ 35; Osborne Decl. ¶ 14; Sanchez Decl. ¶ 9.  After this lawsuit was filed, Sybrandy stated publicly that he has not hired an investigator to look into the facts of a case for at least two years.  Ex. 15 at 12. Similarly, it appears the Public Defender has never utilized an expert witness.  Exs. 33 & 34.

Fourth, witnesses testify that they are pressured to accept guilty pleas.  Wilbur Decl. ¶ 9; Sanchez Decl. ¶ 8; Exs. 18.A, 18.F, 18.I.  One defendant, for example, says that she tried to reach Sybrandy several times before court, but he never returned her call.  Ex. 18.A.  When she appeared in court, she asked for Sybrandy.  *Id*.  He identified himself and told her to sit down and wait for him to call her.  *Id*.  Approximately 15 minutes later, Sybrandy read her file and then asked her about the charge.  *Id*.  When she started to explain her position, Sybrandy told her she was "not special" and "need[ed] to face what [she] did."  *Id*.  He also told her that she was "luck[y]" to have only been charged with a misdemeanor, and he recommended that she "should just end [it] today."  *Id*.  Feeling she had "no cho[ic]e," the defendant pled guilty.  *Id*.

Remarkably, no jury trials were held in Burlington's municipal court in 2010, and only two were held in Mount Vernon's municipal court that same year.  Ex. 35.  It is not known how many of these trials involved indigent defendants but even if all of them did, that represents less than one-tenth of one percent of the more than 2,000 misdemeanor cases filed in those jurisdictions that year.[9]  By comparison, there were 24 jury trials held in the municipal court of Anacortes, which had 931 misdemeanor cases filed in 2010.  Exs. 36 & 35.

---

[9] Two jury trials divided by 2,128 cases equals .0009398 or 0.094 percent.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 13
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**D.     The Cities Systematically Fail to Monitor or Address the Deficiencies in their Public Defense System**

The Cities are legally obligated to supervise, monitor, and evaluate the Public Defender. RCW 10.101.030; *see also* Mount Vernon Muni. Code 2.62.080 (requiring the establishment of "a procedure for systematic monitoring and evaluation of attorney performance based upon published criteria"); Ex. 19 (same for Burlington).  The evidence demonstrates that the Cities are failing this requirement despite having knowledge of the specific right to counsel tasks the Public Defender should perform and despite having knowledge of the numerous complaints about and deficiencies in their public defense services.

For example, pursuant to the contract between the Cities and the Public Defender, the Cities understood and agreed to the following right to counsel obligations:

- The *maximum number of cases* which each Public Defender serving under the Contract shall handle *shall not exceed 400* caseload credits per year.  *See* City of Mount Vernon City of Burlington Public Defense Services 2009-2010 Contract for Services, § 2C (Caseload Limits) (emphasis added).

- The Public Defender *shall establish reasonable office hours* in which *to meet with defendants prior to the day of hearing* or trial. *Id.* § 2F (Support Services) (emphasis added).

- The Public Defender shall be responsible for *ensuring that they are able to properly communicate* with defendants.  *Id.* (emphasis added).

- The Public Defender *shall provide to the police* departments of the Cities the *telephone number or numbers* at which the Public Defender can be reached *for critical stage advice* to defendant during the course of police investigation and/or arrests twenty-four (24) hours each day.  *Id.* § 2G (Twenty-Four Hour Telephone Access) (emphasis added).

- *Legal services shall be* statutorily and *constitutionally based.  Id.* § 4A (Purpose) (emphasis added).

- The Public Defender *shall provide the services of attorneys* and staff members *in compliance with* all of the applicable *laws* and administrative regulations *of the State of Washington, the United States,* Mount Vernon Municipal Code, Burlington Municipal

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 14
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Code, *and Washington State Rules of Professional Conduct* (RPC). *Id.* § 4B.1 (Professional Conduct) (emphasis added).

- Services include, but are not limited to: *preparation for and representation of the client at the pre-trial hearings, trial, sentencing, post-conviction review, and any appeals to Superior Court of Washington Appellate Courts, and attending all court hearings* required by the Washington Court or Local Court Rules now or hereafter adopted. *Id.* § 4F.1 (Duties and Responsibilities of Public Defender Attorneys) (emphasis added).

- The Public Defender *will be available to talk and meet in person with indigent defendants in the Skagit County Jail and/or an appropriate location* in either the City of Burlington or the City of Mount Vernon *that provides adequate assurances of privacy. Id.* § 4F.4 (emphasis added).

- The Public Defender will also *return phone calls or other attempts to contact the Public Defender within forty-eight (48) hours*, excluding weekends. *Id.* § 5A.4 (Practice Standards and Records) (emphasis added).

Though they have included these provisions in their contract with the Public Defender, the Cities are fully aware that the Public Defender fails to comply with them. Exs. 11, 12, 17, 18, 23, 29, 31, 39; *see also* Section II.C, *supra*. In fact, the attorneys have explicitly told the Cities as much. Ex. 37. In December 2008, for example, Sybrandy wrote an email to the Burlington city manager with the following admission that the Public Defender would not be initiating contact or communications with their indigent clients:

> There is much in the proposed contract which is not possible for us to comply with, at least at the level of compensation we have proposed . . . . [This] include[s] our communication with clients . . . . It would be extraordinary for us to be directed to initiate contact with [indigent] defendants . . . . [W]e may know we represent a person in custody, but we have no idea what the nature of their charges are or their criminal history . . . . Contact is useless at that point . . . . [Likewise, we] rarely have any information that would be of use in any contact with [non-incarcerated defendants] prior to pretrial . . . . Initiating any contact prior to that . . . would serve no purpose, and be somewhat comical. The conversation would go something like this 'hi, I am your lawyer, I know nothing about your case, we will see you in court.' Surely that would serve no purpose, when the clients already have [such] information given to them at the very beginning of our representation.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 15
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

*Id.* Notably, the provisions that the attorneys said they could not and would not comply with were retained, despite the fact that the parties to the contract (including the Cities) knew as much. *Compare Id.* at 1790-1817, *with* Ex. 1.

The Cities' response to complaints about the Public Defender's failure to perform these tasks is similarly perfunctory. When an indigent defendant complained that his assigned attorney refused to meet with him outside of court and only gave him three minutes of time in court, the Mount Vernon public defense contract manager forwarded the complaint to Sybrandy. Ex. 18.B. In his response, Sybrandy did not deny that he only meets with clients the day of their court appearance. *Id.* Moreover, he blamed the defendant, saying "I don't think I really have to explain to anyone why it is that we were unable to make [the defendant] happy," and "I hope . . . this demonstrates why [the defendant's] complaint should be directed at himself, not me." *Id.* Upon receiving this, the Mount Vernon contract manager wrote: "I am satisfied with Mr. Sybrandy's response and will not be taking further action." *Id.*

Despite the serious complaints made about the Public Defender, the Cities have failed to make efforts to protect indigent persons, secure their constitutional rights, or enforce the very contractual obligations the Public Defender is paid to perform. Indeed, at the end of 2010, the Cities (through their city councils) voted unanimously to preserve the status quo by extending the contract at the same compensation rates with the same attorneys for another two years. Exs. 1 & 38.

In sum, the Cities are fully aware of their obligation to provide the right to counsel, aware of what that right to counsel requires, and aware that their contract, the United States Constitution, and the Washington State Constitution are being violated by the Cities' failure to provide counsel. Ex. 1 at 198-201; Exs. 33 & 34.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 16
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**E.      The Experts on Prosecution and Defense Agree That Systemic Constitutional Violations Are Occurring**

Plaintiffs have obtained the assistance of three well respected criminal law and ethics experts in the State of Washington to offer their opinions on the facts presented in this case. These expert witnesses uniformly conclude that the right to counsel under the United States and Washington State Constitutions is being violated by the Cities' systemic failure to, at a minimum, require the establishment of a confidential attorney-client relationship where there is a discussion of the government's charges and evidence, a discussion of whether to investigate and challenge the government's case, a discussion of whether a negotiated resolution of the charges should be pursued, and a discussion of whether to try the case.  *See* Declaration of David Boerner ("Boerner Decl.") ¶ 12; Declaration of John Strait ("Strait Decl.") ¶¶ 19-27; Declaration of Christine Jackson ("Jackson Decl.") ¶¶ 7-17.  Moreover, all of the experts agree that the Cities are violating the right to counsel because of their failures to ensure, at a minimum, that the Public Defender meets with indigent defendants to confidentially discuss critical case issues before the defendants appear in court; that the Public Defender appears and stands with indigent defendants whenever the defendants are required to address the courts; and that the Public Defender provides indigent defendants with accurate information regarding jail alternatives, plea alternatives, dispositional alternatives, and plea consequences, among other things.  Boerner Decl. ¶¶ 16-17; Strait Decl. ¶¶19-25, 27; Jackson Decl. ¶¶ 7-17.  Expert Professor Strait further opines that the excessive caseloads do not allow for "adequate communication" and that the system of indigent defense operated by the Cities makes it impossible to provide indigent accused with the right to counsel under the Sixth Amendment and Article I, Section 22.  Strait Decl. ¶¶20-21.

Based on the facts presented and these expert opinions, Plaintiffs ask the Court to deny the Cities' summary judgment motions and grant preliminary injunctive relief against the Cities

enjoining them to provide the minimum right to counsel protections required by the constitutions and by the terms of their Public Defender contract.

### III.   AUTHORITY AND ARGUMENT FOR GRANTING PRELIMINARY INJUNCTION

To obtain a preliminary injunction, Plaintiffs must establish:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in favor of issuing a preliminary injunction; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  While each element of the *Winter* test must be satisfied, the test is applied on a sliding scale:  "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Plaintiffs satisfy all four of these elements and thus are entitled to preliminary injunctive relief.

### A.   Plaintiffs Have Established a Strong Likelihood of Success on the Merits

Indigent criminal defendants have a constitutional right to counsel.  In turn, the Cities have a constitutional duty to operate a public defense system that provides effective assistance of counsel to indigent defendants charged with crimes.  In this case, the Cities have breached their duty by knowingly operating a public defense system that regularly and systemically deprives indigent persons of their right to counsel.  Based on the specific deficiencies discussed below, Plaintiffs are likely to succeed on the merits of their constructive denial of counsel claim.

### 1.   Indigent Defendants Have a Constitutional Right to Counsel

The United States and Washington State Constitutions guarantee a criminal defendant the right to the assistance of counsel. U.S. Const. amend. VI; Wash. Const. art. I § 22.  In *Gideon v. Wainwright*, 372 U.S. 335 (1963), the United States Supreme Court described the guarantee of counsel as a fundamental right and formally extended it to state court indigent defendants,

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 18
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

exclusively at the government's expense.  Nine years later, in *Argersinger v. Hamlin*, 407 U.S. 25

(1972), the Court clarified that this right is afforded not only to those charged with felonies, but

also to those facing misdemeanor and petty offenses.  Central to these decisions and

constitutional provisions is the prevailing notion that the assistance of counsel is an essential

element of a just and fair trial.  *Id.* at 36-37 (footnote omitted) ("We must conclude, therefore,

that the problems associated with misdemeanor and petty offenses often require the presence of

counsel to insure the accused a fair trial.");  *see also Gideon*, 372 U.S. at 344 ("[R]eason and

reflection require us to recognize that in our adversary system of criminal justice, any person

haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is

provided to him.  This seems to us to be an obvious truth.").

Because they are prosecuting criminal charges against indigent defendants in municipal

court, the Cities are responsible for providing counsel to those defendants.  *See*

RCW 10.101.030; *In re Michels*, 150 Wn.2d at 174.  "The Constitution's guarantee of assistance

of counsel cannot be satisfied by mere formal appointment."  Hurrell-Harring v. New York, 15

N.Y.3d 8, 22 (quoting Avery v. Alabama, 308 U.S. 444, 446 (1940)).  Rather, the appointed

attorney must actually represent the client—through presence, attention, and advocacy—at all

critical stages of the defendant's criminal prosecution.  *Avery v. Alabama*, 308 U.S. 444, 446

(1940); *Ferri v. Ackerman*, 444 U.S. 193, 204 (1979); *United States v. Cronic*, 466 U.S. 648,

654, 655, 656 (1984).  Critical stages include, among others, initial court appearances,

*Rothgery v. Gillespie Cnty, Tex.*, 554 U.S. 191, 212 (2008), certain arraignments, *Hamilton v.*

*Alabama*, 368 U.S. 52, 53-54 (1961), *White v. Maryland*, 373 U.S. at 60, preliminary hearings,

*Coleman v. Alabama,* 399 U.S. 1, 9-10 (1970), and plea negotiations.  *White,* 373 U.S. 59, 60

(1963); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (U.S. 2010).  At a minimum, actual

representation requires the attorney to do everything necessary to be competent.  *Powell v.*

*Alabama,* 287 U.S. 45, 57-58 (1932). This includes the following:  (1) assessing the facts of the

client's case; (2) discussing and explaining the rights, charges, potential defenses, and legal

options with the client; (3) holding confidential consultations with the client; (4) conducting witness interviews and pre-trial investigations, (5) maintaining a reasonable level of responsiveness to the client's inquiries; (6) forming a meaningful relationship with the client; and (7) developing a plan of action based on the client's requests and informed consent.  Boerner Decl. ¶ 10; Strait Decl. ¶¶ 19, 21, 23, 24, 27; Jackson Decl. ¶¶ 10, 11, 15, 16.

If an accused is denied an attorney at any critical stage, there can be no other conclusion than that representation was not provided.  *Cronic*, 466 U.S. at 659.  A criminal defendant whose appointed counsel is unable to provide actual representation is in no better position than one who has no counsel at all.  *Evitts v. Lucey,* 469 U.S. 387, 396 (1985).

### 2. Because Plaintiffs Are Challenging the Cities' Systemic Denial of the Right to Counsel, the *Strickland* Standard Is Not Applicable

The Cities are constructively denying indigent persons of the basic right to counsel, and Plaintiffs seek injunctive relief to end that practice.  Because Plaintiffs are not making a post-conviction challenge based on ineffective assistance of counsel, the prejudice requirement of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), does not apply.  The Court can award prospective relief for the pre-conviction Sixth Amendment claims at issue here, and the Cities' assertions to the contrary should be rejected.

Courts and commentators alike recognize that the prejudice showing required by Strickland is not applicable to claims challenging the systemic denial of the right to counsel.  In *Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988) (*case dismissed on abstention grounds sub. nom.*, *Luckey v. Miller*, 976 F.2d 673 (11th Cir. 1992)), the Eleventh Circuit Court of Appeals addressed an issue similar to the one before this Court and ultimately held that the *Strickland* "standard is inappropriate for a civil suit seeking prospective relief."  *Id.* at 1017.  There, a class of indigent defendants sued various Georgia officials for the systemic denial of the right to counsel.  Specifically, the class alleged that defendants failed to provide adequate resources for public defense, delayed in the appointment of counsel, pressured attorneys to hurry their clients'

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 20
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

case to trial or enter a guilty plea, and failed to provide adequate supervision of the system.  *Id.*

at 1013.  In considering these deficiencies, the court explained that the "sixth amendment

protects rights that do not affect the outcome of a trial.  Thus, deficiencies that do not meet the

'ineffectiveness' standard may nonetheless violate a defendant's rights under the sixth

amendment."  *Id.* at 1017; *see also* Emily Chiang, Indigent Defense Invigorated: A Uniform

Standard for Adjudicating Pre-Conviction Sixth Amendment Claims, 19 Temp. Pol. & Civ. Rts.

L. Rev. 443, 461 (2010) ("Strickland is wholly inapplicable to pre-conviction claims") (emphasis

omitted).

Similarly, in *Hurrell-Harring*, *supra*, the New York Court of Appeals faced a class action

lawsuit challenging a number of New York public defense systems which allegedly presented an

unacceptable risk that indigent defendants were being denied their constitutional right to counsel.

15 N.Y.3d at 22.  Among the deficiencies claimed was the public defenders' failure to (1) confer

with clients; (2) to respond to client inquiries and requests from jail; (3) consult with clients

before waiving important rights; and (4) do little more than serve as conduits for plea offers,

some of which were highly unfavorable. *Id.* at 19.  In its discussion, the court stated that

"allegations [like those here] state a claim, not for ineffective assistance under *Strickland*, but for

basic denial of the right to counsel under *Gideon*." *Id.* at 22.  Thus, the court determined that the

class had stated a cognizable claim for the constructive denial of their right to counsel:  "Given

the simplicity and autonomy of a claim for nonrepresentation, as opposed to one truly involving

the adequacy of an attorney's performance, there is no reason . . . why such a claim cannot or

should not be brought without the context of a completed prosecution." *Id.* at 24.  Stated

differently, "Gideon's guarantee to the assistance of counsel does not turn upon a defendant's

guilt or innocence, and neither can the availability of a remedy for its denial." *Id.* at 27; see also

Cronic, 466 U.S. at 658-59 ("There are . . . circumstances that are so likely to prejudice the

accused that the cost of litigating their effect in a particular case is unjustified.  Most obvious, of

course, is the complete denial of counsel.") (footnote omitted).

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 21
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

The well reasoned opinion in *Hurrell-Harring* and the court's rationale find strong support in relevant case law.  *See, e.g.*, *Rivera v. Rowland*, No. CV-95-0545692S, 1996 WL 636475, at *5 (Conn. Super. Ct. Oct. 23, 1996) (because plaintiffs sought injunctive relief, they did "not necessarily need to allege that they have already suffered harm as they would be required in other types of cases, but rather that they are at imminent risk of harm if the court does not grant the relief requested");[10] *Lavallee v. Justices in Hampden Superior Court*, 812 N.E.2d 895, 907 (Mass. 2004) ("Although the harm may not be fully developed – a matter that can be ascertained at some later date after a petitioner has counsel – the harm nevertheless exists; the loss of opportunity to confer with counsel to prepare a defense is one that cannot be adequately addressed on appeal after an uncounselled conviction."); Memorandum and Order on Motion to Dismiss, Cause at 7-8, *White v. Martz*, No. CDV-2002-133 (Mont. Jud. Dist. Ct. July 24, 2002 (concluding that *Strickland* was inapplicable to pre-conviction claims);[11] *Best v. Grant County*, No. 04-2-00189-0 (Wash. Super. Ct. Oct. 14, 2005) (upon granting plaintiffs' summary judgment against the County, the court concluded that *Strickland* did not apply:  "only prospective relief is being sought to fix the system . . . [a]s such, class plaintiffs do not have to demonstrate individual prejudice").[12]

For these reasons, it does not matter that pending criminal charges filed against Plaintiffs and proposed class members have not yet resulted in convictions.  Plaintiffs are not seeking post-conviction relief.  Rather, Plaintiffs seek to end the Cities' practice of systemically violating the constitutional rights of indigent defendants by prosecuting those defendants without providing actual representation.

---

[10] A copy of this decision is attached hereto as Appendix A.

[11] A copy of this decision is attached hereto as Appendix B.

[12] A copy of this decision is attached hereto as Appendix C.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### 3.  The Cities Are Violating the Constitutional Rights of Indigent Defendants on a Systemic Basis

Indigent defendants with criminal charges pending in Mount Vernon and Burlington are suffering from the constructive denial of counsel. While the defendants are appointed counsel to represent them in their criminal proceedings, these court-appointed attorneys fail to provide the minimal level of assistance mandated by the United States and Washington State Constitutions and the law prescribed in *Gideon v. Wainwright*. Moreover, the Cities are aware of these longstanding deficiencies yet fail to take any action to correct these constitutional violations. As evident in the following sections, Plaintiffs are likely to succeed on the merits of their claim.

### a.  Likelihood of Success Because the Public Defender's Excessive Caseload Is Resulting in the Constructive Denial of Counsel

The WSBA standards for public defense services are "useful" for determining whether indigent defendants are being denied their constitutional right to counsel. *A.N.J.*, 168 Wn.2d at 110; *see also* RCW 10.101.030). In Washington, the caseload of a full-time public defense attorney should normally be capped at 300 misdemeanor cases per year and "shall not" exceed 400 misdemeanor cases per year. Ex. 13 at 4. Where the attorney also maintains a private law practice, "the caseload [limit] should be based on the percentage of time the lawyer devotes to public defense." *Id.*

Here, the caseloads being handled by the attorneys who act as the Public Defender are off the charts. In 2009 and 2010, both Witt and Sybrandy averaged well over 1,000 misdemeanor cases per year for indigent defendants despite devoting only a third of their time to public defense. *See* Section II.B, *supra*. Witt's average of 1,150 misdemeanor cases (performed on a part-time basis) works out to a full-time equivalent of 3,450 such cases per year. This is more than 11 times the normal standard established by the WSBA. Added together, Sybrandy and Witt are juggling the workload of 22 full-time public defenders.[13] On the face of it, this evidence

---

[13] During 2009 and 2010, Sybrandy averaged 1,084 cases per year and Witt averaged 1,150, a total of 2,234 cases between the two. Considering that they spend only a third of their time on public defense cases, this amounts to a

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 23
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

demonstrates the Cities are failing to provide actual representation to indigent defendants facing criminal charges in those jurisdictions.  *See* Strait Decl. ¶¶ 20-21 (explaining that the excessive caseloads do not allow time for "adequate communication" and that "system of indigent defense operated by the Cities . . . is designed to make it impossible to provide . . . accused with the Right to Counsel"); Jackson Decl. ¶¶ 6, 22.

> **b.**     **Likelihood of Success Because the Public Defender Refuses to Form Confidential Attorney-Client Relationships With Indigent Defendants**

One of the cornerstones of providing effective assistance of counsel is conducting confidential consultations with the client.  *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977); Emily Chiang, *Indigent Defense Invigorated: A Uniform Standard for Adjudicating Pre-Conviction Sixth Amendment Claims*, 19 Temp. Pol. & Civ. Rts. L. Rev. 443, 455 (2010); *see also* Johnson Decl. ¶¶ 10, 15; Boerner Decl. ¶ 10; Strait Decl. ¶¶ 19, 21, 23 (communicating with the client allows an attorney to understand the facts of the case to know what factual and legal defenses to investigate).  Assuring confidentiality encourages clients to make "full and frank" disclosures to their attorneys, who are then better able to provide effective and adequate representation.  *Upjohn*, 449 U.S. at 389; Strait Decl. ¶ 21 (same).  When clients are not given the opportunity to discuss their cases in confidence, they are less likely to reveal facts that could significantly affect their prosecutions. *Id.*; *see also* Jackson Decl. ¶ 10.

In this case, it is regular practice for the Public Defender to refuse to meet with or respond to indigent defendants outside of court or in advance of hearings, even when those defendants are being held in the Skagit County Jail.  Instead, the Public Defender only communicates with clients in open court while other people, such as judges, prosecutors, police, probation officers, and court personnel are present.  *See* Wilbur Decl. ¶ 7; Moon Decl. ¶¶ 11, 13; Montague Decl. ¶ 20; Osborne Decl. ¶ 28; Johnson Decl. ¶ 4.  This practice discourages indigent

---

full-time equivalent of 6,702 cases per year for the attorneys (2,234 x 3).  When this caseload is divided by 300, the normal full-time caseload for any one attorney, the result is 22.34.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 24
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

defendants from revealing crucial facts that could impact their case, and is a direct violation of the defendants' constitutional right to effective assistance of counsel.  *See* Strait Decl. ¶¶ 22-25 (explaining that an attorney's failure to communicate, investigate and consult with client violates the Sixth Amendment and Article I, Section 22).

### c. Likelihood of Success Because the Public Defender Refuses to Attend or Stand Next to Indigent Defendants During Critical Stages of Their Prosecution

The right to the assistance of counsel requires that the public defender advocate for the express interests of his or her client at all critical stages of the prosecution.  *See Cronic*, 466 U.S. at 659 & n.25; *Anders v. California*, 386 U.S. 738, 743 (1967); Boerner Decl. ¶ 14; Jackson Decl. ¶ 18; Strait Decl. ¶ 19.  The only way an attorney can successfully perform this task is to be present at the indigent defendants' hearings and pay full attention to the dialogue between the judge, prosecutor, and defendant.  Jackson Decl. ¶ 18; Strait Decl. ¶ 27.  If an attorney fails to perform this basic function, there is a serious risk that the client will unknowingly provide incriminating evidence or subject herself to contempt of court.  *Id.*

Here, the Cities fail to ensure that when the Public Defender is actually present for important court proceedings, the Public Defender stands next to and advocates on behalf of the indigent defendants appearing before the court.  *See* Osborne Decl. ¶¶ 15, 19, 21, 24, 25; Montague Decl. ¶¶ 3 6, 37; Johnson Decl. ¶¶ 8, 9, 10; Sanchez Decl. ¶¶ 10, 11.  The fact that the Public Defender may be in the courtroom at the time of the hearings is of no consequence since the Public Defender is, more often than not, attending to other client matters and in no way paying attention to the inquiries that the judge asks of the indigent defendants.  Osborne Decl. ¶¶ 21, 25; Johnson Decl. ¶ 10.  This physical distance and lack of attention violates the Sixth Amendment's right to counsel and places indigent defendants at an increased risk of suffering substantial harm.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 25
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

      **d.**     **Likelihood of Success Because the Public Defender Fails to Assess, Discuss, and Explain the Elements of the Criminal Charges with Indigent Defendants**

At the outset of the case and before the accused appears in court to enter a plea, defense counsel has a duty to review the police report with the client, then assess and discuss the facts of the case and applicable law with the client. *See Maynor v. Green*, 547 F. Supp. 264, 266 (S.D. Ga. 1982); *Gaines v. Hopper*, 430 F. Supp. 1173, 1179-80 n.13 (M.D. Ga. 1977), *aff'd*, 575 F.2d 1147 (5th Cir. 1978); *see also* Jackson Decl. ¶ 10; Boerner Decl. ¶¶ 10, 12, 13; Strait Decl. ¶¶ 19, 23.  As part of this assessment, which may occur at the initial conversation or at subsequent follow-up discussions, the attorney and client should have a meaningful conversation regarding the:  (1) legal elements and penalties associated with the charge; (2) evidence that the prosecutor contends will prove its case; (3) potential defenses and investigative work that needs to be done, and (4) decision of whether to take the case to trial or negotiate a resolution of the charges. *See Green*, 547 F. Supp. at 266; *see also* Boerner Decl. ¶¶ 10, 12; Strait Decl. ¶¶ 19, 21.

Here, the Public Defender fails to do any of the above.  As Plaintiffs and other indigent defendants testify, they "never really knew what [their] charges entailed or what [their] options were because [the Public Defender] never explained these things to [them]." Moon Decl. ¶ 4; *see also* Wilbur Decl. ¶¶ 8, 23; Montague Decl. ¶¶ 18, 19, 38, 39, 40; Osborne Decl. ¶¶ 22, 23, 27; Johnson Decl. ¶ 9; Sanchez Decl. ¶¶ 9, 12, 13.  Typically, the defendants would meet their attorney for the first time in the courtroom only moments before entering a plea.  This short amount of time does not allow for a substantive discussion regarding the legal elements of the defendants' charges, the prosecutors' evidence against them, or possible defenses or investigative work that needs to be done.  *See* Ex. 27 at 3, 9 (WSBA performance guidelines provide that a public defender should, among other things, make early contact with the client, conduct "an in-depth interview," and investigate the charges).  Additionally, the indigent defendants felt more often than not that they needed to plead guilty because they had no other option.  *See, e.g.*, Moon

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 26
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Decl. ¶¶ 4, 5, 11; Wilbur Decl. ¶ 9; Sanchez Decl. ¶ 8.  These inadequacies are a clear violation of the right to counsel.

> **e.      Likelihood of Success Because the Public Defender Refuses to Consult With and Respond to Client Inquiries and Requests**

"Adequate consultation between attorney and client is an essential element of competent representation of a criminal defendant." *United States v. Tucker*, 716 F.2d 576, 581 (9th Cir. 1983).  This duty entails maintaining a reasonable level of responsiveness to clients' inquiries and requests.  *See* Boerner Decl. ¶ 10; Strait Decl. ¶¶ 21, 22.  In this case, there is overwhelming evidence that the Public Defender not only fails to initiate meetings with indigent defendants, but repeatedly and blatantly ignores messages and countless attempts at contact by those defendants and their family members.  Wilbur Decl. ¶¶ 7, 11, 13, 18, 19, 21; Moon Decl. ¶¶ 3, 10, 11; Montague Decl. ¶¶ 11, 12, 13, 16, 17, 24, 33; Osborne Decl. ¶¶ 11, 13, 16, 18; Johnson Decl. ¶¶ 3, 6.

Plaintiffs' experts agree that it is extremely important for public defenders to conduct initial meetings with their clients and that such meetings take place soon after assignment. Jackson Decl. ¶ 10; Boerner Decl. ¶ 13; Strait Decl. ¶ 23.  Meetings with incarcerated clients are particularly important.  *See* Ex. 27 at 3.  In this case, however, the Public Defender completely fails to meet with indigent defendants prior to court, regardless of whether they are in jail or not. Wilbur Decl. ¶ 22; Montague Decl. ¶¶ 18, 24; Johnson Decl. ¶ 7.  In fact, the only time the Public Defender responded to Plaintiffs' messages or met with them in jail was after initiation of this class action lawsuit.  Wilbur Decl. ¶ 24; Moon Decl. ¶ 12; Montague Decl. ¶ 34.

> **f.      Likelihood of Success Because the Public Defender Refuses to Investigate Charges, Often Times Leading to Incorrect Information and Dire Consequences for Clients**

Criminal defense counsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary.  *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001).  Additionally, the ABA Standards for Criminal Justice require

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 27
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

"prompt investigation of the circumstances of the case and . . . all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction." *ABA Standards for Criminal Justice* 4-4.1 (2d ed. 1982 Supp.); *see also* Ex. 27 at 3, 9.  As part of their investigation, public defenders should gather facts to ensure they are advising their clients of the correct information.  *See* Strait Decl. ¶¶ 21, 23.  This routinely was not done here.

In one case, for example, Mr. Witt told Plaintiff Moon that if he pled guilty to his DUI charge, he would be allowed to participate in jail alternatives.  Moon Decl. ¶ 8.  Mr. Moon understood this to mean that if he paid a fee he would be allowed to work outside of the jail and earn an income to support his family.  Moon Decl. ¶ 8.  However, after Mr. Moon pled guilty, he was informed that he was ineligible for jail alternatives because of a prior conviction.  He was thereafter sentenced to serve six months in jail.  Moon Decl. ¶ 9.  These stories are consistent with numerous other complaints that the Public Defender failed to conduct any type of investigative work for the cases of indigent defendants, including investigations regarding potential penalties.  *See, e.g.*, Wilbur Decl. ¶ 23; Sanchez Decl. ¶ 9; Johnson Decl. ¶ 9; *see also* Ex. 15 at 12.

> **g.     Likelihood of Success Because the Public Defender Fails to Develop a Plan of Action Based on the Requests and Informed Consent of Clients**

If an attorney has performed his or her duty to adequately inform his or her client about important elements of the case, the client should be able to make an informed decision regarding a plan of action, particularly as to critical decisions such as whether to plead guilty.  *See Green*, 547 F. Supp. at 267; *see also* Jackson Decl. ¶ 17; Strait Decl. ¶ 19.  While the attorney can always suggest an alternative and advantageous plan, decisions like whether to plead guilty or go to trial are ultimately the client's choice, and the attorney, therefore, has a duty to abide by the client's decision.  *See People v. Cosby*, 916 N.Y.S.2d 689, 692 (N.Y. App. Div. 4 2011); MODEL RULES OF PROF'L CONDUCT R. 1.2 (2009).  Here, instead of informing indigent defendants of their rights and respecting their wishes, the Public Defender is telling indigent defendants what to do,

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 28
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

and in many cases this command is to plead guilty.  Wilbur Decl. ¶ 9; Moon Decl. ¶ 5; Sanchez Decl. ¶ 8; Exs. 18.A, 18.F, 18.I.

### 4. The Cities Have Knowledge of the Multiple Failures of Their Public Defense System, Yet Fail to Do Anything to Correct Them

The Cities, by and through their respective mayors and city councils, are responsible for the delivery of public defense services and the maintenance of such a system.  *See* RCW 10.101.030; *In re Michels*, 150 Wn.2d at 174; *see also* Ex. 1.  Therefore, it is the Cities that are responsible for each of the failures and inadequacies of the services discussed above. First, it is the Cities that are allowing the Public Defender to carry a caseload in excess of 3,000 misdemeanor cases per year per full-time attorney.

Second, it is the Cities that are failing to raise the Public Defender's compensation from one year to the next, despite knowing that there had been a steady increase in the number of cases prosecuted and hence work required, and knowing that the result would be the attorneys lacking sufficient time to comply with their constitutional duties in representing each indigent client.

Third, it is the Cities that are failing to provide any meaningful system of oversight for their public defense system, which would have revealed the lack of constitutional compliance before it was necessary to bring this lawsuit.  *See e.g.,* Exs. 12 & 17 (monthly time records submitted to the Cities show attorneys regularly spent as little as thirty minutes per case).

And fourth, it is the Cities that are repeatedly hiring the same attorneys year after year, despite numerous complaints regarding the inadequate representation and violations of the right to counsel tasks they were contractually obligated to perform.  Simply put, the Cities know their public defense system is in shambles, yet they continue to neglect it, thereby constructively denying the right to counsel to an entire class of indigent criminal defendants.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 29
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**B.      Indigent Defendants Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction**

When "an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Bery v. City of New York*, 97 F.3d 689, 694 (2nd Cir. 1996) (quoting 11A Charles A. Wright, Arthur R. Miller & Mary Kane, *Federal Practice & Procedure* § 2948.1 (2nd ed. 1995)); *see also Best v. Grant County*, No. 042-00189-0 (Wash. Super. Ct. Aug. 26, 2004) at 7 (The allegation that a pre-trial defendant "is facing criminal prosecution without an effective lawyer by his side certainly raises the prospect of serious and immediate injury or threatened injury.");[14] *id.* at 8 ("The accused is prejudiced if he or she is forced to plead guilty rather than run the risk of going to trial . . . or when the accused must evaluate the pros and cons of a plea offer without competent counsel to explain the plea and its consequences."); *Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960) ("The District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right.").

In this case, there is no dispute that the above deficiencies violate the constitutional right to counsel of Plaintiffs and other indigent defendants.  Inadequate investigation and preparation, a failure to conduct confidential consultations, a failure to raise legal defenses, a failure to provide meaningful (or correct) advice, pressure to plead guilty, and all the other systemic shortcomings discussed above are in and of themselves deprivations of the indigent defendants' rights.  Unless the Cities take immediate steps to correct these shortcomings, the class of indigent defendants that Plaintiffs represent will continue to suffer irreparable harm in the absence of a preliminary injunction.

**C.      The Balance of Equities Tips in Favor of Plaintiffs**

When considering a request for preliminary injunction, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or

---

[14] A copy of this decision is attached hereto as Appendix D.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 30
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

withholding of the requested relief."  *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).  Here, the right to counsel, an essential and fundamental right of a fair trial, greatly outweighs any hardship, including financial burdens, that a preliminary injunction would cause the Cities.  In fact, the Supreme Court has long held that financial concerns are not a justification for the infringement of a criminal defendant's constitutional rights.  *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 392 (1992).  While a preliminary injunction will likely require the Cities to spend additional money to restore their public defense systems to constitutional standards (something they are already obligated to maintain), this expenditure pales in comparison when the liberty of hundreds of indigent defendants is at stake.

**D.     A Preliminary Injunction Is in the Public Interest**

It is in the public interest that every individual accused of a crime be afforded the procedural and substantive safeguards designed to assure a fair trial.  *See Gideon*, 372 U.S. at 344.  "This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him."  *Id.*  In fact, in order for justice to be served, both the government and indigent defendant must have access to representatives who can zealously and effectively articulate their positions.  Boerner Decl. ¶ 8.  If the legal process no longer entails a confrontation between adversaries, the right to counsel becomes illusionary and the criminal system loses its legitimacy in the eyes of the public.  *See Cronic*, 466 U.S. at 656; Boerner Decl. ¶ 9.

Additionally, when an indigent defendant is not afforded the effective assistance of counsel or the support of an attorney-advocate, there is more pressure on the defendant to plead guilty and surrender his or her right to a trial.  Boerner Decl. ¶ 11.  This is true even when he or she is completely innocent or guilty of a lesser charge.  *Id.*  In this case, a number of indigent defendants have pled guilty to the original charges brought against them because they felt their attorney gave them no other option, even after they proclaimed their innocence and/or requested a trial.  *See* Moon Decl. ¶¶ 5, 6, 7; Sanchez Decl. ¶ 8; Wilbur Decl. ¶ 9; Exs. 18.A, 18.F, 18.I.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 31
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

This type of system disserves justice and misuses valuable public resources.  Sentencing individuals to jail for crimes they did not commit or for a period longer than warranted wastes taxpayer money.  Similarly, public defenders unduly prolong the litigation process and strain judicial resources when they fail to identify reasons cases should be dismissed early on, refusing confidential communication with their clients that may provide information justifying dismissal or supporting a defense, and when they repeatedly continue cases for reasons not promoting the clients' interests but to increase the pressure to plead guilty.  Yet, this is exactly what is occurring in the Cities' municipal courts.  Montague Decl. ¶ 15; Wilbur Decl. ¶ 9; Osborne Decl. ¶¶ 9, 12, 14, 15, 17; Johnson Decl. ¶ 6.  For all of these reasons, a preliminary injunction is warranted and a proposed order is attached.

## IV.   AUTHORITY AND ARGUMENT FOR DENYING SUMMARY JUDGMENT

This Court has the authority to simultaneously grant Plaintiffs' motion for preliminary injunction and to deny Defendants' motions for summary judgment.  If the Court finds that Plaintiffs have satisfied the requisite elements of a preliminary injunction, it should grant Plaintiffs preliminary injunctive relief.  Because Defendants have failed to tender sufficient evidence to eliminate material issues of fact from the case, the Court should deny Defendants' motions for summary judgment.  A concurrent granting and denial of these respective motions is not only acceptable but required if warranted by the facts of the case.  *See UARCO Inc. v. Dupea*, No. C98-259R, 1998 WL 34373929 (W.D. Wash. July 24, 1998) (court granted plaintiffs' motion for preliminary injunction on demonstration of the necessary elements and denied defendants' motion for summary judgment on failure to show no genuine dispute of material fact); *LifeScan, Inc. v. Polymer Tech. Int'l Corp.*, No. C94-672R, 1995 WL 271599 (W.D. Wash. Jan. 3, 1995) (same); *Man Yum Ng v. Metro. Transp. Auth.*, 851 N.Y.S.2d 64 (N.Y. Sup. Ct. 2007) (same); *Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co.*, 900 F. Supp. 1287 (C.D. Cal. 1995)

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 32
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

(same); *Bonnette v. Dist. of Columbia Court of Appeals*, No. 11-1053 (CKK), 2011 WL
21714896 (D.D.C. July 13, 2011) (same).

### A.   Summary Judgment Is Inappropriate Because the Material Facts Are Disputed

Summary judgment should never be granted where facts are disputed or where additional
discovery is necessary.  Here, there are disputed material facts, and additional discovery is
warranted.  Indeed, the Cities have proven this point by demanding that they be allowed to take
Plaintiffs' depositions before the Court rules on the preliminary injunction motion, despite having
represented to the Court that there are no material questions of fact.  *Compare* Wilbur SJM
[DKT. #25], Moon SJM, [DKT. #27], and Montague SJM, [DKT. #32], *with* Notices of
Deposition for Wilbur, Moon, and Montague (Ex. 40).  In particular, the Cities' motions make a
number of disputed factual assertions that Plaintiffs directly refute by declarations and could
further refute after a reasonable period of discovery:

1.   **Disputed Wilbur Facts** — the Cities question the injury suffered by Plaintiff
Wilbur based on the contention he "explicitly" concurred with all of the Public Defender's
actions or inactions by signing a number of court forms containing a variety of disclaimers for
the Public Defender's protection.  *See* Wilbur SJM at 7-8.  But, Mr. Wilbur will testify that he
never had a confidential attorney-client consultation with the Public Defender, never was
informed of the legal elements of the charges against him by the Public Defender, never was told
about the evidence the prosecutor had against him, never was told about possible defenses that
were available to the charges, and never had a private appointment to meet with his Public
Defender to discuss his charges.  *See* Wilbur Decl. ¶¶ 7-9, 21-23.  In fact, the only time
Mr. Wilbur ever saw his Public Defender was in court and the only option ever presented by
Mr. Wilbur's Public Defender was to plead guilty.  *See id.* ¶ 9.  Moreover, when Mr. Wilbur—
who has a 9th grade education—sought to enforce his constitutional rights, the Public Defender
came to his jail cell and threatened retaliation.  *Id.* ¶¶ 1-4, 24.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 33
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Other disputed facts, according to the Cities, are whether Mr. Wilbur was denied meeting requests by the Public Defender, whether a particular Public Defender was even assigned to his case, and whether Mr. Wilbur pled guilty to any charges.  Wilbur SJM at 4:12-13, 11:12-15. Mr. Wilbur, on the other hand, has no doubt who his assigned Public Defender was and has clarity about the number of times he asked for a meeting with that attorney to no avail.  *See* Wilbur Decl. ¶¶ 7, 10, 14, 16, 21, 22.  Likewise, documents from his case file confirm that he pled guilty to charges.  Ex. 41.

2.      **Disputed Moon Facts** — the Cities question the injury suffered by Mr. Moon based on the contention he knowingly and voluntarily entered into a guilty plea agreement with the prosecutor.  *See* Moon SJM at 4-5.  The Cities then raise a factual dispute by asserting that Mr. Moon has now taken "a diametrically opposite position" in the litigation and is attempting to abandon his prior sworn statements.  *Id.* at 6.  Mr. Moon, however, has been consistent and will testify that his Public Defender never held a confidential consultation about the charges against him, refused his requests to meet and discuss his case, never explained the elements of his charges, never explained the evidence held by the prosecutor, and never explained the options he had available for defending himself.  In fact, he will testify that his Public Defender only saw him in court "surrounded by other people" and only gave him the option of a guilty plea, even though Mr. Moon asked him to try the case.  *See* Moon Decl. ¶¶ 3-5, 11-12.

3.      **Disputed Montague Facts** — the Cities question the injury suffered by Ms. Montague based on the contention she ultimately obtained the deferred prosecution she sought, she signed court forms certifying that she was not prejudiced by multiple case continuances, she "knowingly and intelligently" waived her constitutional rights when she entered her guilty plea, and she "never registered any specific objection" to the Public Defender's skill, judgment, or abilities.  *See* Montague SJM at 10.  Ms. Montague, however, will testify about her enormous struggle to obtain counsel when initially incarcerated, her fruitless attempts to contact and meet with her Public Defender once he was assigned to the case, the Public

Defender's refusal to create a confidential attorney-client relationship, his refusal to meet with her at all outside of the courtroom, his failure to explain the criminal charges, defense, or options for treatment, his refusal to visit Ms. Montague in jail until after this lawsuit was filed, and his refusal to stand next to or advocate for Ms. Montague at her hearings.  Montague Decl. ¶¶ 12, 24, 33-34, 36-40.

4.      **Additional Facts Precluding Summary Judgment** — Plaintiffs have provided the Court with extensive evidence of the Cities' systemic denial of the right to counsel that is guaranteed to indigent defendants under the constitutions of the United States and Washington State.  As set forth in the Background section above, the Cities have done nothing to address the Public Defender caseloads that dramatically exceed WSBA standards, have done nothing to address the Public Defender's failure to establish confidential attorney-client relationships with indigent defendants, have done nothing to address the Public Defender's refusal to meet with indigent defendants (including those in custody), have done nothing to address the Public Defender's failure to provide actual representation in court, and have done nothing to address the numerous complaints made by indigent defendants.  In short, the Cities have done nothing to monitor or address the numerous deficiencies in their public defense system.  *See generally* Section II, *supra*.

"In deciding a summary judgment motion, the court must view all facts and inferences therefrom in the light most favorable to the nonmoving party."  *Stewart v. Masters Builders Ass'n of King & Snohomish Cntys.*, 736 F. Supp. 2d 1291, 1294 (W.D. Wash. 2010) (citing *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995)).  The moving party bears the burden of providing and identifying the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986).  Only once the moving party has satisfied its burden does the non-moving party have to present specific facts demonstrating an issue for trial.  *Int'l Rehabilitative Scis., Inc. v. Sebelius*, 737 F. Supp. 2d 1281, 1288 (W.D. Wash. 2010).  Summary judgment will not be granted if there exists an issue

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 35
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

of fact, or if a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, the Cities concede there are questions of fact by demanding that they be allowed to take depositions of Plaintiffs before the Court rules on the preliminary injunction motion. Moreover, the Cities raise facts that are disputed by Plaintiffs' declarations.  For these reasons alone, summary judgment should be denied.

**B.     Summary Judgment Must Be Denied When Plaintiffs Have Not Had An Opportunity to Take Discovery**

Summary judgment is premature when the nonmoving party has not had the opportunity to discover all facts relevant to its claims.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250 n.5 ("[S]ummary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); *see also Garrett v. City & Cnty. of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987) ("The court may continue a motion for summary judgment if the opposing party needs to discover essential facts.").

Here, Plaintiffs seek a preliminary injunction to prevent the violations of constitutional rights that continue to occur.  Those violations and further support for permanent injunctive relief will be proven with discovery.  On the other hand, the Cities filed their motions for summary judgment while Plaintiffs' motion to amend the complaint is pending, before any depositions were taken, and while they and the Public Defender resist production of the very documents that further support Plaintiffs' claims.

Due to the infancy of this matter, the disputed facts, and the promising initial evidence refuting the Cities' factual assertions, Plaintiffs should be allowed to take discovery; discovery will also provide further support for permanent injunctive relief.  Thus, the Cities' motions should be denied.

## C. The Cities' Legal Arguments for Summary Judgment Are Meritless

Summary judgment is not only inappropriate because of the presence of factual disputes, but also because the Cities are not entitled to judgment as a matter of law.  Indeed, the legal analyses in the Cities' summary judgment motions are incorrect.

### 1. The Cities Are Liable Under Section 1983 Because They Systemically Deprive Indigent Defendants of the Right to Counsel That Is Guaranteed Under the Sixth Amendment of the U.S. Constitution

Pursuant to 42 U.S.C. § 1983, a municipality may be held liable for depriving individuals of their rights under the United States Constitution or for causing individuals to be subjected to such a deprivation of rights.  *Connick v. Thompson*, ___ U.S. ___, 131 S.Ct. 1350, 1359, (March 29, 2011).  A plaintiff suing a municipal entity under Section 1983 must show that a municipal policy or custom caused the deprivation of rights.  *Los Angeles County v. Humphries*, ___ U.S. ___, 131 S.Ct. 447, 449 (2010) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978)).  The policy or custom requirement applies whether the plaintiff seeks money damages or prospective relief, such as an injunction.  *Id.* at 449 & 451.

Liability for policy or custom can be based upon the unconstitutional implementation or execution of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality's officers.  *Id.* at 452.  Official municipal policy includes the decisions of the municipality's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.  *Connick*, ___ U.S. ___, 131 S.Ct. at 1359.  Moreover, a municipality can be held liable under Section 1983 for "deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision making channels."  *Humphries*, ___ U.S. ___, 131 S.Ct. at 452.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 37
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

a.   **The Cities Are Liable for Subjecting Plaintiffs and Similarly Situated Individuals to a Public Defense System that Systemically Fails to Provide the Right to Counsel**

Under state and federal law, the Cities are obligated to ensure that counsel "shall be provided" to indigent defendants charged with misdemeanors in their jurisdictions.  *In re Michels*, 150 Wn.2d at 174; *see also Gideon*, 372 U.S. at 344; *Argersinger*, 407 U.S. at 36-37; U.S. Const. amend. VI; Wash. Const. art. I § 22.  The evidence before the Court demonstrates that the Cities are failing to meet this obligation on a systemic basis.  *See generally* Section II, *supra*.  The cause of these widespread violations is the Cities' unconstitutional implementation and execution of regulations, ordinances, and contracts that the Cities have promulgated and adopted for the provision of public defense services.  *See* Mount Vernon Muni. Code 2.62.010−.120; Ex. 20 (Burlington ordinances); Ex. 1 (public defense contract).  Thus, the Cities are liable under Section 1983 for their unlawful policies.  *See Humphries*, ___ U.S. ___, 131 S. Ct. at 452.

b.   **The Cities Are Liable for Persistently Ignoring the Public Defender's Failure to Provide the Right to Counsel Required by the Public Defender Contract**

In order to meet their constitutional obligations under state and federal law, the Cities are required to supervise, monitor, and evaluate the Public Defender.  RCW 10.101.030; *see also* Mount Vernon Muni. Code 2.62.080 (requiring the establishment of "a procedure for systematic monitoring and evaluation of attorney performance based upon published criteria"); Ex. 20 (same for Burlington).  The evidence demonstrates that the Cities are failing this requirement despite having knowledge that the Public Defender does not provide actual counsel to indigent defendants and despite having knowledge of the numerous complaints about the Public Defender's services.

As previously noted, the Public Defender directly told the Cities that it would not comply with its contractual obligations, yet the Cities have done nothing to ensure or require such compliance.  Furthermore, the Cities' have failed to provide any meaningful response to serious

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 38
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

complaints about the Public Defender.  In particular, the Cities have failed to make efforts to protect indigent persons, secure their constitutional rights, or enforce the very contractual obligations the Public Defender is paid to perform.  To make matters worse, the Cities unanimously voted at the end of 2010 to preserve the status quo by extending the Public Defender's contract for another two years.

In sum, the Cities' longstanding customs on public defense are resulting in systemic deprivations of constitutional rights.  Thus, the Cities are liable under Section 1983 for these unlawful customs.  *See Humphries*, ___ U.S. ___, 131 S. Ct. at 452.

### c.    The *Monell* Reckless Indifference Standard Does Not Apply and Even if It Did, the Cities Would Still Be Liable Under Section 1983

Where a municipality's culpability is based on an alleged failure to train certain employees about their legal duty to avoid violating citizens' rights, the plaintiff must prove "deliberate indifference" by the municipality.  This requires proof that the municipality disregarded a known or obvious consequence of its action.  *Connick*, ___ U.S. ___, 131 S.Ct. at 1360.  A municipality's policy of inaction in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution."  *Id.*

The Cities erroneously assume that Plaintiffs are basing their claims in this case on the Cities' failure to train certain employees about their legal duty to avoid violating citizens' constitutional rights.  *See* Wilbur SJM [DKT. #25] at 26-29; Moon SJM [DKT. #27] at 22-25; Montague SJM [DKT. #32] at 25-28.  Nowhere in the complaint, however, is there an allegation that 1983 liability is premised on such a failure.  *See* Complaint for Injunctive and Declaratory Relief [DKT. #1].  To the contrary, Plaintiffs' claims are premised on the fact that the Cities are fully aware of what is constitutionally required by the right to counsel, yet the Cities are systemically depriving indigent defendants of that right.  Furthermore, the Cities knowingly operate a public defense system in which the Public Defender fails to create attorney-client

relationships, fails to have confidential discussions with indigent clients, fails to investigate criminal charges, and fails to provide advice or counsel on options available to those accused of crimes.  That is very different from the failure to train theory that the Cities erroneously assert in their summary judgment motions.

Even if the Court were to accept the Cities' mistaken argument that this is a failure to train case, liability under Section 1983 would still remain.  Indeed, the record shamefully illustrates how the Cities have persistently allowed the trampling of constitutional rights for many years.  Under the deliberate indifference standard, this behavior cannot escape Section 1983 liability.  *Connick*, the most recent U.S. Supreme Court case on Section 1983 liability, makes this point.

In *Connick*, the question presented was whether a district attorney's office may be held liable under Section 1983 for failure to train its prosecutors based on a single *Brady* violation.  *Connick*, ___ U.S. ___, 131 S.Ct. 1350.  The plaintiff, who was wrongfully convicted and sentenced to death, brought a Section 1983 action against the Orleans Parish District Attorney's office for failing to train its prosecutors adequately about their duty to produce exculpatory evidence based on *Brady v. Maryland*, 373 U.S. 83 (1963).  *Id.* at 1355-56.  In Mr. Thompson's case, that exculpatory evidence was crucial in overturning his murder conviction and in getting him released from death row after 18 years of confinement.  *Id.* at 1355.  At trial, the jury awarded a verdict of $14 million on his claim, and that award was affirmed by the Fifth Circuit. *Id.* at 1355-56.

The Supreme Court reversed, holding that a district attorney's office may not be held liable under Section 1983 for a failure to train based solely on a single *Brady* violation.  *Id.* More importantly, however, the Court ruled that a policymaker's "'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability.'"  *Id.* at 1360.  The Court made clear that,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

while a lawyer's special training and ethical obligations give the policymaker the right to assume that the lawyer will act professionally, a known "pattern of violations" by that attorney can and will trigger Section 1983 liability. *See id.* at 1363 ("A district attorney is entitled to rely on prosecutors' professional training and ethical obligations *in the absence of specific reason, such as a pattern of violations*, to believe that those tools are insufficient to prevent future constitutional violations in 'the usual and recurring situations with which [the prosecutors] must deal.'") (emphasis added).

Under any measure, the Cities in this case have been deliberately indifferent to the persistent failure of the Public Defender to provide the right to counsel for the indigent defendants forced to go through their criminal justice system.  The indifference is shown by the fact that the Cities ignored the Public Defender's admission that it would not abide by the right to counsel obligations spelled out in its contract; by the fact that the Cities have refused to compel the Public Defender to provide the right to counsel services that the Cities have already bargained and paid for; and by the fact that the Cities unanimously voted to maintain the status quo when they renewed the Public Defender's contract.

> **d.    Defendants' Reliance on *Polk County v. Dodson* and on *Gausvik v. Perez* Is Misplaced**

In an attempt to escape liability, the Cities try to place sole responsibility on the Public Defender, focusing on a failure to train theory that was never alleged.  To support their misplaced argument, the Cities rely on *Polk County v. Dodson*, 454 U.S. 312 (1981) and *Gausvik v. Perez*, 239 F.Supp.2d 1047 (E.D. Wash. 2002).  The Cities fail, however, to reveal that the facts in *Polk* and *Gausvik* differ so significantly from the facts present here that neither case applies.

In *Polk*, the issue was whether a public defender acts "under color of state law" when representing an indigent defendant in a criminal proceeding, thereby subjecting herself to penalties under 42 U.S.C. § 1983.  *Polk* 454 U.S. at 314.  While the Supreme Court answered

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 41
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

this question in the negative, that decision has no effect on the present case because Plaintiffs have not sued the Public Defender for violating the Sixth Amendment.  Instead, Plaintiffs have sued the Cities for systemically denying the right to counsel to indigent defendants.  Although Plaintiffs assert the Cities' Public Defender fails to provide actual representation, it is the Cities who are ultimately at fault for knowingly allowing this unconstitutional practice to exist and to continue on a systemic basis.

*Gausvik* involved essentially one dishonest investigator who caused several children to make untrue or unreliable sexual abuse allegations against the plaintiff and several other Wenatchee residents.  *See Gausvik*, 259 F. Supp. at 1050.  The plaintiff sued various individuals, organizations, and municipalities, including Chelan County, for allegedly violating his constitutional rights.  At the heart of his allegations, the plaintiff claimed that Chelan County failed to train its prosecutorial employees, thereby resulting in the staffing of "personnel ignorant of constitutional requirements."  *Gausvik*, 239 F.Supp.2d at 1054.  The court's focus throughout the decision was on whether the plaintiff could prove his failure to train theory and meet the deliberate indifference standard.  *See id.* at 1053 ("the inadequacy of a training policy may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference"), 1057 ("deliberate indifference to the unconstitutional practice is evidenced by failure to correct the situation where the need for training becomes obvious") & 1061 ("there were not enough of them to constitute a 'pattern' which would have placed County Prosecutor Riesen on actual or constructive notice that he needed to do something in the way of training his staff").  Finding that the County was not responsible for the training of its employees, the court granted the County's motion for summary judgment.

In their own motions for summary judgment, the Cities attempt to latch on to this failure to train theory in the hope that this Court will release them of liability for their denial of counsel to indigent defendants.  As discussed above, however, Plaintiffs have never alleged that the Cities failed to train their employees as to the constitutional right to the assistance of counsel.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 42
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Instead, Plaintiffs allege the Cities are depriving indigent defendants of the right to counsel on a systemic basis and have repeatedly ignored numerous complaints from defendants, citizens, and law enforcement officers regarding these systemic violations.  The Cities' failure to take any action to correct these constitutional violations is different from the failure to train employees.

Also important is the fact that in this case there are numerous plaintiffs alleging systemic and continuous violations of their right to counsel, whereas in *Polk* and *Gausvik* only a single plaintiff was involved.  This is significant because "while a single incident of errant behavior is an insufficient basis for imposing liability on a municipality," liability may exist "where a pattern of unconstitutional conduct is so pervasive as to imply actual or constructive knowledge of the conduct."  *Gausvik*, 239 F.Supp.2d at 1057.

For the reasons above, this Court should not excuse the Cities of their constitutional obligation of guaranteeing indigent defendants their right to counsel and, more importantly, should not relieve the Cities of liability for knowingly and continually injuring Plaintiffs and hundreds of similarly situated indigent defendants.

### 2. Plaintiffs Have Standing to Pursue Their Constitutional Claims

"Standing is determined as of the commencement of litigation."  *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1171 (9th Cir. 2002).  To establish standing, a plaintiff must allege that he has suffered an injury in fact, that the injury was causally connected to the defendants' actions, and that it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  For the purposes of injunctive relief, plaintiff must also demonstrate a "real and immediate threat of repeated injury."  *Chapman v. Pier 1 Imports*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc).

At the commencement of litigation, Plaintiffs demonstrated injury-in-fact, caused by defendants' actions and redressible by a favorable decision, and a real and immediate threat of repeated injury.  Plaintiffs commenced this proposed class action on June 10, 2011.  At the time, each named Plaintiff had appeared in a critical stage of the prosecution without representation by

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 43
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

effective counsel. *See e.g.,* Montague Decl. ¶¶ 11–13, 20; Wilbur Decl. ¶¶ 7, 16–19, 21; Moon

Decl. ¶¶ 3, 6–7, 10. Defendants' failure to adequately structure and supervise an indigent defense

system in the Cities was the direct cause of Plaintiffs' injury-in-fact. Further, Defendants

concede that, on June 10, 2011, each Plaintiff remained subject to criminal proceedings and had

been found indigent and in need of representation by a public defender. *See* Wilbur SJM

[DKT. #25] at 10; Moon SJM [DKT. #27] at 7; Montague SJM [DKT. #32] at 10. At the

commencement of litigation, Plaintiffs therefore faced a real and immediate threat that they

would continue to be prosecuted without the assistance of counsel. Plaintiffs have standing to

pursue injunctive relief. *Chapman*, 631 F.3d at 946.

Plaintiffs' ongoing involvement with the courts distinguishes their cases from *Los

Angeles v. Lyons*, 461 U.S. 95 (1981), and *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). The

plaintiff in *Lyons* sought a permanent injunction against the use of chokeholds by Los Angeles

Police officers, but he alleged only that he had, in an isolated past incident, been stopped by

police and subjected to an illegal chokehold. 461 U.S. at 105. Similarly, in *O'Shea*, there was no

allegation that "any of the named plaintiffs at the time the complaint was filed were themselves

serving an allegedly illegal sentence or were on trial or awaiting trial before petitioners." 414

U.S. at 496. In both *Lyons* and *O'Shea*, plaintiffs lacked standing to pursue an injunction

because, at the time the complaint was filed, they were not involved with the police and courts,

respectively. This case stands in stark contrast; because Plaintiffs were subject to pending

proceedings at the time litigation commenced, they faced a real and immediate threat of future

violations of their Sixth Amendment rights.

The Cities erroneously contend that Plaintiffs cannot seek an injunction unless and until

they have been wrongfully convicted. "It is well settled that a plaintiff need not 'await the

consummation of threatened injury to obtain prospective relief.'" *Chapman*, 631 F.3d at 469

(quoting *Farmer v. Brennan*, 511 U.S. 825, 845 (1994)). Plaintiffs need not wait for their Sixth

Amendment rights to be violated before seeking to enjoin the Cities' unconstitutional acts. *Id.*

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 44
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Moreover, the Cities contention that Plaintiffs will suffer no injury unless they are erroneously convicted ignores that Sixth Amendment claims based on "the actual or constructive denial of counsel" differ fundamentally from those based on the "actual effectiveness of counsel's assistance" in a case going to trial. *See Strickland v. Washington*, 466 U.S. 668, 683 (1984). In this civil suit seeking prospective relief, the question is not whether the plaintiff has been prejudiced by counsel's errors, but whether the system of indigent defense created and maintained by the defendants results in a systemic denial of the right to counsel.[15] *See Luckey*, 860 F.2d at 1017 ("Whether an accused has been prejudiced by the denial of a right is an issue that relates to relief—whether the defendant is entitled to have his or her conviction overturned—rather than to the question of whether such a right exists and can be protected prospectively."); *Hurrell-Harring*, 930 N.E. 2d at 220–22 (holding *Strickland* is inapplicable because the allegations in the complaint "go to whether the State has met its foundational obligation under *Gideon* to provide legal representation"). In such a case, the standards for overturning a criminal conviction do not apply.[16] Further, it simply does not follow that because post-conviction remedies may permit individuals to remedy counsel's actual ineffectiveness at trial, Plaintiffs lack standing to prospectively prevent a systemic constructive denial of the right to counsel. *Cf. Lavallee*, 812 N.E. 2d at 911 ("The duty to provide [indigent defense] counsel falls squarely on the government and the burden of a systemic lapse is not to be borne by defendants.").

---

[15] Because Plaintiffs allege systemic denial of the right to counsel—not merely the risk of erroneous conviction—their injuries are not vitiated or made speculative by the possibility that external actors (including the prosecutor, judge, or appeals court) might ultimately prevent the system of indigent defense set up by the Cities from bearing fruit in the form of unconstitutional convictions. *See Luckey v. Harris*, 860 F.2d at 1017.

[16] Considerations of finality and comity animate *Strickland*, *Cronic*, and other cases where defendants sought to overturn state convictions. *See Comer v. Shriro*, 480 F.3d 960, 980 (9th Cir. 2007). These considerations have no place in a pre-trial civil proceeding. *See Luckey*, 860 F.3d at 1017; *Simmons v. State Public Defender*, 791 N.W. 2d 69, 76-77 (Iowa 2010).

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 45
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

3.     **Plaintiffs' Claims Present a Live Case and Controversy**

A claim for injunctive or declaratory relief becomes moot only if the plaintiff no longer has a live case or controversy justifying relief.  *Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007).  In class actions,"[t]here may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on the certification motion." *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975).  In such instances, a case is not mooted by subsequent events if the allegedly illegal acts are "capable of repetition yet evading review" or the class is "inherently transitory."[17]  *See Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975) (holding that a class challenge to conditions at a county jail was not mooted by the conviction and transfer of the named class representatives); *Wade v. Kirkland*, 118 F.3d 667,669–70 (9th Cir. 1997) (holding that even if the named plaintiffs' claims were moot, the district court should rule on the motion for class certification and permit putative class members to intervene).  Both exceptions are present here.

Criminal proceedings are short in duration and inevitably terminate before a civil proceeding, like this one, is fully litigated.  Defendants' allegedly wrongful acts are capable of repetition in each case involving an indigent defendant but may evade review if named plaintiffs' cases are mooted by subsequent acquittal, conviction, or appointment of substitute counsel.[18]  In addition, the proposed class in this action is inherently transitory because it is a constant, though revolving class of persons suffering from the same deprivation.  *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991); *see also Best v. Grant Cnty.*, No. 04-2-00189-0 at ** 7–8

---

[17] *Armstrong v. FAA*, 515 F.3d 1294, 1297 (D.C. Cir. 2008) and *Minn. Humane Soc'y v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999) are inapplicable.  Both involve situations where plaintiff's inaction was the primary reason that subsequent events rendered his dispute moot, and neither even considers mootness in the context of an action brought on behalf of a transitory class.  *See Armstrong*, 515 F.3d 1294 ("Having pursued his appeal in so leisurely a fashion, Armstrong made it impossible for us to say the order of the Administrator was too short-lived to be reviewed"); *Clark*, 184 F.3d 795 (party failed to pursue an expedited or immediate appeal).

[18] The Cities' actions in response to Plaintiffs' motion to add Osborne as a Plaintiff—dismissing Osborne's underlying criminal charge without prejudice and then claiming his case is no longer a live controversy—further demonstrate that Defendants' constitutional violations are capable of repetition evading review.  Indeed, the Cities are prepared to dismiss pending criminal charges in order to avoid judicial review.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 46
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

(Kittitas Cnty. Super. Ct.  Aug. 26, 2004).[19]  Because no member of the present proposed class is likely to have a live claim throughout the entire litigation, the duration of the challenged actions are short enough to evade review.  *See Gerstein*, 420 U.S. at 111.  Therefore, this case should not be dismissed as moot.

### 4.     Plaintiffs Do Not Have Adequate and Ongoing Remedies

The Cities argue that indigent defendants in Mount Vernon and Burlington have adequate remedies at law through the substitution of counsel or appeal. *See e.g.,* Wilbur SJM [DKT. #25] at 13-16.  This contention, however, misconstrues the nature of Plaintiffs' claims.  As noted above in Section IV.C.1, this lawsuit seeks injunctive relief to remedy the *system* of indigent defense designed and maintained by Defendants that results in a *systemic* denial of the right to counsel.  Accordingly, the alternatives of substitution of counsel or wait for an appeal are not adequate because they are unrealistic or force indigent defendants to suffer irreparable harm while they attempt to vindicate their rights.  There is only one attorney (Glen Hoff) assigned to handle conflict cases.  Even if Mr. Hoff took an equal share of the public defense cases being handled by Sybrandy and Witt, each of the three attorneys would still have a caseload that is nearly two and a half times the WSBA's recommended amount for any full-time public defender.  And the suggestion that the municipal court judges will safeguard the rights of indigent defendants is belied by the fact that the judges are aware of the constitutional violations but have taken no steps to address them.  *See* Ex. 23.A & C.

Furthermore, the harm that is suffered by a class of indigent defendants who have been denied the right to counsel "cannot be remedied in the normal course of trial and appeal because an essential component of the normal course, the assistance of counsel, is precisely what is missing here." *Lavallee*, 812 N.E.2d at 907.  There is no adequate remedy at law because "the loss of opportunity to confer with counsel to prepare a defense is one that cannot be adequately addressed on appeal after an uncounselled conviction." *Id*.

---

[19] A copy of the order in *Best* is attached as Appendix D.

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 47
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

In the pretrial context, "[h]arm is not limited to locking innocent people up. The accused is prejudiced if he or she is forced to plead guilty rather than run the risk of going to trial . . . or when the accused must evaluate the pros and cons of a plea offer without competent counsel to explain the plea and its consequences . . . ." *Best v. Grant County*, No. 042-00189-0, at *8 (Wash. Super. Ct. Aug. 26, 2004), attached hereto as Appendix D. A pro se appeal is unlikely to succeed because, as the Supreme Court has noted, "[n]avigating the appellate process without a lawyer's assistance is a perilous endeavor for a layperson, and well beyond the competence of individuals . . . who have little education, learning disabilities, and mental impairments." *Halbert v. Michigan*, 545 U.S. 605, 621 (2005).

### 5. Injunctive Relief Is Designed to Prevent Constitutional Violations Like Those Alleged

In asserting that an injunction is not warranted as a remedy, *see e.g.,* Wilbur SJM [DKT. #25] at 13, the Cities ignore that "[a]n injunction is a favored remedy where constitutional rights are threatened." *Levin v. Harleston*, 770 F. Supp. 895, 925 (S.D.N.Y. 1991), *vacated in part*, 966 F.2d 85 (2nd Cir. 1992). In fact, district courts have "no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right. *Henry*, 284 F.2d at 633. Because the Cities have been violating and continue to violate the constitutional right to counsel of Plaintiffs and other indigent defendants, the Court should award Plaintiffs preliminary injunctive relief.

### 6. Judicial Estoppel Does Not Precludes Plaintiffs' Claims

Defendants erroneously assert that the doctrine of judicial estoppel bars Plaintiffs' claims for violation of their right to counsel. Plaintiffs' "may not default a constitutional claim through conduct that occurs as a result of a constitutional violation." *Morris v. State of Cal.*, 966 F.2d 448, 453 (9th Cir. 1991) (refusing to apply judicial estoppel to bar a Sixth Amendment ineffective assistance of counsel claim post-conviction when the attorney's ineffective assistance was the cause of defendant's action in the first place). As Plaintiffs and other indigent accused testify in

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 48
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

this case, they "never really knew what [their] charges entailed or what [their] options were because [the public defender] never explained these things to [them]." Moon Decl. ¶ 4; Wilbur Decl. ¶¶ 8, 23; Montague Decl. ¶¶ 18, 19, 38, 39, 40; Osborne Decl. ¶¶ 22, 23, 27; Johnson Decl. ¶ 9; Sanchez Decl. ¶¶ 9, 12, 13.  Any actions taken during their pending criminal proceedings were at the direction of the attorneys.  Thus, the Cities' contention that Plaintiffs' "endorsed" Sybrandy and Witt's conduct and should be estopped from asserting otherwise is specious given that the Plaintiffs' testimony shows they were provided no options and had effectively no other choice.  Put simply, Ninth Circuit precedent and the material facts in dispute preclude the application of judicial estoppel and the granting of summary judgment on this ground.

### 7. The Equitable Doctrine of Unclean Hands Is Inapplicable to Constitutional Violations

The doctrine of unclean hands "should not be strictly enforced when to do so would frustrate a substantial public interest."  *EEOC v. Recruit U.S.A., Inc.*, 939 F.2d 746, 753 (9th Cir. 1991).  "The maxim that he who comes into equity must come with clean hands is not applied by way of punishment for an unclean litigant but upon considerations that make for the advancement of right and justice."  *Id.* (quoting *Johnson v. Yellow Cab Transit*, 321 U.S. 383, 387 (1944)).  The unclean hands doctrine is not a doctrine that is to be strictly applied, but rather a formula that should be left to the discretion of the court.  *Id.*

In *Recruit*, the United States Equal Employment Opportunity Commission ("EEOC") filed a complaint seeking a preliminary injunction prohibiting defendants from destroying, altering, or removing from the United States certain business records pertaining to allegedly discriminatory practices engaged in by the defendants.  After the district court granted the injunction, defendants filed notices of interlocutory appeal claiming that the EEOC had violated certain confidentiality provisions in the process of its investigation and thereby disentitled itself from seeking equitable relief.  Defendants based their argument on the doctrine of unclean hands.

In its analysis, the Ninth Circuit Court of Appeals asserted that reversal of the injunction would be adverse to the public interest: "If the charges are true, substantial abusive employment practices would be allowed to continue unchecked. Congressional purpose and the public interest would be frustrated. Innocent victims would be left without a remedy." *Id.* at 754. Furthermore, the court noted that by investigating discriminatory complaints, "the EEOC is effectuating a compelling governmental and public interest in eradicating unlawful employment discrimination and vindicating the rights to victims of such illegal practices." *Id.* at 753. Based on findings that the "substantial public interest permeating the case" warranted a departure from the unclean hands doctrine, the appellate court found that the district court had not abused its discretion in granting the preliminary injunction. *Id*. at 753.

For the same reasons articulated in *Recruit*, this Court should find that the unclean hands doctrine is inapplicable to this case. As discussed above, it is in both the public's and the government's interest to ensure that those accused of a crime be afforded the right to assistance of counsel. The United States and Washington State Constitutions mandate such. If Plaintiffs' claims are found to be true, violations of the Sixth Amendment's right to counsel would be allowed to continue unchecked, and the public interest would be substantially frustrated. For these reasons, this Court should deny the Cities' motion for summary judgment and grant Plaintiffs' motion for preliminary injunctive relief.

### 8.    Plaintiffs Are Not Fugitives and Well-Settled Caselaw Establishes That The Fugitive From Justice Doctrine Does Not Apply in These Circumstances

The Cities contend that the fugitive from justice doctrine applies to the case at bar without citing the applicable caselaw. *See e.g.,* Wilbur SJM [DKT. #25] at 33. An examination of relevant precedent, however, reveals that the fugitive from justice doctrine is a "severe" sanction and respect for the judicial system is "eroded, not enhanced" by applying it too freely. *Degen v. United States*, 517 U.S. 820, 828 (1996) (reversing summary judgment grant in favor of United States in civil forfeiture proceeding because sanction was too severe against individual

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

who appeared in civil lawsuit through attorneys but was not present for his criminal proceeding); *see also Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998) (adopting three-part test for determining whether dismissal of a civil lawsuit is warranted under doctrine: "(1) the plaintiff is a fugitive; (2) his fugitive status has a connection to his civil action; and (3) the sanction employed by the district court, dismissal is necessary to effectuate the concerns underlying the fugitive disentitlement doctrine.")  The fugitive from justice doctrine does not apply here because Plaintiffs are not fugitives.  *Sun v. Mukasey*, 555 F.3d 802, 804 (9th Cir. 2009) (refusing to apply fugitive from justice doctrine in removal proceedings when petitioner's whereabouts are known).  Each Plaintiff has submitted testimony in support of the Complaint, this cross-motion for preliminary injunction and opposition to the Cities' motions for summary judgment, and their whereabouts are known by counsel.  *See* Moon, Wilbur and Montague Decls.  Summary judgment should not be granted on this basis because Plaintiffs contend that they are not fugitives from justice, making the doctrine inapplicable.

## V.      CONCLUSION

For the reasons stated above, Plaintiffs respectfully request a preliminary injunction order and an order denying the Cities' motions for summary judgment.

RESPECTFULLY SUBMITTED this 17th day of October, 2011.

By:  s/ James F. Williams, WSBA #23613
Email: JWilliams@perkinscoie.com
J. Camille Fisher, WSBA #41809
Email: CFisher@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:      206.359.8000
Attorneys for Defendant

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 51
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Beth E. Terrell, WSBA #26759
Email:  bterrell@tmdwlaw.com
Toby J. Marshall, WSBA #32726
Email:  tmarshall@tmdwlaw.com
Jennifer Rust Murray, WSBA #36983
Email:  jmurray@tmdwlaw.com
**TERRELL MARSHALL DAUDT & WILLIE PLLC**
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
Telephone:206.816.6603

Darrell W. Scott, WSBA #20241
Email: scottgroup@mac.com
Matthew J. Zuchetto, WSBA #33404
Email:  matthewzuchetto@mac.com
**SCOTT LAW GROUP**
926 W Sprague Avenue, Suite 583
Spokane, Washington 99201
Telephone:509.455.3966

Sarah A. Dunne, WSBA #34869
Email:  dunne@aclu-wa.org
Nancy L. Talner, WSBA #11196
Email:  talner@aclu-wa.org
**ACLU OF WASHINGTON FOUNDATION**
901 Fifth Avenue, Suite 630
Seattle, Washington  98164
Telephone:206.624.2184

ATTORNEYS FOR PLAINTIFFS

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 52
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

## CERTIFICATE OF SERVICE

I certify that on the 17th day of October, 2011, I made arrangements for my assistant to electronically file the foregoing Plaintiffs' Cross-Motion for Preliminary Injunction and Opposition to Defendants' Motions for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Kevin Rogerson, WSBA #31664
> Email:  kevinr@mountvernonwa.gov
> CITY OF MOUNT VERNON
> 910 Cleveland Avenue
> Mount Vernon, Washington  98273-4212
>
> *Attorneys for Defendant City of Mount Vernon, Washington*
>
> Scott G. Thomas, WSBA #23079
> Email:  sthomas@ci.burlington.wa.us
> CITY OF BURLINGTON
> 833 South Spruce Street
> Burlington, Washington  98233-2810
>
> *Attorneys for Defendant City of Burlington, Washington*
>
> Andrew G. Cooley, WSBA #15189
> Email:  acooley@kbmlawyers.com
> Adam L. Rosenberg, WSBA #39256
> Email:  arosenberg@kbmlawyers.com
> KEATING, BUCKLIN & MCCORMACK, INC., P.S.
> 800 Fifth Avenue, Suite 4141
> Seattle, Washington  98104-3175
>
> *Attorneys for Defendants Cities of Burlington, Washington and Mount Vernon, Washington*

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 53
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Appendix A*

*Appendix A*

Not Reported in A.2d, 1996 WL 636475 (Conn.Super.), 18 Conn. L. Rptr. 117
**(Cite as: 1996 WL 636475 (Conn.Super.))**

# H

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut.
Carlos RIVERA et al.
v.
John ROWLAND, Governor, et al.

No. CV 950545629S.
Oct. 23, 1996.

MEMORANDUM OF DECISION ON DEFEN-
DANTS' MOTION TO DISMISS DATED APRIL
13, 1995

LAVINE.

**\*1** Pursuant to a January 5, 1995 class action
complaint, plaintiffs have filed suit alleging in sub-
stance that minimally adequate legal representation is
not being provided to various categories of indigent
defendants in criminal cases due to high case loads
and lack of sufficient resources.

Plaintiffs, alleging a variety of statutory and con-
stitutional violations under both state and federal
law,[FN1] have moved for class certification pursuant to
a motion not addressed in this memorandum of deci-
sion on behalf of indigent defendants whose cases
have been brought in the Geographical Area (G.A.)
courts, the Judicial District (J.D.) courts, the juvenile
courts, and on behalf of convicted prisoners who
have filed habeas corpus claims.

> FN1. Plaintiffs allege violations of their
> rights under the Sixth and Fourteenth
> Amendments to the United States Constitu-
> tion and Article First, Sections 1, 8, 10, 12
> and 20 of the Connecticut Constitution.
> They also allege violations of 42 U.S.C.
> Section 1983, and Connecticut General Stat-
> utes Section 51-289 et seq.

The Sixth Amendment to the United States
Constitution states as follows:

In all criminal prosecutions, the accused

shall enjoy the right to a speedy and pub-
lic trial, by an impartial jury of the State
and district wherein the crime shall have
been committed, which district shall have
been previously ascertained by law, and to
be informed of the nature and cause of the
accusation; to be confronted with the wit-
nesses against him; to have compulsory
process for obtaining witnesses in his fa-
vor, and to have the Assistance of Counsel
for his defence.

The Fourteenth Amendment to the United
States Constitution states as follows in
relevant part:

Section 1. All persons born or naturalized
in the United States, and subject to the ju-
risdiction thereof, are citizens of the
United States and of the State wherein
they reside. No State shall make or en-
force any law which shall abridge the
privileges or immunities of citizens of the
United States; nor shall any State deprive
any person of life, liberty or property,
without due process of law; nor deny to
any person within its jurisdiction the equal
protection of the laws.

Article First, Sections 1, 8, 10, 12 and 20
of the Connecticut Constitution, respec-
tively, state as follows in relevant part:

Sec. 1. All men when they form a social
compact, are equal in rights; and no man
or set of men are entitled to exclusive
public emoluments or privileges from the
community.

Sec. 8. In all criminal prosecutions, the
accused shall have a right to be heard by
himself and by counsel; to be informed of
the nature and cause of the accusation; to
be confronted by the witnesses against
him; to have compulsory process to obtain
witnesses in his behalf; to be released on
bail upon sufficient security, except in

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 1996 WL 636475 (Conn.Super.), 18 Conn. L. Rptr. 117
**(Cite as: 1996 WL 636475 (Conn.Super.))**

capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed.

Sec. 10. All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

Sec. 12. The privilege of the writ of habeas corpus shall not be suspended, unless, when in case of rebellion or invasion, the public safety may require it; nor in any case, but by the legislature.

Sec. 20. No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry, natural origin, sex or physical or mental disability.

42 U.S.C. Section 1983 states as follows:

§ 1983 Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Connecticut General Statutes Section 51-289 states as follows in relevant part:

Sec. 51-289. Public defender services commission established. Judicial department to provide facilities in courts. Compensation plan. (a) There is established a Public Defender Services Commission which shall consist of seven members appointed as follows: (1) The chief justice shall appoint two judges of the superior court, or a judge of the superior court and any one of the following: A retired judge of the superior court, a former judge of the superior court, a retired judge of the circuit court, or a retired judge of the court of common pleas; (2) the speaker of the house, the president pro tempore of the senate, the minority leader of the house and the minority leader of the senate shall each appoint one member; (3) the governor shall appoint a chairman.

(b) The chairman shall serve for a three-year term and all appointments of members to replace those whose terms expire shall be for terms of three years.

(c) No more than three of the members, other than the chairman, may be members of the same political party. Of the four nonjudicial members, other than the chairman, at least two shall not be members of the bar of any state.

(d) If any vacancy occurs on the commission, the appointing authority having the power to make the initial appointment under the provision of this chapter shall appoint a person for the unexpired term in accordance with the provisions of this chapter.

(e) Members shall serve without compensation but shall be reimbursed for actual expenses incurred while engaged in the duties of the commission. Members of this commission shall not be employed or

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

nominated to serve as public defenders or in any other position created under this chapter.

(f) The commission may adopt such rules as it deems necessary for the conduct of its internal affairs.

(g) The commission shall be responsible for carrying out the purposes of this chapter and to carry out those purposes it shall adopt rules relating to the operations of a division of public defender services and shall provide any facilities other than those provided in the courts by the judicial department necessary for the carrying out of those services. Public defender services shall consist of those duties carried out by superior court and court of common pleas public defenders prior to July 1, 1978, and those responsibilities provided for by this chapter. Public defender services shall be executed by a chief public defender, a deputy chief public defender, public defenders, assistant public defenders, deputy assistant public defenders, investigators and other personnel which the commission deems necessary.

(h) The judicial department shall provide adequate facilities for public defenders, assistant public defenders and deputy assistant public defenders in the various courts.

(i) The commission shall establish a compensation plan comparable to that established for the division of criminal justice in chapter 886, as it may be amended, and shall make rules relative to employees serving under the chapter, including sick leave and vacation time.

(j) The commission shall be an autonomous body within the judicial department for fiscal and budgetary purposes only.

Defendants-the Governor, the Public Defender Services Commission, and the members of the commission, sued in their official capacities-have moved pursuant to Practice Book Sections 142 *et seq.* to dismiss the complaint in a Motion to Dismiss dated April 13, 1995 in which it is claimed that the Court lacks subject matter jurisdiction over this case. Plaintiffs oppose the motion.

The parties have filed numerous supplemental and supporting memoranda and affidavits in connection with the motion to dismiss addressing the issues raised in light of past precedents as well as recent reported decisions in Connecticut and elsewhere. Extensive oral argument was held on the Motion to Dismiss on August 5, 1996. Following argument, the Court ordered the parties to file additional supplemental briefs, addressing certain legal issues which required further analysis. These additional memoranda have been received and reviewed.[FN2] For the reasons stated below, the motion to dismiss is denied.

FN2. The issues raised in the motion to dismiss have been thoroughly and excellently briefed and argued by both sides.

Legal Discussion

The defendants make two fundamental arguments in support of their motion to dismiss, raising important and legitimate concerns.

First, they argue that the case should be dismissed due to the doctrine of sovereign immunity, which prohibits certain legal claims against the state from being pursued.

Second, they argue that the case should be dismissed because it is not justiciable. In substance, defendants' nonjusticiability argument contains three separate prongs. First, defendants argue that the named defendants can afford the plaintiffs no relief. Second, defendants argue that the separation of powers doctrine prevents the court from ordering the relief requested. Third, defendants argue that none of the plaintiffs' claims are ripe for review in the absence of alleging and proving "injury-in-fact" or "actual harm." These arguments will now be discussed.

A. Sovereign Immunity

Defendants correctly cite numerous cases for the undisputed proposition that the state generally cannot be sued without its consent. *Barde v. Board of Trustees,* 207 Conn. 59, 64 (1988). They also concede that certain exceptions to the doctrine of sovereign immunity have evolved over the years, including cases

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 1996 WL 636475 (Conn.Super.), 18 Conn. L. Rptr. 117
**(Cite as: 1996 WL 636475 (Conn.Super.))**

involving claims for declaratory or injunctive relief based on an allegation that a state official has acted in an unconstitutional manner. *Sentner v. Board of Trustees,* 184 Conn. 339, 343 (1981) ("In a constitutional democracy sovereign immunity must relax its bar when suits against the government complain of unconstitutional acts"). Because of the manner in which the complaint has been pleaded, defendants argue, this case does not fall within any exception to the general rule barring actions against the state. Defendants rely upon a lengthy discussion of, and attempted refutation of, some of the statistics relied upon in the complaint in support of their argument,[FN3] which plaintiffs have in turn attempted to refute. The Court does not find defendants' argument persuasive.

> FN3. In their memoranda in support of the motion to dismiss, the defendants have on occasion tended to blur the distinction between adequately *pleading* certain allegations, and *proving* them at trial. At this early stage of the case, of course, for purposes of ruling on the Motion to Dismiss, the Court must assume that the allegations as pleaded are true and does not inquire into the merits of the case. *Lamposna v. Jacobs,* 209 Conn. 724, 728 (1989). Whether plaintiffs are able to prove any or all of the allegations set out in the complaint must, of course, await trial, should this case proceed to trial.

\*2 An enlightening discussion of the genesis of the doctrine of "sovereign immunity" is made by Justice Cotter in *Textron, Inc. v. Wood,* 167 Conn. 334, 340 (1974), in which he states: Rooted in the ancient common law, the doctrine of sovereign immunity from suit was originally premised on the monarchical, semi-religious tenet that "the King can do no wrong." Borchard, "Government Liability in Tort," 34 Yale L.J. 1, 2. In modern times, it is more often explained as a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities.

Where a substantial claim is put forth that parties acting pursuant to state authority are acting unconstitutionally, sovereign immunity does not require dismissal. *Antinerella v. Rioux,* 229 Conn. 479, 487-88

(1994); *Does v. Heintz,* 204 Conn. 17, 31 (1987); *Duguay v. Hopkins,* 191 Conn. 222, (1983). The complaint in this case alleges in part that the named defendants are acting unconstitutionally, pursuant to both state and federal law, in numerous respects. This court must consider the pleadings "broadly and realistically" in ruling on the pending motion to dismiss, *Beaudoin v. Town Oil Co.,* 207 Conn. 575, 588 (1988). As noted in *Horton v. Meskill,* 172 Conn. at 624-25, quoting Block, "Suits against Government Officers and the Sovereign Immunity Doctrine," 59 Harv.L.Rev., 1060, 1080:

In those cases in which it is alleged that the defendant officer is proceeding under an unconstitutional statute or in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine. Moreover, the government cannot justifiably claim interference with its functions when the acts complained of are unconstitutional or unauthorized by statute.

In rejecting a claim of sovereign immunity, the court in *Horton v. Meskill* noted the many occasions when it had considered the merits of appeals from judgments in actions in which state officials had been parties. *Id.* at 625-26. The court further noted that while the doctrine of sovereign immunity is deeply rooted in our common law, "it has, nevertheless, been modified and adapted to the American concept of constitutional government where the source of governmental power and authority is not vested by divine right in a ruler but rests in the people themselves who have adopted constitutions creating governments with defined and limited powers and courts to interpret these basic laws." *Id.* at 623. The court decided that a holding to the contrary "would foreclose proper judicial determination of a significant and substantial constitutional question the determination of which is manifestly in the public interest." *Id.* at 628. Mindful "of the proper limits on judicial intervention," see *Horton v. Meskill* at 627, I conclude that the principles set out in that seminal case and other cases cited by plaintiffs militate against dismissing this case on grounds of sovereign immunity in light of the significant constitutional questions raised in the complaint, the determination of which is manifestly in the public interest.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 1996 WL 636475 (Conn.Super.), 18 Conn. L. Rptr. 117
**(Cite as: 1996 WL 636475 (Conn.Super.))**

B. Justiciability

*3 Defendants put forth a number of claims in support of their argument that this case is nonjusticiable.

As defendants point out, "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute ...; (2) that the interests of the parties be adverse ...; (3) that the matter in controversy be capable of being adjudicated by judicial power ...; and (4) that the determination of the controversy will result in practical relief to the complainant." *Pellegrio v. O'Neill,* 193 Conn. 670, 674 (1984), quoting *State v. Nardini,* 187 Conn. 109, 111-12 (1982). Defendants note that courts apply the principles of nonjusticiability on a "case-by-case inquiry." *Baker v. Carr,* 369 U.S. 186, 210-11 (1962); *Nielsen v. Kezer,* 232 Conn. 65, 75 (1995).

Defendants' claims of nonjusticiability will now be discussed.

1. Claimed Inability of Named Defendants to Afford Plaintiffs Relief.

Defendants claim that neither the Governor nor the Public Defender Services Commission can afford the plaintiffs the relief they seek. The Court disagrees.[FN4]

> FN4. In the prayer for relief in the January 5, 1995 class action complaint, plaintiffs state their demand for relief as follows:
>
> WHEREFORE, plaintiffs respectively request this Court to grant the following relief:
>
> 1. Assume jurisdiction over this action;
>
> 2. Issue a preliminary and permanent injunction requiring defendants to provide a statewide indigent defense system which will protect plaintiff's rights under the Sixth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Section 1983, Article First, Sections 1, 8, 10, 12 and 20 of the Connecticut Constitution, and C.G.S. Section 51-289 et seq., and include but not be limited to:

a. placing uniform and appropriate caseload/workload limitations for the appointment of counsel in all cases and directing defendants to increase the number of public defenders to meet caseload/workload standards;

b. promulgating and adopting appropriate uniform standards governing the representation of indigents;

c. providing an adequate rate of payment for special public defenders consistent with a constitutionally adequate quality of representation;

d. providing adequate investigative, expert, and support services to public defenders and special public defenders to meet their constitutional and statutory obligations;

e. providing adequate conditions in public defender offices, client interview areas, waiting rooms, libraries, and courtroom holding areas.

3. Award to plaintiffs costs and attorneys fees under 42 U.S.C. Section 1988.

4. Grant such other and further relief as this Court deems necessary or proper.

As noted, the complaint requests, *inter alia,* the issuance of preliminary and permanent injunctions requiring defendants to provide a statewide public defender system which will guarantee minimal protection of the constitutional rights of accused indigents.

Taken collectively, the named defendants-sued in their official capacities-are among those principally responsible for supervising the functions of government being challenged in the complaint. The Governor is constitutionally obligated to "take care that the laws be faithfully executed," Connecticut Constitution, Article Fourth, Section 12, and is also authorized by statute to "investigate into, and take proper action concerning, any matter involving the enforcement of the laws of the state and the protec-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 1996 WL 636475 (Conn.Super.), 18 Conn. L. Rptr. 117
**(Cite as: 1996 WL 636475 (Conn.Super.))**

tion of its citizens." Connecticut General Statutes, Section 3-1. As a practical matter, litigation of this kind, in Connecticut and other states, as well as in a federal forum, frequently involves named defendants who are public officials at the local, state or federal level. See, e.g., *Sheff v. O'Neill,* 238 Conn. 1 (1996); *New York State Ass'n for Retarded Children v. Carey,* 631 F.2d 162 (2d Cir.1980). *Foe v. Cuomo,* 700 F.Supp. 107 (E.D.N.Y.1988); and *Marisol A. v. Giuliani,* 929 F.Supp. 660 (S.D.N.Y.1996). As plaintiffs point out, legislators are generally immune from civil lawsuits seeking injunctive relief. In litigation seeking systemic and institutional reform, public officials are often the only appropriate defendants given their significant positions of public trust and responsibility.

The Public Defender Services Commission is also charged, by statute, with significant responsibility for overseeing the public defender system. See General Statutes Section 51-289, referenced in the endnotes, including but not limited to Section 51-289(g), which states that the commission "shall appoint ... as many assistant public defenders and deputy assistant public defenders for the superior court as the criminal or delinquency business of the court may require." See also General Statutes Section 51-293, which states that the commission "shall appoint ... as many assistant public defenders and deputy assistant public defenders for the superior court as the criminal or delinquency business of the court may require."

**\*4** The fact that a court-ordered remedy could eventually require the expenditure of funds does not render the case nonjusticiable. *Gaines v. Manson,* 194 Conn. 510, 529 n. 18 (1984); *Pellegrino v. O'Neill,* 193 Conn. 670, 675-76 (1984); *Tondro v. Ward,* 565 F.2d 48, 54 n. 8 (2d Cir.1977). If that were the case, then, as a practical matter, lawsuits such as the instant one raising important systemic concerns of constitutional magnitude could seldom if ever be brought.

2. The Claim that the Separation of Powers Prevents the Court from Ordering the Injunctive Relief Requested.

Defendants also claim that pursuant to the separation of powers doctrine, the court is prevented from ordering the relief requested.[FN5] The defendants' position is essentially that this case is nonjusticiable be-

cause it presents political questions the resolution of which will place the courts in conflict with co-equal branches. This is because, defendants argue, any meaningful remedy will require an order requiring the expenditure of more money on the public defender system. This properly lies within the province of the other branches of government, not the judiciary, contend the defendants. In support of this argument, the state relies on numerous cases, including *Baker v. Carr, Pellegrino v. O'Neill, Nielsen v. Kezer* and other authorities. This argument is unpersuasive and calls for an unduly expansive application of the separation of powers doctrine in light of controlling precedents.

> FN5. Article Second of the Connecticut Constitution provides in relevant part:
>
> The powers of government shall be divided into three distinct departments, and each of them confined to a separate magistracy-to wit-those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

It is of course essential to the functioning of our government that each coordinate branch have the utmost respect for the prerogatives of the others and not unduly encroach on these prerogatives. But the caselaw makes it clear that the separation of powers doctrine does not require judicial forbearance unless what is at issue is clearly delegated to a coordinate branch, as was the case, for example, in *Pellegrino.*

In *Nielsen v. Kezer,* Justice Palmer provided a cogent discussion of the question of when a court should appropriately decline jurisdiction because a case raises political questions the resolution of which is beyond the court's authority in light of important and sensitive separation of powers concerns. Citing *Baker v. Carr,* he noted that a case-by-case analysis was required, and that "Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment to a coordinate political department," among other things. *Nielsen v. Kezer,* 232 Conn. at 75. In the recent case of *Sheff v. O'Neill,* 238 Conn. 1 (1996), in response to the State's claim that the issues in the case were nonjusticiable, Chief Justice Peters observed that: "In the absence of a textual reservation,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 1996 WL 636475 (Conn.Super.), 18 Conn. L. Rptr. 117
**(Cite as: 1996 WL 636475 (Conn.Super.))**

however, it is the role and the duty of the judiciary to determine whether the legislature has fulfilled its affirmative obligations within constitutional principles." In this case, notwithstanding defendants' claims, there is no "textually demonstrable commitment" of the disputed issues to a coordinate branch of government. Moreover, the important claims being made in this case, relating to the quality of representation being provided to indigent defendants in our state, make this a matter of peculiar concern to the judicial branch.

3. The Claim that the case Must be Dismissed Because The Complaint Fails to Adequately Allege "Injury-In-Fact" or "Actual Harm."

**\*5** Defendants argue that the complaint must be dismissed because plaintiffs have failed sufficiently to allege "injury-in-fact" or "actual harm," relying on numerous cases, including *Lewis v. Casey,* 64 U.S.L.W. 4587 (June 24, 1996), and *Washington v. Meachum,* 238 Conn. 692 (1996). This argument is unconvincing.

As plaintiffs note, because a party must have standing to invoke the subject matter jurisdiction of the court, it is appropriate for a court to evaluate whether a party has made a "colorable claim" of injury when a motion to dismiss pursuant to Practice Book Section 143 is made. *Sadloski v. Manchester,* 228 Conn. 79, 83-84 (1984). As our Supreme Court stated in *Maloney v. Pac,* 183 Conn. 313, 321 (1981):

Standing is not a technical rule intended to keep aggrieved parties out of court. Rather, it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented.

This limited inquiry into standing should not become an inquiry into the merits in the early stages of a case. The pleading requirements for injury necessary to establish standing sufficient to survive a motion to dismiss are not onerous. *Gay and Lesbian Law Students Assn. v. Board of Trustees,* 236 Conn. 453, 463-64 (1996); *Maloney v. Pac,* 183 Conn. at 321. "The requirements of justiciability and controversy are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity." *Gay and Lesbian Students Assn. v. Board of Trustees,* 236 Conn. 453, 463-64. See also *Lujan v. Defenders of Wildlife,* cited in *Lewis v. Casey.*

To establish standing in a case for injunctive relief, plaintiffs do not necessarily need to allege that they have already suffered harm as they would be required to do in other types of cases, but rather that they are at imminent risk of harm if the court does not grant the relief requested. *Luckey v. Harris,* 860 F.2d 1012, 1017 (11th Cir.1988), *cert denied,* 493 U.S. 957 (1990); *Riley v. Jeffes,* 777 F.2d 143, 147 (3d Cir.1985). In cases involving alleged deprivations of constitutional rights, such as the instant one, the element of injury may be established by alleging the deprivation of the right itself. *Windham Taxpayers Assn. v. Board of Selectmen,* 234 Conn. 513, 526 (1995); *Reitzer v. Board of Trustees,* 2 Conn.App. 196, 201 (1984).

Moreover, Rules 108 and 109 of the Practice Book do not require that every fact be specifically pleaded. Rather, the requirement is that each pleading "contain a plain and concise statement of the material facts on which the pleader relies" so as to "fairly ... apprise the adverse party of the state of the facts" which plaintiff intends to prove. As already noted, our Supreme Court has repeatedly cautioned that allegations of harm should be viewed "broadly and realistically," not through the narrow lens of archaic and abstract pleading rules. *Normand Josef Enterprises, Inc. v. Connecticut National Bank,* 230 Conn. 486, 496 (1994). The complaint must be read in its entirety in such a way as to "give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." *Dornfried v. October Twenty-Four, Inc.,* 230 Conn. 622, 629 (1994). As long as a complaint sufficiently alleges facts to state a cause of action and avoid surprise or unfairness, it will generally be considered sufficiently well-pled.

**\*6** In this case, considering the nature of the allegations in light of Connecticut's pleading requirements, I conclude that defendants' argument lacks merit. Specifically, Paragraphs 61 through 74 of the complaint read as follows:

F. HARMS TO PLAINTIFF CLASSES
  61. The effects of these extreme caseloads and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 1996 WL 636475 (Conn.Super.), 18 Conn. L. Rptr. 117
**(Cite as: 1996 WL 636475 (Conn.Super.))**

inadequate resources on the quality of legal representation are pervasive, and harm plaintiffs and members of their class at every stage of their criminal case. Public defenders are not able to spend adequate time interviewing their clients, counselling their clients, or even explaining the basic information to their clients about the upcoming court proceedings. Forced excessive caseloads and inadequate resources prevent public defenders from spending adequate time reviewing each client's file, conducting necessary legal research, conducting necessary fact investigation and witness preparation, pursuing motions for speedy trials, preparing for trial, filing certain pretrial motions and exploring pretrial alternatives to incarceration as well as sentencing options.

62. Indigent criminal defense services function without regard for, and in violation of accepted minimum standards for training, workload, and resources including those promulgated by the American Bar Association, the National Study Commission on Defense Services, the National Legal Aid and Defender Association, and the National Advisory Commission on Criminal Justice Standards and Goals.

63. Excessive caseloads and inadequate resources have caused high stress, low staff morale, and burnout. Because the numbers of attorneys are insufficient, there are no mechanisms for relief when staff is overburdened.

64. Excessive caseloads have also caused mistrust among plaintiffs and members of their class regarding the adequacy of their public defenders. In part, because weeks or months go by without contact from their attorneys, many indigent criminal defendants develop an understandable lack of confidence in the public defender's office.

65. According to the 1993 Annual Report of the Chief Public Defender, "the increasing difficulty public defenders are having in keeping up with the constantly excessive and serous caseloads," has caused a "slowdown in the public defender's ability to resolve cases expeditiously leading to increased court delays and exacerbating the prison overcrowding problem by prolonging the pretrial incarceration of accused persons who cannot make bail." (p. 7)

66. Overwhelming caseloads substantially contribute to the fact that virtually all cases "plead out."

In the G.A.'s there were only 0.1% or 64 out of 55, 767 of all cases disposed in FY 1992-93 in which a jury trial was initiated. For a similar period in the J.D. offices, in only 89 of 1,894 or 4.5% of all cases disposed was a jury trial initiated. In 1993-94, 0.1% or 59 out of 50,483 cases in the G.A. courts and 3.9% or 76 out of 1,903 cases in the J.D. courts began in jury trial.

*7 67. Indigent criminal defendants in the state court system are not afforded criminal process and representation substantially similar to that afforded criminal defendants of means.

For the above reasons, I conclude that the complaint sufficiently alleges "injury-in-fact" or "actual harm" for purposes of withstanding the pending motion to dismiss. Whether these allegations will be proven at trial is a question for another day.

Summary and Conclusion
The defendants have raised important concerns in their motion to dismiss. However, given controlling precedents and the issues raised in the complaint, I have concluded that this case ought not to be dismissed at this early stage. Without in any way reaching the merits of plaintiffs' claims, for the reasons stated above, defendants' motion to dismiss is denied.

Conn.Super.,1996.
Rivera v. Rowland
Not Reported in A.2d, 1996 WL 636475 (Conn.Super.), 18 Conn. L. Rptr. 117

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Appendix B*

*Appendix B*



COPY

Jul 24   5 06 PM '02

**TAMMY TOBIAS**

FILED
BY _____
DEPUTY

RECEIVED

JUL 25 2002

GOUGH SHANAHAN
JOHNSON & WATERMAN

1
2
3
4
5
6
7
8          MONTANA FIRST JUDICIAL DISTRICT COURT

9             COUNTY OF LEWIS AND CLARK

10   * * * * * * * * * * * * * * * * *)
                                     )
11   LARRY WHITE, CANDACE BERGMAN,   )     **Cause No. CDV-2002-133**
     DAVID CHASE, MICHAEL SHIELDS,   )
12   KENNETH SELLARS, CAROL HOMEGUN, )
     MICKEY McDONOUGH, KENNETH INGRAHAM,)
13   WINCHESTER WISEMAN, MICHELLE FORD, )
     ROBERT ARMSTRONG, GARY ACKERMANN, )
14   DANIEL FINLEY, CHRIS KOWITZ, and )   **MEMORANDUM AND ORDER**
     JUSTIN CLONINGER,               )   **ON MOTIONS TO DISMISS**
15                                   )
                  Plaintiffs,        )
16                                   )
          vs.                        )
17                                   )
     GOVERNOR JUDY MARTZ;            )
18                                   )
     SUPREME COURT ADMINISTRATOR     )
19   RICK LEWIS;                     )
                                     )
20   APPELLATE DEFENDER COMMISSIONERS )
     TODD HILLIER, DOROTHY McCARTER, )
21   BEVERLY KOLAR, MICHAEL SHERWOOD, )
     and RANDI HOOD;                 )
22                                   )
     the BOARDS OF COMMISSIONERS OF  )
23   MISSOULA, GLACIER, TETON, FLATHEAD,)
     LAKE, and RAVALLI COUNTIES;     )
24                                   )
     BUTTE-SILVER BOW COUNTY CHIEF   )
25   EXECUTIVE JUDY JACOBSON;        )

```
 1  MISSOULA COUNTY COMMISSIONERS      )
    BARBARA EVANS, BILL CAREY, and     )
 2  JEAN CURTISS;                      )
                                       )
 3  GLACIER COUNTY COMMISSIONERS       )
    ALLAN LOWRY, WILLIAM ICENOGGLE,    )
 4  and RAYMOND SALOIS;                )
                                       )
 5  TETON COUNTY COMMSSIONERS          )
    R. F. SAM CARLSON, MARY SEXTON,    )
 6  and ARNIE GETTEL;                  )
                                       )
 7  DISTRICT COURT JUDGE MARC BUYSKE;  )
                                       )
 8  FLATHEAD COUNTY COMMISSIONERS      )
    DALE WILLIAMS, HOWARD GIPE,        )
 9  and ROBERT WATNE;                  )
                                       )
10  LAKE COUNTY COMMISSIONERS          )
    MIKE HUTCHIN, BARRY BAKER,         )
11  and DAVE STIPE; and                )
                                       )
12  RAVALLI COUNTY COMMISSIONERS       )
    JACK ATTHOWE, ALAN THOMPSON,       )
13  and BETTY LUND;                    )
                                       )
14                  Defendants.        )
                                       )
15  * * * * * * * * * * * * * * * * * *)
```

16        Before the Court are Defendants' motions to dismiss.

17  The  motions  were  heard  May  24,  2002,  and  are  ready  for

18  decision.

19                            **BACKGROUND**

20        The   Plaintiff   class   is   comprised   of   indigent

21  Defendants involved in current criminal proceedings in various

22  counties of the state of Montana.  The Defendants are state and

23  county  agencies  or  public  officials  charged  with  the

24  responsibility  of  funding  and  overseeing  indigent  defense

25  programs within the seven counties named in the complaint.

1      Plaintiffs allege that Defendants are violating or
2  imminently will violate their rights guaranteed by the United
3  States Constitution, Sixth and Fourteenth Amendments, 42 U.S.C.
4  § 1983 (Count I); the Montana Constitution, Article II,
5  Sections 4, 17 and 24 (Count II); and the following Montana
6  statutes: Section 46-8-101 (Count II), Section 46-8-201 (Count
7  III), Section 46-8-202 (Count IV), and Section 2-15-1020 (Count
8  V), MCA. Specifically, Plaintiffs contend that Defendants'
9  failure to design, administer, fund, and supervise indigent
10  defense programs with sufficient resources is depriving or will
11  deprive them of their rights to effective assistance of
12  counsel, due process, equal protection and individual dignity.
13  The amended complaint alleges, among other things, instances of
14  unnecessary pre-trial incarceration; inadequate client/attorney
15  contact; insufficient investigations, discovery and trial
16  preparation; uncorrected conflicts of interests; and excessive
17  attorney workloads.

18      The State has moved to dismiss Counts I, II and III,
19  and the seven defendant counties joined in the motion.
20  Missoula County, the only Defendant county with a public
21  defenders' office as provided by Section 46-8-202, MCA, has
22  filed a separate motion to dismiss Count IV. Count V is
23  specific to the Appellate Defender Commission and is not
24  subject to the pending motions.

25      As remedies for the alleged violations, Plaintiffs

<u>MEMORANDUM AND ORDER</u> -- Page 3

1   seek  declaratory  judgment,  preliminary  and  permanent

2   injunctions, and an award for attorney fees and costs.

### STANDARD

4       In  reviewing  a  motion  to  dismiss  pursuant  to  Rule

5   12(b)(6), M.R.Civ.P., courts must consider the complaint in the

6   light  most  favorable  to  the  plaintiff  and  accept  the

7   allegations  in  the  complaint  as  true.  **Goodman Realty, Inc. v.**

8   **Monson**,  267  Mont.  228,  231,  883  P.2d  121,  123  (1994).  A

9   complaint  should  not  be  dismissed  under  Rule  12(b)(6),

10  M.R.Civ.P., unless it appears that the plaintiff can prove no

11  set of facts in support of his claim that would entitle him to

12  relief.  **Wheeler v. Moe**, 163 Mont. 154, 161, 515 P.2d 679, 683

13  (1973).  In other words, dismissal is justified only when the

14  allegations  of  the  complaint  itself  clearly  demonstrate  that

15  plaintiff does not have a claim.  **Id.** at 161, 515 P.2d at 683.

16  *See also* **Buttrell v. McBride Land & Livestock Co.**, 170 Mont.

17  296, 298, 553 P.2d 407, 408 (1976).  For these reasons, a trial

18  court rarely grants a motion to dismiss for failure to state a

19  claim upon which relief can be granted.

### DISCUSSION

21                                I.

### Sixth Amendment

23       The  Defendants'  primary  contention  relates  to

24  Plaintiffs' alleged lack of actual injury.  Defendants contend

25  that Plaintiffs must allege an actual injury to seek relief

MEMORANDUM AND ORDER -- Page 4

1  under 42 U.S.C. § 1983, citing **Lewis v. Casey**, 518 U.S. 343,

2  349, 116 S. Ct. 2174 (1996).   Defendants argue that in cases

3  involving Sixth Amendment ineffective-assistance-of-counsel

4  claims, an actual injury is demonstrated by an unfair trial.

5  Defendants assert that because the Plaintiff class is composed

6  of pre-trial defendants, it is impossible to prove actual

7  injury since the Plaintiffs' trials have yet to occur.

8  Plaintiffs argue that the actual injury requirement of **Lewis** is

9  inapplicable at the motion to dismiss phase because it was an

10  evidentiary burden placed upon the plaintiffs in that case

11  during a three-month bench trial.

12      The issue in **Lewis** was not the same as the issues

13  raised here.   **Lewis** did not involve the Sixth Amendment claims

14  of pre-trial defendants.   Rather, it involved a claim by prison

15  inmates that Arizona prison officials were violating the United

16  States Supreme Court holding in **Bounds v. Smith**, 430 U.S. 817

17  (1977), that "'the fundamental constitutional right of access

18  to the courts requires prison authorities to assist inmates in

19  the preparation and filing of meaningful legal papers by

20  providing prisoners with adequate law libraries or adequate

21  assistance from persons trained in the law.'" **Lewis** at 346.

22      The Second Circuit Court of Appeals has held that

23  **Lewis** does not apply to the Sixth Amendment claims of pre-trial

24  detainees.   **Benjamin v. Fraser**, 264 F.3d 175, 185 (2nd Cir.

25  2001).   The court stated:   "[W]here the right at issue is

<u>MEMORANDUM AND ORDER</u> -- Page 5

1   provided directly by the Constitution or federal law, a

2   prisoner has standing to assert that right even if the denial

3   of that right has not produced an 'actual injury'." **Id.**

4      The court also stated:

5     The access claims at issue in Lewis concerned the
      ability of convicted prisoners "to attack their

6     sentences, directly or collaterally, and . . . to
      challenge the conditions of their confinement."

7     [**Lewis**], 518 U.S. at 355. By contrast, here we are
      concerned with the Sixth Amendment right of a

8     pretrial detainee, in a case brought against him by
      the state, to utilize counsel in his defense. It

9     is not clear to us what "actual injury" would even
      mean as applied to a pretrial detainee's right to

10    counsel.

11  **Benjamin** at 186.

12     For these reasons, the Court concludes that

13  Plaintiffs' alleged lack of an actual injury is not fatal to

14  their cause of action.

15     Next, Defendants rely on **Riley v. Jeffes**, 777 F.2d

16  143, 148 (3rd Cir. 1985), for their contention that Plaintiffs'

17  cause of action is barred by the availability of direct appeal

18  or post-conviction relief. However, this is an overly broad

19  analysis of the court's holding and is not persuasive because

20  the court, relying on **Parratt v. Taylor**, 451 U.S. 527, 543, 101

21  S. Ct. 1908 (1981), *overruled by* **Daniels v. Williams**, 474 U.S.

22  327, 106 S. Ct. 662 (1986), only addressed a cause of action

23  for money damages by an inmate against prison officials for

24  deprivation of property.

25     Defendants also argue that Plaintiffs cannot satisfy

Plfs' Cross-Motion for Preliminary Injuction - 70
C11-01100 RSL

1  the test for determining when counsel has rendered ineffective

2  assistance established by **Strickland v. Washington**, 466 U.S.

3  668, 104 S. Ct. 2052 (1984). This test requires a showing:

4      (1) [T]hat the performance of his counsel was
       deficient, i.e., that he "made errors so serious that
5      counsel was not functioning as the 'counsel'
       guaranteed the defendant by the Sixth Amendment" and;
6   -  (2) that the deficient performance by his counsel
       prejudiced his defense, i.e., "that counsel's errors
7      were so serious as to deprive the defendant of a fair
       trial, a trial whose result is reliable."
8

9  **Luckey v. Harris**, 860 F.2d 1012, 1017 (11th Cir. 1988), *vacated*

10 *on abstention grounds*, 976 F.2d 673, citing **Strickland** at 687.

11         With regard to applying the **Strickland** test

12 prospectively, the court in **Luckey** held:

13         This standard is inappropriate for a
       civil suit seeking prospective relief. The sixth
14     amendment protects rights that do not affect the
       outcome of a trial. Thus, deficiencies that do
15     not meet the "ineffectiveness" standard may nonethe-
       less violate a defendant's rights under the sixth
16     amendment. In the post-trial context, such errors
       may be deemed harmless because they did not affect
17     the outcome of the trial. Whether an accused has
       been prejudiced by the denial of a right is an issue
18     that relates to relief-whether the defendant is
       entitled to have his or her conviction overturned--
19     rather than to the question of whether such a right
       exists and can be protected prospectively.
20

21 **Luckey** at 1017 (citations omitted). The court concluded:

22         In a suit for prospective relief the
       plaintiff's burden is to show "the likelihood of
23     substantial and immediate irreparable injury, and
       the inadequacy of remedies at law." This is the
24     standard to which appellants, as a class, should have
       been held.
25

**Id.** at 1017-18 (citations omitted).

1      Defendants dispute the application of **Luckey** to
2  Montana law. They contend that this Court is bound by the
3  standard set forth in **Strickland** because the Montana Supreme
4  Court has adopted it for all ineffective-assistance-of-counsel
5  claims, regardless of when the claim arose during the
6  proceedings. *See e.g.*, **Hans v. State**, 283 Mont. 379, 391, 942
7  P.2d 674, 681 (1997) (post-conviction petition); **State v. Berg**,
8  1999 MT 282, ¶ 28, 296 Mont. 546, ¶ 28, 991 P.2d 428, ¶ 28
9  (direct appeal); **State v. Lawrence**, 2001 MT 299, ¶ 12, 307
10  Mont. 487, ¶ 12, 38 P.3d 809, ¶ 12 (challenge to guilty plea
11  based on ineffective assistance). However, there is no Montana
12  Supreme Court case addressing the appropriate standard in a
13  civil action brought by pre-trial defendants seeking
14  prospective relief for alleged systemic deficiencies in
15  indigent defense programs. The Court also notes that the right
16  to counsel afforded by Article II, Section 24, of the Montana
17  Constitution is broader than the rights afforded by the U.S.
18  Constitution. **State v. Spang**, 2002 MT 120, ¶ 22, 310 Mont. 52,
19  ¶ 22, _____ P.3d _____, ¶ 22.

20      The Court concludes that the reasoning in **Luckey** is
21  sound and that the **Strickland** standard does not preclude claims
22  of pretrial Defendants seeking prospective relief.

23                          II.

24              **Due Process/Equal Protection**

25      Defendants contend that the Sixth Amendment provides

1  sufficient protection and thus the Court should not entertain

2  any claims based on substantive due process.  Defendants reason

3  that the treacherous nature of analyzing substantive due

4  process claims has led courts to restrict such claims to

5  "liberties deeply rooted in this Nation's history and

6  tradition." **Armedariz v. Penman**, 75 F.3d 1311, 1319 (9th Cir.

7  1996).  Regarding procedural due process, Defendants assert

8  that Plaintiffs have been given notice of the charges against

9  them and an opportunity for a hearing, which is all that is

10 required.

11      Plaintiffs respond with a fundamental fairness

12 argument.  Relying on **In re Mental Health of K.G.F.,** 2001 MT

13 140, ¶ 91, 306 Mont. 1, ¶ 91, 29 P.3d 485, ¶ 91.  Plaintiffs

14 assert that due process and fundamental fairness require

15 appointment of competent counsel, a thorough initial investi-

16 gation, an early and detailed interview and consultation,

17 assistance of counsel in any examination, and vigorous

18 adversarial advocacy.

19      If Plaintiffs' allegations are proven, Plaintiffs'

20 due process rights may have been violated because "[a]n

21 indigent criminal defendant has a fundamental right to

22 effective assistance of counsel guaranteed by the Sixth

23 Amendment, the due process clause of the Fourteenth Amendment,

24 and the Montana Constitution." **Wilson v. State**, 1999 MT 271,

25 ¶ 12, 296 Mont. 465, ¶ 12, 989 P.2d 813, ¶ 12 (*overruled on*

MEMORANDUM AND ORDER – Page 9

1    *other grounds by* **State v. Gallagher**, 2001 MT 39, ¶ 19, 304

2    Mont. 215, 19 P.3rd 817).

3            Therefore, Defendants' motion to dismiss the claims

4    based on due process should be denied.

5            Regarding equal protection, the Montana Supreme Court

6    has held:

7            There is lacking that equality demanded by the
             Fourteenth Amendment where the rich man, who appeals
8            as of right, enjoys the benefit of counsel's
             examination into the record, research of the law,
9            and marshalling of arguments on his behalf, while
             the indigent, already burdened by a preliminary
10           determination that his case is without merit, is
             forced to shift for himself.

11

12   **State v. Swan**, 199 Mont. 459, 467, 649 P.2d 1297, 1301 (1982)

13   (quoting **Gideon v. Wainwright**, 372 U.S. 335, 357, 83 S. Ct.

14   792, 816 (1963)).  Thus, if Plaintiffs are being deprived of

15   effective assistance of counsel, their right to equal

16   protection may be violated as well as their Sixth Amendment

17   right to counsel.  Therefore, the motion to dismiss Plaintiffs'

18   equal protection claim should be denied.

                                    III.

19                          **Statutory Claims**

20           Defendants contend that Plaintiffs have not stated a

21   claim for which relief can be granted under Section 46-8-101,

22   MCA.  That statute provides indigent defendants charged with

23   felonies the right to assignment of counsel by the court.

24   Defendants assert that the complaint does not allege that any

25   court failed to inform the Plaintiffs of their right to counsel

1  at the initial appearance nor that any court failed to assign

2  counsel to the Plaintiffs.

3        Plaintiffs respond by asserting that the required

4  assignment of counsel necessarily entails the assignment of

5  reasonably effective counsel.   Plaintiffs argue that being

6  provided with ineffective counsel is akin to being provided

7  with no counsel at all, and, therefore, the statute has not

8  been satisfied.

9        Plaintiffs' argument is persuasive and their claim

10  based on Section 46-8-101, MCA, should not be dismissed.

11                          **IV.**

12                       **Standing**

13        Defendants contend that Plaintiffs lack standing to

14  assert a claim under Section 46-8-201, MCA, which provides for

15  reasonable compensation and reimbursement to indigent defense

16  counsel.   They argue that such a claim belongs to Plaintiffs'

17  defense attorneys and that the statute does not provide for

18  third-party standing.

19        Plaintiffs argue that the statute's purpose is to

20  provide for the defense of Plaintiffs' cases and that they

21  have a direct interest in their attorneys' compensation.   As

22  authority, Plaintiffs cite to **State v. Hardaway**, 1998 MT 224,

23  ¶38, 290 Mont. 516, 966 P.2d 125, where the court allowed an

24  indigent defendant to claim his counsel's right of reimburse-

25  ment for witness fees provided under Section 46-15-116, MCA.


MEMORANDUM AND ORDER -- Page 11

1  In addition, the Plaintiffs rely on the reasoning of the Iowa

2  Supreme Court:

3      [T]he issues of a defendant's right to effective
       representation and an attorney's right to fair
4      compensation in cases such as these are "inextricably
       linked."  Therefore the circumstances particular to
5      court-appointed representation warrant this review.
       To deny standing in cases such as these would put a
6      lawyer in the unfavorable position of having to admit
       that inadequate representation was provided, thus
7      raising the specter of malpractice and bar sanctions.

8  **Lewis v. Iowa Dist. Court**, 555 N.W.2d 216, 219 (Iowa 1996)

9  (citation omitted).

10      The Montana Supreme Court has stated:  "Court

11 appointed counsel should neither be unjustly enriched nor

12 unduly impoverished, but *must* be awarded an amount which will

13 allow the financial survival of his practice.  A county *shall*

14 pay a reasonable amount for all professional services which are

15 not donated."  **State v. Allies**, 182 Mont. 323, 325, 597 P.2d

16 64, 65 (1979) (emphasis in original) (citing **State v.**

17 **Lehrirondele**, 15 Wash. App. 502, 550 P.2d 33 (1976).  *See also*

18 **State v. Boyken**, 196 Mont. 122, 637 P.2d 1193 (1981).

19      The Supreme Court of Florida has stated, "[W]e must

20 not lose sight of the fact that it is the defendant's right to

21 effective representation rather than the attorney's right to

22 fair compensation which is our focus.  We find the two

23 inextricably interlinked."  **Makemson v. Martin County**, 491

24 So.2d 1109, 1112 (Fla. 1986).

25      Based on the foregoing, the Court finds that

MEMORANDUM AND ORDER -- Page 12

1  Plaintiffs have "'such a personal stake in the outcome of the

2  controversy as to assure that concrete adverseness which

3  sharpens the presentation of issues'". **Olson v. Dep't of**

4  **Revenue**, 223 Mont. 464, 469, 726 P.2d 1162, 1166 (1986)

5  (quoting **Baker v. Carr**, 369 U.S. 186, 204, 82 S. Ct. 691, 703,

6  7 L. Ed. 2d 663, 678 (1962)). The Court concludes that

7  Plaintiffs' complaint satisfies this requirement and,

8  therefore, Plaintiffs have standing to assert violations of

9  Sections 46-8-201 and -202, MCA.

10                                    V.

11                 **Missoula County's Motion to Dismiss**

12         The above analysis is equally applicable to Count IV

13  of the complaint regarding the Missoula County public

14  defenders' office. As a result, the motion should be denied.

15         **NOW, THEREFORE IT IS ORDERED:**

16         1.   Defendants' motions to dismiss **ARE DENIED.**

17         2.   Defendants **SHALL HAVE** 20 days within which to

18  file their answers.

19         3.   A scheduling conference **WILL BE HELD** on Friday,

20  the 30th day of August, 2002, at 1:30 p.m.

21         DATED this ___24^th___ day of July, 2002.

22

23

24                                    Thomas C. Honzel
                                      District Court Judge

25

MEMORANDUM AND ORDER -- Page 13

1    pc:   Ronald F. Waterman
           Mike McGrath/Brian M. Morris
2          Molly Maffei
           Fred Van Valkenburg/Mike Sehestedt
3          Larry D. Epstein
           Joe Coble
4          Thomas J. Esch/Jonathan B. Smith
           Robert J. Long
5          George H. Corn

6    White#1-m&o

7    k

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MEMORANDUM AND ORDER -- Page 14

*Appendix C*

*Appendix C*

OCT 14 2005

JOYCE L. JULSRUD, CLERK
KITTITAS COUNTY, WASHINGTON

## SUPERIOR COURT OF WASHINGTON FOR KITTITAS COUNTY

|  |  |
|---|---|
| JEFFREY BEST, DANIEL CAMPOS and GARY DALE HUTT, on behalf of themselves and all others similarly situated and GREGG HANSEN, | ) ) ) ) ) |
| Plaintiffs, | ) ) No. 04 2 00189 0 |
| vs. | ) **MEMORANDUM DECISION** ) |
| GRANT COUNTY, a Washington County, | ) ) |
| Defendant. | ) ) |

### INTRODUCTION

On September 30, 2005 the parties argued cross-motions for summary judgment, more fully described herebelow. The court thereafter took the matter under advisement to consider the arguments of the parties and review the supporting materials.

### DISCUSSION

1.    Background. On August 26, 2004 by memorandum decision this court granted the plaintiffs' motion to certify this litigation as a class action against Grant County in the quest to seek injunctive and declaratory relief to protect the constitutional right of effective assistance of counsel of all present and future indigent criminal defendants in Grant County. On September 13, 2004 the court signed the order granting for class certification. Since that time the parties

MEMORANDUM DECISION - 1

have been engaged in very extensive and contentious discovery requiring several court hearings and producing probably the largest, most voluminous[1] court file in the history of the Kittitas County Superior Court.

The plaintiffs seek partial summary judgments regarding the Grant County public defender system status, both before the filing date of this lawsuit of April 4, 2004 and with regard to the system since the date of filing. They contend there is no issue of material fact and that they are entitled as a matter of law to a declaration by this court that the Grant County public defender system, both before and after the filing of this lawsuit resulted in the rendering of ineffective assistance of counsel for indigent defendants. The defendants counter the plaintiffs' motions with their own motion for summary judgment of dismissal essentially contending the pre-filing facts surrounding the Grant County public defender system are irrelevant and that there is no evidence under the present new 2005 contract to show there has been a denial of effective assistance of counsel or that there is evidence to suggest a well-grounded fear of immediate harm under the 2005 contracts, thereby providing no basis to establish that Grant County's current public defender system is resulting or will result in actual or substantial injury to the plaintiffs' right to effective assistance of counsel.

2.     Law of Summary Judgment. The purpose of a summary judgment is to avoid a useless trial. However, a trial is required and summary judgment must be denied whenever there are genuine issues of material fact. CR 56(c); Jacobsen v. State, 89 Wn.2d 104 (1977). Material facts are those facts upon which the outcome of litigation depends, either in whole or in part. Harris v. Ski Park Farms, 120 Wn.2d 727, 729 (1993). In a summary judgment the burden is always on the moving party regardless of where the burden would lie in the trial of the matter. Peninsula Truck Lines, Inc. v. Tooker, 63 Wn.2d 724 (1961). In ruling on a motion for summary judgment the court must consider all of the evidence and all reasonable inferences from the evidence in favor of the non-moving party. CR 56(c); Ohler v. Tacoma General Hospital, 92 Wn.2d 507 (1979). Summary judgment should be granted only if there is no genuine issue of material fact or if reasonable minds can reach but one conclusion on that issue based on the evidence construed in a light most favorable to the non-moving party. White v. State, 131 Wn.2d 1, 9 (1997); Weatherbee v. Gustafson, 64 Wn.App. 128 (1992).

---

[1] Boxes.

MEMORANDUM DECISION - 2

3.   Law Regarding Declaratory Judgments and Injunctive Relief.  This action is for injunctive and declaratory relief.  A party seeking an injunction must show a clear, legal or equitable right, a well-grounded fear of invasion of their right, and actual substantial injury if the acts complained of are permitted to continue.  In exercising its equitable power, the court should balance the relative interests of the parties and of the public, if appropriate.  Tyler Pipe Industries v. Department of Revenue, 96 Wn.2d 785, 792 (1982); Port of Seattle v. International Longshoremen's and Warehousemen's Union, 52 Wn.2d 317, 319 (1958); Isthmian S.S. Company v. National Marine Engineer's Beneficial Association, 41 Wn.2d 106 (1952). Declaratory relief is appropriate if there is either an issue of major public importance or a judiciable controversy.  Nollette v. Christianson, 115 Wn.2d 594, 598 (1990); Superior Asphalt v. Labor and Industries, 121 Wn.App. 601, 606 (2004).

4.   Decision.  Here, the plaintiffs allege the class members face a well-grounded fear their rights to effective assistance of counsel will be violated, to their profound injury.  First, there is no dispute that the class members have a clear, legal and equitable right to effective assistance of counsel.  Article 1, Section 22 of the Washington State Constitution; Sixth Amended to the United States Constitution; State v. Long, 104 Wn.2d 285, 288 (1985).  A right to effective assistance of counsel is inherent in the guarantee of counsel and is essential to a fair trial.  Strickland v. Washington, 466 U.S. 668, 685 (1984).  The real issue presented is whether the class plaintiffs had and have a well-grounded fear of immediate invasion of their right to effective assistance of counsel.

It is undisputed that prior to this litigation being filed in April 2004, the caseloads of the Grant County Public Defenders were excessively high and exceeded any advisory guideline for caseload limits.  It is also undisputed that Grant County did not provide meaningful supervision over the public defender system and that the Grant County Prosecutor's Office interfered with the ability of the public defenders to seek funds for retaining investigators and/or expert witnesses independent of the remuneration provided by contract for the public defenders.  In fact, essentially all of the statement of facts outlined in plaintiffs' motion for partial summary judgment in paragraph II are uncontested.  Moreover, regardless of whether one is of the opinion that the facts point to ineffective assistance of counsel and a well-grounded fear of continued invasion of that right or whether they simply point to a "terrible" public defense system is not the point on the request for injunctive relief. Evidence of past practices is certainly relevant and

MEMORANDUM DECISION - 3

admissible where there exists a possibility that the practices will continue and /or occur again. Braam ex. rel. v. State, 150 Wn.2d 689, 708, 709 (2003). The systemic deficiencies of the pre-filing public defense system in Grant County certainly created an atmosphere in which the class plaintiffs developed a well-grounded fear of immediate invasion of their respective rights to effective assistance of counsel and is evidence of an ongoing concern. The court should grant the class plaintiffs' motion for partial summary judgment on the pre-filing period but only as outlined above.

With respect to post-filing motion for partial summary judgment, the court makes similar observations. What the county did subsequent to the filing in hiring attorneys after April 4, 2004 and under the present 2005 contract is uncontested. Determining from that evidence as a matter of law, however, that the class plaintiffs are receiving ineffective assistance of counsel and will continue to do so and that the court should just focus on the remedies is beyond what this court is willing to do at this time. The court will grant the plaintiffs' motion for partial summary judgment regarding the Grant County public defense system after April 4, 2004 to the extent that the facts allow the court to conclude the atmosphere in which the class plaintiffs are being represented still creates a well-grounded fear of immediate invasion of the right to effective assistance of counsel.

The court by granting "partially" the class plaintiffs' motions for partial summary judgment is not ruling in favor of the class plaintiffs on their request for declaratory judgment that as a matter of law the Grant County Public Defender system deprives class plaintiffs of effective assistance of counsel. Creating an atmosphere in which there exists a well-grounded fear of immediate invasion of the right to effective assistance of counsel is not, at least in the court's mind, the same as owning a public defense system which in fact denies class plaintiffs of the effective assistance of counsel.

Having determined the plaintiffs' motions for partial summary judgment should be "partially" granted at this time, before the court addresses the defendant's motion, allow the court to advance the premise that it views the facts as to the actions of the county both before and after April 4, 2004 as being virtually uncontested; that the Grant County public defender system prior to April 4, 2004 suffered from systemic deficiencies and continues to suffer from problems after this action was filed; and that efforts with the 2005 contract have improved somewhat the conditions that existed prior to the institution of the lawsuit. The interrelationship of Grant

MEMORANDUM DECISION - 4

County Resolution No. 97-29-CC, the *Washington Defender Association Standards for Public Defense Services* and the *ABA Ten Principles of a Public Defense Delivery System* should form the basis for the court to determine how to eliminate that fear and prevent substantial harm from manifesting in actual ineffective assistance of counsel to the class defendants. Since the guidelines above referenced are advisory there is room to devise a Chevrolet system as opposed to a Cadillac system to meet the constitutional obligation to provide effective assistance of counsel. The focus of the trial should be on devising that system.

Turning now to the defendant's motion for summary judgment, this court denies the same. The court does not believe the Strickland test of Strickland v. Washington, supra is the appropriate test to apply to determine whether the Grant County public defender system creates an atmosphere in which there exists a well-grounded fear of immediate invasion of the right of effective assistance of counsel as an institution. Certainly on a case by case basis post-conviction relief complaining of ineffective assistance of counsel must apply the Strickland test. Here, however, complaint of the class is the ultimate systemic failure of the system and only prospect of relief is being sought to fix the system: As such, class plaintiffs do not have to demonstrate individual prejudice.[2]

CONCLUSION

Based on the foregoing, please present appropriate orders to reflect the court's decision[3].

DATED: October 14, 2005

_(signature)_

JUDGE

---

[2] See Luckey v. Harris, 860 F.2d 1012, 1017 (11th Cir. 1988), *cert. denied*, 495 U.S. 957, L.Ed. 2d 744, 110 S.Ct. 2562 (1990). See also Kenney A. ex. rel. Winn v. Perdue, 357 F.2d 1353, 1362 (N.D.Ga. 2005); see Nicholson v. Williams, 203 F.Supp. 2d 153, 240 (E.D. N.Y. 2002). (With respect to the declaratory judgment aspect of this case, however, see the court's discussion above).

[3] Please heed the court's observation that many of the facts are uncontested. In effort to streamline the presentation during trial would certainly be appreciated, even to the point of developing a stipulation that would obviate the need for witnesses to be required to testify to give the uncontested facts.

MEMORANDUM DECISION - 5

*Appendix D*

*Appendix D*

FILED

AUG 2 6 2004

JOYCE L. JULSRUD, CLERK
KITTITAS COUNTY, WASHINGTON

SUPERIOR COURT OF WASHINGTON FOR KITTITAS COUNTY

JEFFREY BEST, DANIEL CAMPOS and ) 
GARY DALE HUTT, on behalf of )
Themselves and all others similarly )
Situated and GREGG HANSEN, )
  )
             Plaintiffs, )     No. 04 2 00189 0
  )
vs. )     **MEMORANDUM DECISION**
  )
GRANT COUNTY, a Washington County, )
  )
             Defendant. )

PROCEEDINGS

This case is a proposed class action under CR 23 in which the plaintiffs asked the court to issue injunctive and declaratory relief against Grant County concerning its indigent defense services. The three named defendants Best, Campos and Hutt, were all charged with felonies in Grant County Superior Court and assigned attorneys to represent them. Each named defendant contends Grant County, through its Board of County Commissioners, has violated the constitutional rights of indigent persons accused of felonies in Grant County arising from the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 3, 12 and 22 of the Washington State Constitution.

The proposed representative plaintiffs (Best, Campos and Hutt) seek judicial enforcement of their right to effective assistance of counsel, due process and equal protection of the laws. They, together with Grant County taxpayer Gregg Hansen, seek injunctive and declaratory relief

MEMORANDUM DECISION - 1

in order to protect the constitutional rights of all present and future indigent criminal defendants. By their request for class certification under CR 23(b)(2) the representative plaintiffs seek to represent a class consisting of all indigent persons who have or will have criminal felony cases pending in Grant County Superior Court, who are appointed an attorney, and who have not entered into a plea agreement or been convicted.

The defendant opposes the representative plaintiffs' motion for class certification, contending class certification is not appropriate because the plaintiffs cannot establish a justicable controversy, the plaintiffs cannot establish actual harm and/or the imminent threat of future harm, because the plaintiffs cannot establish the necessary requirements under CR 23 and because the plaintiffs fail to state a claim upon which relief may be granted.

Plaintiffs have also moved the court to compel Grant County to produce documents responsive to plaintiffs' first request for production, to produce a witness in response to the plaintiffs' CR 30(b)(6) deposition who will be prepared to testify knowledgeably and completely regarding the matter set forth in the deposition notice, to answer questions concerning the qualifications of new public defenders contracted with the county and to provide the identity and responsibility of all persons who have participated on behalf of Grant County in the decision to seek reassignment of cases from one attorney to another since February 15, 2004.

Oral argument on the motions[1] was heard by the court on Wednesday, August 4, 2004. The court thereafter took the matter under advisement to review the extensive briefings by the parties and to consult the numerous cases cited by each side.[2] The court has now had the opportunity to review the positions of the parties.

DISCUSSION

1. Background. The plaintiffs' complaint contains numerous allegations pertinent to their motion for class certification. Paragraphs 27 through 31 outline Grant County's duty to

---

[1] The defendant also moved to strike plaintiffs' references to unpublished decisions in their reply in support of plaintiffs' motion for class certification and unauthenticated hearsay documents attached to the declarations of Nancy Talner and Don Scaramastra. While the parties did not argue the motion to strike orally, the court indicated it would consider the motion to strike and the opposition thereto in its decision-making process.

[2] The court also indicated to the parties that it was about to embark on a 10-day vacation which the court did take from August 5 to August 15. The court returned back on August 16 to preside over a 5½ day trial, Northwest Pipeline v. the State of Washington and 29 counties in which Northwest Pipeline protested its tax evaluations in the State of Washington.

MEMORANDUM DECISION - 2

provide effective assistance of counsel for indigent persons charged with felony crimes. Paragraphs 32 through 41 provide an overview of Grant County's public defense system. Paragraphs 42 through 49 provide reference to judicial findings of ineffective assistance of counsel and the disbarment recommendations for the public defenders Tom Earl and Guillermo Romero.[3]  Paragraphs 50 through 56 outline the chaos created in the Grant County public defense system by suspension of Tom Earl.  Paragraphs 57 through 94 outline how Grant County has failed to establish a public defense system that provides effective assistance of counsel to all indigent persons charged with felony crimes in that it has failed to assure that all public defenders meet professional qualifications, that defendant Grant County has failed to impose reasonable case load limits, has failed to monitor or oversee the public defense system, has failed to provide adequate funds for public defense, has failed to provide adequate funds to pay necessary costs of defense, has failed to provide representation at all critical stages of prosecution, and has undermined the independence of public defenders.

In paragraphs 95 through 100 of their complaint the plaintiffs outline how Grant County has failed to provide effective assistance of counsel for the class plaintiffs.  Specifically, on January 29, 2004 Jeffrey Gregg Best was charged with burglary in the second degree, theft of anhydrous ammonia, unlawful storage of anhydrous ammonia, and theft in the second degree under cause number 04-1-00101-6.  On February 10, 2004 Mr. Best was charged with burglary in the second degree and theft of anhydrous ammonia under cause number 04-1-00142-3.  Mr. Best was assigned an attorney to represent him on the charges.  Best contends and argues he was deprived of his rights of effective assistance of counsel because he wasn't represented at his initial appearance; he only met with his attorney on three occasions, none of the meetings of which lasted more than 10 minutes and one of which was by happenstance; and that Best did not have sufficient opportunity to discuss the facts relating to the charges against him or dismiss substantive legal issues or important litigation strategy.  Moreover, Best asserts he was unable to contact his attorney even though he made several attempts to contact the attorney including filing kites with the jail and writing letters to his attorney.  His court appointed counsel acknowledged receiving the kites and letters but did not respond in substance to them.  Mr. Best further contends he was not advised of his rights with respect to important pretrial hearings, including suppression hearing under CrR 3.5 and CrR 3.6, nor was he fully advised of his sentencing range

---

[3] Both of whom have since been in fact disbarred by the Washington State Supreme Court.

MEMORANDUM DECISION - 3

if convicted. He asserts his attorney had an excessive case load because it had doubled since Tom Earl was suspended and because the attorney was also assigned a juvenile defendant charged in superior court with first degree murder. In fact, Best's attorney candidly admitted that he had not been able to do the things that should be done with regard to Best's case.

Daniel Campos was charged on August 22, 2003 with two counts of stalking and two counts of driving on suspended license under cause number 03-1-00750-4. On February 9, 2004 Mr. Campos was charged with malicious mischief second degree under cause number 04-1-00134-2. On March 29, 2004 the 2004 information was amended to include a second count of malicious mischief. Mr. Campos was appointed an attorney. Mr. Campos asserts he has been deprived of his rights to effective assistance of counsel because he was not represented by counsel at his initial appearance on the 2003 charge, that during representation of Campos on 2003 charge Campos' attorney only met with him immediately before court dates and that at these meetings Campos had an inadequate opportunity to discuss defending the charges against him. Mr. Campos further asserts that after having been represented by the assigned attorney on the 2003 charge for approximately five months he was given a newly assigned attorney, that when he asked for an explanation Campos was told he was provided a new lawyer because of an unidentified conflict of interest, and that his new attorney assumed responsibility of Campos' defense for both the 2003 and 2004 charges. Campos alleges that at the pretrial hearing regarding the 2003 charge Campos' previous attorney indicated that there were several witnesses that had not been identified or developed by the State and that although his previous attorney had indicated these witnesses would be needed to be interviewed no interviews took place. Campos additionally claims that although he provided his new attorney with contact information for potential exculpatory witnesses regarding the 2003 charge his attorney failed to advise Campos that the witnesses had been interviewed, that prior to receiving the names of potentially exculpatory witnesses from Campos, his attorney had already filed a list of witnesses for the 2003 charge and that the list only reserved the right to call Campos and two witnesses reserved by the State. Campos also contends his new attorney had him sign a stipulation to admissibility of defendant's statements made regarding the 2003 charge without fully advising Campos concerning the contents of those statements, the circumstances under which the statements were made, or the impact of the stipulation on his defense. Finally, Campos asserts his attorney did

MEMORANDUM DECISION - 4

Case 2:11-cv-01100-RSL Document 45 Filed 10/17/11 Page 94 of 102

not meet with him for a sufficient amount of time to discuss the facts relating to the charges against him, substantive legal issues and important litigation strategy.

Gary Dale Hutt was charged with conspiracy to deliver methamphetamine and attempted introduction of contraband in the second degree under cause number 04-1-00022-2 on January 12, 2004. On February 24, 2004 the information was amended to include charges of possession of methamphetamine with intent to deliver, possession of cocaine with intent to deliver, possession of marijuana with intent to deliver, conspiracy to deliver cocaine, conspiracy to deliver marijuana, and assault in the second degree. Mr. Hutt was assigned an attorney. He alleges his rights to effective assistance of counsel were violated because he wasn't represented by counsel at his initial appearance on the charges set forth above, that while detained during the pendency of the proceeding against him he had the opportunity to meet with his attorney only three times, none of which meetings lasted longer than 15 minutes, and that his attorney did not adequately discuss the facts relating to the charges against him or discuss substantive legal issues or important litigation strategy. He alleges his attorney did not accurately review the discovery with him or interview important witnesses in the case.

Finally, the plaintiffs allege that as a result of Grant County's acts and omissions including policies, practices and procedures maintained in countenance by Grant County, the indigent persons charged with felony crimes in Grant County have suffered or are at imminent and serious risk of suffering harm. The plaintiffs contend among other things that indigent persons are deprived of adequate consultation and communication with attorneys, that they must make decisions about their rights or contest issues without adequate factual or legal investigation by their attorneys, that they are deprived of meaningful opportunities to present defenses, that the rights of indigent persons are waived without proper consultation advice, that indigent persons are deprived of services of investigators and expert witnesses, that indigent persons' cases are not properly prepared for trial and that indigent persons do not receive meaningful benefits in exchange for guilty pleas.

On March 5, 2004 the Grant County Board of County Commissioners established a new contract to public defender program pursuant to Chapter 10.101 RCW which is evidently patterned after a similar system in Benton County. Grant County contends the new system comports to recommendations made by the ACLU in its March 2004 report entitled "The Unfulfilled Promise of Gideon-Washington's Flawed System of Defense for the Poor".

MEMORANDUM DECISION - 5

On April 20, 2004 Jeffrey Best entered a Statement of Defendant on Plea of Guilty to two counts of burglary in the second degree and theft in the second degree. Mr. Hutt's cases have all been resolved, he has been sentenced and is serving his time in Shelton Correctional Facility. Mr. Campos' cases are pending.

    2.    <u>Law Regarding Class Action Certification</u>. A primary function of a class action lawsuit is to provide a procedure for vindicating claims which, taken individually, are too small to justify individual legal action but which are of significant size and importance if taken as a group. <u>Smith v. Behr Process Corp.</u>, 113 Wn.App. 306, 319 quoting <u>Brown v. Brown</u>, 6 Wn.App. 249, 253 (1971). Washington courts favor a liberal interpretation of CR 23 as the rule avoids multiplicity of litigation, saves members of the class the cost and trouble of filing individual suits, and also frees the defendant from the harassment of identical future litigation. <u>Smith</u>, <u>supra</u> at 318. Interests of justice require that in a doubtful case any error, if there is to be any, should be committed in favor of allowing the class action. <u>Smith</u>, <u>supra</u> at 319 quoting <u>Esplin v. Hirschi</u>, 402 F.2d 94, 101 (10th Cir. 1968).

    In a proposed action such as this one where the plaintiffs seek sweeping injunctive relief, questions relating to the named plaintiffs' standing and entitlement to equitable relief, the propriety of class certification, and the availability of system wide relief will often overlap. <u>Stevens v. Harper</u>, 213 F.R.D. 358, 366 (2002). Standing and entitlement to equitable relief are threshold jurisdictional requirements that must be satisfied prior to class certification. Any analysis of class certification must begin with the issue of standing. Only after the court determines the issue for which the named plaintiffs have standing should it address the question of whether the named plaintiffs have representative capacity. <u>Stevens</u>, <u>supra</u>. On a motion to dismiss for lack of standing, the trial court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. <u>Stevens</u>, <u>supra</u> at 370.

    When standing has been determined, plaintiffs moving for class certification bear the burden of demonstrating they meet the requirements of CR 23. <u>Miller v. Farmer Brothers Company</u>, 115 Wn.App. 815, 820 (2003). Where class certification is sought at the early stages of litigation, courts generally assume that the allegations in the pleadings are true and will not attempt to resolve material factual disputes or make any inquiry into the merits of the claim. <u>Miller</u>, <u>supra</u>; <u>Smith</u>, <u>supra</u> at 320. Courts may, however, go beyond the pleadings and examine the parties' evidence to the extent necessary to determine whether the requirements of CR 23

MEMORANDUM DECISION - 6

have been met. Miller, supra; Oda v. State, 111 Wn.App. 79, 94, review denied, 147 Wn.2d
1018 (2002). Because class actions are a specialized proceeding available in limited
circumstances, the trial court must conduct a "rigorous analysis" of the CR 23 requirements to
determine whether a class action is appropriate in a particular case. Miller, supra; Oda, supra at
93.

      To certify a class action the court must determine four elements of CR 23(a) are present,
that is (1) the class is so numerous that joinder of all members is impractical; (2) that there are
questions of law in fact common to the class; (3) that the claims of the representative parties are
typical of the claims of the class; and (4) that the representative parties will fairly and adequately
protect the interests of the class. In addition to satisfying the four requirements of CR 23(a), the
class action suit must fall within one of three categories of actions set forth in CR 23(b). Here,
the representative plaintiffs contend CR 23(b)(2) applies because Grant County, it is contended,
has acted or refused to act on grounds generally applicable to the class, thereby making
appropriate final injunctive or a corresponding declaratory relief with respect to the class as a
whole. See Sitton v. State Farm Mutual Auto Insurance Company, 116 Wn.App. 245, 251
(2003).

      3.    Decision.

      a.    Standing. To establish standing, a plaintiff must allege he has suffered an injury
in fact, that the injury was causally connected to the defendant's actions, and that it is likely that
the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S.
555, 561, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992). Here, each of the three plaintiffs, Best,
Campos and Hutt, is or was represented by a public defender. They each allege they were denied
effective assistance of counsel because the county failed to provide adequate indigent public
defense services to them. Each has alleged specific facts related to the manner in which the
county has provided and continues to provide indigent defender services and alleges specific
facts which detail the manner in which each of the named plaintiffs has been deprived of those
services.

      Yet, Grant County contends Campos' claim is not ripe yet because his action is still
pending and that Best's and Hutt's claims are moot because their cases have been resolved.
Campos' allegation that he is facing criminal prosecution without an effective lawyer at his side
certainly raises the prospect of serious and immediate injury or threatened injury. The right to

MEMORANDUM DECISION - 7

effective assistance of counsel extends to all persons accused of felonies not just those who are innocent. Harm is not limited to locking up innocent people. The accused is prejudiced if he or she is forced to plead guilty rather than run the risk of going to trial without competent counsel or if counsel doesn't bother to call witnesses who can support the accused, or when the accused must evaluate the pros and cons of a plea offer without competent counsel to explain the plea and its consequences or when counsel doesn't bother to move to suppress inadmissible evidence. Campos' claim is ripe.

The fact Best's and Hutt's claims have been resolved after this case was filed do not render their claims moot. As indicated by the United States Supreme Court in Sosna v. Iowa, 419 U.S. 393, 402 note 11, 95 S.Ct. 553, 42 L.Ed. 2d 532 (1975):

> "There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend on the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."

Two classes of cases in which certification should "relate back" to the date of filing the complaint, preventing the case from being mooted by subsequent events involve cases where the allegedly illegal acts complained of are "capable of repetition yet evading review"[4] and cases including classes that are "inherently transitory".[5] As pointed out by the plaintiffs, Best's and Hutt's claims survive the mootness argument because their cases fall within both the classes allowing their cases to relate back to the date of filing even though their individual claims might be otherwise moot. See Burman v. State, 50 Wn.App. 433, 439 (1988). It is noted criminal proceedings are short in duration and inevitably terminate before a civil proceeding like this one is fully litigated. For this reason the length of any preadjudication status is unknown and no member of the class is likely to have a live claim throughout the litigation. As such the duration of the challenged action is short enough to evade review. Gerstein, supra. Moreover, that Best and Hutt have led guilty does not mean they may not act as class representatives. Putative class representatives are not required to forego or delay legal opportunities in order to avoid a mootness challenge. Perez-Funex v. District Director, INS, 611 F.Supp. 990, 1000, C.D. Cal.

---

[4] See Gerstein v. Pugh, 420 U.S. 103, 111, note 11, 95 S.Ct. 854, 483 L.Ed. 2d 54 (1975).
[5] See Wade v. Kirkland, 118 Fed. 3d 667, 670 (9th Cir. 1997).

MEMORANDUM DECISION - 8

(1984). Additionally, the changes in the plaintiffs' status do not moot their claims on behalf of the class because the class is inherently transitory. A class is inherently transitory when it consists of a "fluid population", such as pretrial detainees, prisoners or indigent persons, or where there is a constant, though revolving, class of persons suffering from the same deprivation. County of Riverside v. McLaughlin, 500 U.S. 44, 52, 114 L.Ed. 2d 49, 111 S.Ct. 1661 (1991). The class the plaintiffs seek to represent is fluid in that its membership shifts frequently.

Based on the foregoing, the court concludes the plaintiffs Best, Campos and Hutt have standing and that the court should proceed to its analysis under CR 23.

b.     CR 23. CR 23(a)(1) requires the class to be so numerous that joinder of all members is impractical. A proposed class of at least 40 members creates a rebuttable presumption that joinder is impracticable. Miller, supra at 821. Here, while the numbers of the proposed class are by no means precise it has been demonstrated to the satisfaction of the court that the class consists of hundreds of persons with felony criminal cases currently pending in the Grant County Superior Court and several hundred if not thousands of whom will have criminal cases in the future.[6] And as has been pointed out above, the membership is inherently transitory so it is in a constant state of flux, making identification and joinder of members especially difficult and therefore impracticable. See Robinson v. Peterson, 87 Wn.2d 665, 667 (1976); see Johnson v. Moore, 80 Wn.2d 531, 533 (1972). These factors and others weigh in favor of certification.

CR 23(a)(2) requires that the proponents of the class demonstrate there are questions of law or fact common to the class. This threshold of "commonality" is low in the sense that it is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class. Smith v. Behr, supra at 320. Here, the plaintiffs' complaint sets forth in some detail the problems indigent defendants have experienced. They lack response from their attorneys, their attorneys failed to follow up with witnesses, their attorneys failed to assist with case strategy in evaluation of plea offers, their attorneys failed to file key motions and their attorneys failed to even appear on behalf of them in open court. The complaint also links the harmful practices it describes, contending the root causes of those practices are inadequate

---

[6] See declaration of J. Michael Spencer, paragraph 2, in which records from Grant County Superior Court indicate as of July 19, 2004 455 criminal cases had been filed.

MEMORANDUM DECISION - 9

funding of defense services, excessive case loads and prosecutorial interference with defense system. The plaintiffs have satisfied the requirement of commonality.

Next, the plaintiffs must establish under CR 23(a)(3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class. "Typicality" is present if the representative plaintiffs' claims arise "from the same event or course of conduct which gives rise to claims of other class members and is based on the same legal theory." Rodriguez v. Carlson, 166 F.R.D. 465, 472 (1996). The representative plaintiffs' claims need not be identical to those of other class members. Hanlon v. Chrysler Corporation, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, plaintiffs' claims are typical of those of other class members because their claims arise from the same course of conduct that gives rise to the claims of other class members, that is, all claims arise from Grant County's systematic deprivation of the constitutional right of effective assistance of counsel in its public defense system. All the claims are based on the same legal theory. All the claims arise from appointed counsels' failure to form such basic tasks as returning phone calls, appearing in court, giving legal advice, interviewing witnesses, filing motions, and preparing for trial. While the claims may vary in their precise details, they all arise from the same event or course of conduct. Plaintiffs have satisfied the typicality requirement.

Finally, CR 23(a)(4) requires the representative parties of the class to fairly and adequately protect the interests of the class. To be adequate class representatives, plaintiffs must not be involved in a collusive suit and they must not have interests antagonistic to those of the remainder of the class. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978). The defendant Grant County does not contest this prong of the rule head on. Rather, it insists Best and Hutt are not adequate representatives because their cases are resolved and they do not belong to the class and that Campos' representation is inadequate because his case is not resolved. This court rejects those arguments as outlined above.[7] Here, the representative plaintiffs have the same interest as the class as a whole. They seek effective assistance of legal counsel for themselves and for all other indigent persons accused of felonies in Grant County. Moreover, each of the attorneys representing the plaintiffs is qualified, experienced and able to conduct the proposed litigation. They have the resources and expertise to handle this type of litigation.

---

[7] Under the discussion of standing, mootness and ripeness.

MEMORANDUM DECISION - 10

Based upon the foregoing the court concludes the requirements of CR 23(a) have been met.

Finally, in addition to satisfying the four requirements of CR 23(a), this action must fall into one of the three categories outlined in CR 23(b). The action does fall within the parameters of CR 23(b)(2) which provides that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or a corresponding declaratory relief with respect to the class a whole. Here, the case arises from Grant County's creation and maintenance of a public defense system that acts or fails to act in ways applicable to all class members. The case satisfied the "grounds generally applicable standard outlined in CR 23(b)(2)." Sitton, supra at 251.

Based on the foregoing, the court concludes from its analysis that the plaintiffs have met their burden under CR 23 and that the court should certify this a class action for declaratory and injunctive relief.

5.    Motion to Compel. The court, as indicated above, also heard oral argument on the plaintiff's motion to compel. At oral argument there appeared to be some agreement with respect to two of the four areas of concern. The parties indicated that Grant County had finally complied with the request for production. To the extent that Grant County has not complied, it should be ordered to do so. Secondly, plaintiffs complained the Board of Commissioner Allison was not prepared for his CR 30(b)(6) deposition and they therefore have moved to compel that Grant County prepare the designee to respond to the questions outlined in the deposition notice. Grant County should be ordered to prepare the designee for the 30(b)(6) deposition so he can adequately respond to questions propounded, including responding to questions concerning identity and responsibility of all persons who have participated, on behalf of Grant County, in the decision to seek reassignment of cases from one attorney to another since February 15, 2004.

6.    Motion to Strike. After reviewing the defendant's motion to strike references to unpublished opinions, exhibits appended to Nancy Talner's declaration and the newspaper article appended to Don Scaramastra's declaration, the court respectfully should deny Grant County's motion.

CONCLUSION

MEMORANDUM DECISION - 11

Based on the foregoing analysis, the court grants the plaintiffs' motion to certify the class, grants the plaintiffs' motion to compel and denies the defendant's motion to strike.  Please prepare the appropriate orders and note them for presentation or otherwise present them by agreement.

DATED:  August 26, 2004

Michael E Cooper

JUDGE

MEMORANDUM DECISION - 12

I CERTIFY UNDER PENALTY OF PERJURY under the laws of the United States of America that the foregoing is true and correct.

DATED at Seattle, Washington, this 17th day of October, 2011 by JAMES F. WILLIAMS.

By:  s/ James F. Williams, WSBA #23613

PLFS' CROSS-MOTION FOR PRELIMINARY
INJ & OPP TO DEFS' SJ MOTIONS – 54
Case No. C11-01100 RSL
68142-0003/LEGAL21942305.1