UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
JOSEPH JEROME WILBUR, *et al.*, )  No. C11-1100RSL
)
              Plaintiffs, )
   v. )  ORDER DENYING DEFENDANTS'
)  MOTIONS FOR SUMMARY JUDGMENT
CITY OF MOUNT VERNON, *et al.*, )  AND PLAINTIFFS' MOTION FOR
)  PRELIMINARY INJUNCTION
              Defendants. )
_____ )

      This matter comes before the Court on defendants' motions for summary judgment related to the claims of the three named plaintiffs, Joseph Jerome Wilbur (Dkt. # 25), Jeremiah Ray Moon (Dkt. # 27), and Angela Montague (Dkt. # 32), plaintiffs' cross-motion for preliminary injunction (Dkt. # 45), and the "Brief of Amicus Curiae Washington State Association of Municipal Attorneys" (Dkt. # 74). Plaintiffs allege that the City of Mount Vernon and the City of Burlington have regularly and systematically failed to provide effective assistance of counsel to indigent persons charged with crimes, thereby violating both the federal and state constitutions. Specifically, plaintiffs allege that Mount Vernon and Burlington have implemented a system of public defense that is inadequately funded, imposes unreasonable case loads on the individual attorneys, fails to provide representation at critical stages of the

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

prosecution, and is not properly monitored.[1] Plaintiffs also allege that the municipalities have known of the structural deficiencies in their public defense systems for many years and yet continue the system without substantive change.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

**A. Motions to Strike**

Defendants raise hearsay and authenticity objections to most if not all of the declarations and exhibits submitted by plaintiffs in opposition to the motion for summary judgment and in support of their motion for preliminary injunction. Reply (Dkt. # 65) at 4.[2] Defendants have not articulated any reason to doubt the authenticity or admissibility of many of the exhibits provided, including court documents, published performance standards, the contracts under which the public defender system is operated, and defendants' business records.

Defendants mention only three documents (or types of documents) with any level of specificity. The first, a collection of complaints regarding the services provided by the public

---

[1] Defendants take issue with plaintiffs' assertions that the public defenders, Messrs. Sybrandy and Witt, spend only 40% and 33% of their time, respectively, in public defense, that they are assigned to handle approximately 1000 misdemeanor cases per year, that counsel spends on average less than 35 minutes on each case, and that the public defenders took only two cases to trial in 2010. Reply (Dkt. # 65) at 5-7. Although some of these assertions are not supported by admissible evidence (for example, the percentages stated on the AVVO printouts appear to be hearsay), there is evidence supporting plaintiffs' overarching argument that counsels' workload is unmanageable. To the extent defendants dispute that assertion and have produced declarations to contradict the case assignment data, time records, and annual reports on which plaintiffs rely, the Court declines to decide disputed issues of fact in the context of a summary judgment motion.

[2] Plaintiffs' sur-reply in response to defendants' first motion to strike (Dkt. # 71) is unauthorized. Local Civil Rule 7(g) permits the filing of a sur-reply only for the purpose of objecting to material contained in or attached to a reply brief, not to respond to another party's motion to strike. In fact, responses to motions to strike "shall not be filed unless requested by the court." CR 7(g)(4). No such request was made in this instance. Plaintiffs' response has therefore not been considered in ruling on defendants' evidentiary objections.

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION    -2-

defenders, was apparently produced by the municipalities and is offered to show that defendants had knowledge of the problems in the public defender system. Decl. of Toby J. Marshall (Dkt. # 57) at Ex. 18. Because the documents appear to be what plaintiffs claim and are not offered to establish the truth of the matters asserted therein, defendants' objections are overruled. The second document is described as "a sensationalist newspaper article, recounting what a non-party supposedly said." Reply (Dkt. # 65) at 4. The offending document is not identified by docket or exhibit number. The Court assumes that defendants are referring to the article that makes up a portion of Ex. 15 to Mr. Marshall's declaration and that the non-party statements are those of public defender Richard Sybrandy. Because the Court is unable to ascertain which, if any, hearsay exceptions might apply, the Court has not considered this article in ruling on the underlying motions. Finally, defendants object to the expert opinion of David Boerner on the ground that he offers no support for his conclusion that "the prosecution's previously enumerated expectations for the Right to Counsel are not being met with respect to the public defense services" provided by defendants. Decl. of David Boerner (Dkt. # 53) at ¶16. To the contrary, Mr. Boerner sets forth his experience as a prosecutor in both the federal and state systems, identifies the services and communications a prosecutor would expect an accused to receive from his attorney, and lists the documents he reviewed regarding the system in Mount Vernon and Burlington. Defendants may take issue with Mr. Boerner's conclusion, but they offer no basis on which to exclude it from evidence.

In their opposition to plaintiffs' motion for preliminary injunction, defendants include a ten-line motion to strike significant portions of plaintiffs' evidence, including the declaration of plaintiff Wilbur, "[a]ll confidential communications improperly obtained from Skagit County," and all expert opinions that rely on such information. Dkt. # 115 at 33. Two separate motions have been filed regarding the declaration and confidential communications (Dkt. # 78 and Dkt. # 87 respectively): the Court declines to incorporate and decide those

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION   -3-

motions here.

Finally, defendants object to arguments asserted by plaintiff in support of their motion for preliminary injunction. Dkt. # 128. Arguments of counsel are not evidence and will not be considered as such by the Court or the ultimate factfinder. If an argument is wholly unsupported and/or conflicts with the available evidence, it will be disregarded. Arguments can, however, be based on common sense inferences or limited/equivocal evidence. In such instances, the weight given the argument will depend on many factors, but the argument is not *per se* inadmissible. Because there is evidence from which one could infer that indigent criminal defendants are unfamiliar with the attorney substitution options available to them, the objection to that argument is overruled. See Decl. of J. Camille Fisher (Dkt. # 122), Ex. 1 at 102:8-11, Ex. 11. Plaintiffs' contention that defendants conceded that they do not supervise, monitor, or evaluate their public defenders is not adequately supported, however. The only citation is to a memorandum in which plaintiffs set forth their related argument that complaints have been lodged regarding the public defenders' failure to be responsive and/or to provide representation. There is no evidence of a concession, and the argument has not been considered.

**B. Availability of Injunctive and/or Declaratory Relief**

Plaintiffs are seeking only prospective equitable relief in the above-captioned matter. Defendants argue that neither injunctive nor declaratory relief is available, however, because the law provides adequate remedies for the constitutional violation alleged. In particular, defendants argue that, if an indigent criminal defendant is unhappy with the representation afforded by his public defender, he could request the appointment of new counsel, assert an ineffective assistance of counsel claim on appeal, and/or sue the public defender for malpractice. While these remedies would be sufficient if plaintiffs' claims were limited to ineffective assistance of counsel claims under Strickland v. Washington, 466 U.S. 668 (1984), plaintiffs are not simply challenging counsels' conduct in their individual cases. Rather,

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION     -4-

plaintiffs argue that the City of Mount Vernon and the City of Burlington are systematically depriving indigent criminal defendants of the right to counsel promised in <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963).

Plaintiffs allege that municipal policymakers have made deliberate choices regarding the funding of, contracting for, and monitoring of the public defense system that directly and predictably deprived plaintiffs of their Sixth Amendment right to the assistance of counsel. At this early stage of the litigation, the evidence, including plaintiffs' declarations regarding their own experiences within the system, could support a finding that indigent defendants in Mount Vernon and Burlington are deprived of counsel at critical stages of the prosecution and that the assignment of public defenders is little more than a sham. <u>See</u> <u>Avery v. State of Alabama</u>, 308 U.S. 444, 446 (the absence of "an opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel."). <u>See</u> <u>also</u> <u>Hurrell-Harring v. State of New York</u>, 930 N.E.2d 217, 224 (N.Y. 2010) (recognizing that "[a]ctual representation assumes a certain basic representational relationship," such that the failure to communicate and/or appear at critical stages of the prosecution may be reasonably interpreted as nonrepresentation rather than ineffective representation).

Faced with a government system that arguably violates a constitutional guarantee on a regular basis, plaintiffs appeal to equity for a systemic remedy. Such requests are not new to the federal courts. Where official government policies trample rights guaranteed by the Constitution, the courts have not hesitated to use their equitable powers to correct the underlying policies or systems. <u>See, e.g.</u>, <u>Brown v. Bd. of Educ.</u>, 349 U.S. 294 (1955) (calling on district courts to use equitable principles to achieve the desegregation promised in the first <u>Brown v. Bd. of Educ.</u> decision); <u>Brown v. Plata</u>, __ U.S. __, 131 S. Ct. 1910 (2011) (affirming federal

oversight of California state prisons to remedy systemic Eighth Amendment violations). The Court finds that case-by-case requests for new counsel, appeals, and/or malpractice actions would not resolve the systemic problems identified by plaintiffs, making a request for injunctive and declaratory relief necessary.

Defendants, relying on Strickland and its progeny, also argue that plaintiffs cannot seek a systemic remedy because a Sixth Amendment claim will not lie unless and until they have suffered actual prejudice at trial. Under this theory, plaintiffs would have to wait until they were wrongfully convicted or sentenced before they could assert a Sixth Amendment claim. Courts have long recognized, however, that indigent criminal defendants have a right to counsel "from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation [are] vitally important . . . ." Powell v. State of Alabama, 287 U.S. 45, 57 (1932). If a request for counsel is rejected or counsel's overall representation is so defective that the prosecution's case cannot be tested through a truly adversarial process, the right to a fair trial – which is the underlying goal of the Sixth Amendment – is at risk. United States v. Cronic, 466 U.S. 648, 655-57 (1984). As discussed above, plaintiffs' allegations can be reasonably understood to assert a lack of representation. In such circumstances, there is no presumption of harmless error or requirement that the indigent defendant plod on towards judgment in order to establish harm: the constitutional violation is clear and a remedy is available. Contrary to defendants' argument, the Court will not "indulge in nice calculations as to the amount of prejudice" attributable to the lack of counsel – a hypothetical undertaking akin to trying to prove a negative – where the denial of representation itself demonstrates a constitutional violation. Cuyler v. Sullivan, 446 U.S. 335, 349 (1980) (summarizing Glasser v. United States, 315 U.S. 60 (1942)).

In this case, plaintiffs allege that the public defense system in Mount Vernon and Burlington leaves indigent criminal defendants without representation at critical points during

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION      -6-

the prosecution. Specifically, plaintiffs have provided evidence (a) that appointed counsel refuse to engage in confidential attorney-client communications regarding the charges, possible defenses, litigation options, and sentencing, (b) that the criminal defendant is left to face the judge and prosecutor alone and unaided, and (c) that defendants are advised to plead guilty in the absence of any investigation or analysis, seemingly for case management reasons rather than reasons germane to the merits of the case. If plaintiffs are able to prove their claims, they may be able to establish a breakdown in the adversarial process such that the eventual outcomes of their cases, whatever they may be, would be suspect. Having realized that they were effectively unrepresented against the prosecuting municipalities, plaintiffs can seek judicial intervention. They do not have to persevere through trial and a potentially disastrous outcome in order to perfect their Sixth Amendment claims.

**C. Standing and Mootness**

On October 17, 2011, the Court denied plaintiffs' motion to amend their complaint to add Ryan Osborne as a named plaintiff on standing grounds.

> In order for Mr. Osborne to be added as a named plaintiff, he must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Hein v. Freedom From Religion Foundation, Inc., 551 U.S. 587, 598 (2007) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). In other words, he must satisfy the "irreducible constitutional minimum of standing." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102 (1998) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Now that the City of Mount Vernon has dismissed the charges against him, Mr. Osborne is no longer represented by a public defender or otherwise threatened by the alleged systemic deprivation of counsel. Thus, any prospective relief obtained in this litigation will not enure to Mr. Osborne's benefit.

Dkt. # 44 at 2-3. Defendants argue that the same analysis should result in the dismissal of all the named plaintiffs' claims because they are no longer represented by the public defender. To the

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION     -7-

extent this change in representation is relevant, it did not occur until after the complaint was filed. Defendants offer no facts or argument from which one could conclude that plaintiffs lacked the requisite personal interest (*i.e.*, standing) at the commencement of the litigation.

Defendants' challenge is more appropriately characterized as an assertion of mootness. In order to "qualify for adjudication in a federal court, a live controversy must exist at all stages of the litigation . . . ." Vasquez v. Los Angeles County, 487 F.3d 1246, 1253 (9th Cir. 2007). Where the named plaintiffs have lost their personal interest in the outcome of the case, they are generally precluded from pursuing relief either for their own benefit or on behalf of a class.

The record in the above-captioned matter does not support a finding that plaintiffs have lost their personal interest. Although plaintiff Montague has already been sentenced in her criminal matter, she is currently on probation, has a hearing scheduled (at least as of November 2011), and is being represented by the "conflict" public defender, Hoff. Dkt. # 116, Ex. D at 26. Attorney Hoff's position as "secondary defender" is expressly prescribed in the public defense services contract. Dkt. # 57-1 at 17. Plaintiff Moon has one or more open criminal matters, has pending court dates (at least as of November 2011), and is also being represented by attorney Hoff. Dkt. # 116, Ex. E at 50-51, 106. Plaintiff Wilbur had a pretrial conference scheduled for December 7, 2011, but apparently failed to appear and continues to be represented by conflict counsel. Dkt. # 122 at 72. Because plaintiffs continue to be represented by a public defender provided by the municipalities pursuant to the public defense services contract at issue in this lawsuit, the claims of the named plaintiffs are not moot.

Even if, for purposes of this motion, the Court assumes that the assignment of an alternate public defender mooted the named plaintiffs' claims, this case falls into an exception to the mootness doctrine. Where the class of plaintiffs at issue is transitory (meaning that there is a constant class of persons suffering from the alleged deprivation, but that individuals within the

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION     -8-

class will likely lose their interest while the case is pending), the Court may "validly certify a class . . . even though the named plaintiff's claims are already moot, since the 'relation back' doctrine will relate to [the named plaintiffs'] standing at the outset of the case in order 'to preserve the merits of the case for judicial resolution.'" Wade v. Kirkland, 118 F.3d 667, 670 (9th Cir. 1997). See also See Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975); Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1091 (9th Cir. 2011) (applying "relations back" doctrine where defendant's litigation strategy of settling the small claims of the named plaintiffs made the class "transitory").

The Court finds that the proposed class is transitory for purposes of the mootness analysis. It is virtually impossible to predict which individual members of the proposed class, if any, will have a live controversy at the time the class is certified, much less at the time this case is finally resolved. When the named plaintiffs came to the conclusion that they were not getting the assistance of counsel promised by the state and federal constitutions, they not surprisingly sought counsel elsewhere. The record shows that defendants dismissed the charges against at least one potential class member, apparently in a successful effort to keep him from becoming a named plaintiff. Others individuals will plead guilty, have their charges dismissed, or go to trial before the merits of this case can be reached. In these circumstances, even if the claims of the three named plaintiffs became moot, the Court would still proceed to the class certification determination before deciding whether the action should be dismissed for mootness.

**D. Municipal Liability Under § 1983**

Under 42 U.S.C. § 1983, a municipality such as Mount Vernon or Burlington may be held liable for constitutional violations only when the violation occurs as a result of the municipality's official "policy or custom." Monell v. New York City Dept. Soc. Servs., 436 U.S. 658, 694 (1978). This rule ensures that municipalities are liable only for "acts that are, properly speaking, acts of the municipality." Pembauer v. City of Cincinnati, 475 U.S. 469, 480

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION    -9-

(1986) (internal quotation marks omitted). Plaintiffs allege that defendants have made funding, contracting, and monitoring decisions which directly and predictably deprive indigent criminal defendants of their Sixth Amendment right to counsel. These decisions by the municipalities serve as "policymaking" for purposes of Monell. See Miranda v. Clark County, 319 F.3d 465, 470 (9th Cir. 2003) (county's resource allocation policy can be the basis for a § 1983 claim against the municipality). If plaintiffs are able to show that municipal policy caused the alleged constitutional violations, municipal liability may exist under § 1983.

Defendants argue that, because the public defenders are not "state actors" for purposes of § 1983, the claim against the municipalities must fail. It is clear that plaintiffs cannot seek to impose § 1983 liability on the public defenders for the performance of traditional lawyerly functions. See Polk County v. Dodson, 454 U.S. 312, 325 (1981). To the extent plaintiffs' claims against Mount Vernon and Burlington are derivative of potential claims against the public defenders, defendants' argument may have some merit. Plaintiffs, however, are seeking to hold the municipalities liable for the ineffective public defense system they created through their affirmative decisions, acts, and policies, regardless of any individualized error in which the public defenders may or may not have engaged in particular cases. As discussed above, the municipalities may be held responsible for their own conduct to the extent it deprived plaintiffs of their constitutional rights.

Defendants' "deliberate indifference" argument is misplaced. Plaintiffs have provided evidence that defendants' official municipal acts and affirmative policies caused a constitutional deprivation. That is all that is required for municipal liability under Monell. See Brass v. County of Los Angeles, 328 F.3d 1192, 1198 (9th Cir. 2003). Other theories under which a municipality can be held liable, such as a failure to act or a failure to train theory, are less direct. In the absence of an affirmative municipal act or policy, courts will require evidence that the municipality made a conscious or deliberate choice reflecting indifference to the

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION     -10-

constitutional rights of its citizens in order to ensure that the municipality is held liable only for its own wrongdoing. See Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001). Even if deliberate indifference were required when the acts or affirmative policies of the municipality are at issue, plaintiffs have provided evidence that could support such a finding. Deliberate indifference exists when the need for different or remedial action "is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989). Plaintiffs have provided evidence from which a reasonable jury could conclude that defendants knew indigent criminal defendants were not receiving representation at key stages of the prosecution and were deliberately indifferent to their plight.

Finally, defendants argue that federal courts must refrain from constitutionalizing specific performance standards or otherwise interfering with the attorney-client relationship. Federal courts should not attempt to specify a code of conduct that is universally required of all criminal defense counsel under the Sixth Amendment. See Strickland, 466 U.S. at 688-89; Nix v. Whiteside, 475 U.S. 157, 165 (1986). Nevertheless, the courts clearly have the power, if not the constitutional obligation, to evaluate the representation that was provided to the class and to declare it sufficient or insufficient. Where the underlying right to representation is at issue, the appropriate relief does not necessarily require a detailed code of conduct, but rather a more general directive to remedy the situation so that the guarantee of assistance has meaning. See Powell v. State of Alabama, 287 U.S. 45 (1932).

**E. Equitable Bars to Relief**

Defendants argue that the doctrine of judicial estoppel bars plaintiffs from challenging the reasonableness of the public defenders' actions. In particular, defendants argue that plaintiffs' written consent to continuances of their criminal trials precludes their current argument that the consent was uninformed and/or that counsel acted unreasonably. Plaintiffs'

positions do not necessarily contradict each other, however. Plaintiffs allege that they were compelled to accept continuances because counsel was unprepared and unable to proceed at their various court dates. In such circumstances, a request for a continuance is not approval of the conduct which made the request unavoidable. In addition, judicial estoppel should not be used to bar a Sixth Amendment claim when the attorney's conduct precipitated the earlier statements. See Morris v. State of Cal., 966 F.2d 448, 453 (9th Cir. 1991). The Court therefore declines to apply the doctrine of judicial estoppel in these circumstances.

Defendants also argue that plaintiffs should be precluded from seeking equitable relief because they have unclean hands. Defendants assert that all three named plaintiffs have failed to appear for court hearings related to their criminal proceedings and/or are the subject of bench warrants for their arrests. Under a doctrine developed in the 1800's, appellate courts have discretion to dismiss appeals of convicted criminals or illegal aliens who have fled and cannot be located when their appeals are heard. See Smith v. United States, 94 U.S. 97 (1876); Antonio-Martinez v. INS, 317 F.3d 1089, 1092 (9th Cir. 2003). The justifications for the doctrine are: "(1) the pragmatic concern with ensuring that the court's judgment will be enforceable against the appellant; and (2) the equitable notion that a person who flouts the authority of the court waives his entitlement to have his appeal considered." Sun v. Mukasey, 555 F.3d 802, 804 (9th Cir. 2009).

All of the cases identified by defendants involve the dismissal of a direct appeal of an underlying conviction or immigration order after the appellant has escaped from custody. Defendants have not identified, and the Court has not found, any case in which an unconvicted, non-custodial citizen was barred from seeking relief in a separate civil suit because he had an outstanding bench warrant. The underlying doctrine of unclean hands suggests that the fugitive disentitlement doctrine should not be extended to the situation presented here. When determining whether a claimant's unclean hands bar recovery, "[w]hat is material is not that the

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION      -12-

plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants." Ellenburg v. Brockway, Inc., 763 F.2d 1091,1097 (9th Cir. 1985) (citation omitted). While the Court does not approve of plaintiffs' respective failures to appear as ordered by the municipal courts, those failures did not give rise to the constitutional right plaintiffs seek to enforce in this litigation, there is a separation and disconnect between the municipal criminal proceedings and this action that did not exist in any of the cases relied upon by defendants, and there is no indication that plaintiffs' fugitive status will impede their ability to pursue this case or preclude enforcement of this Court's judgment. The Court declines to disentitle plaintiffs from pursuing their constitutional claims on the ground that they have failed to appear in their criminal proceedings.

**F. Preliminary Injunction**

In order to obtain preliminary injunctive relief, plaintiff must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 129 S. Ct. 365, 374 (2008). In addition, "serious questions going to the merits and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010) (internal quotation marks omitted).

Plaintiffs have raised serious questions regarding the constitutional adequacy of the public defender systems in place in Mount Vernon and Burlington, but the incomplete factual records makes it impossible to conclude at this stage that they are likely to succeed on the merits. Where likelihood of success is in doubt, plaintiffs must show that the balance of

ORDER DENYING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION    -13-

hardships tips sharply in favor of issuing the injunction. This they cannot do. Although the deprivation of counsel at critical stages of a criminal prosecution would, of course, create hardships for proposed class members, the wholesale restructuring of the cities' public defense systems would also impose significant hardships on defendants, their budgetary priorities, and their citizenry. Where the balance of hardships does not tip decidedly in plaintiffs' favor, they must wait until they have proven their right to relief in order to obtain an injunction.

For all of the foregoing reasons, defendants' motions for summary judgment (Dkt. # 25, # 27, and # 32) and plaintiffs' cross-motion for preliminary injunction (Dkt. # 45) are DENIED.

Dated this 23rd day of February, 2012.

*MWT S Lasnik*
Robert S. Lasnik
United States District Judge