1

2                                                                Judge Robert S. Lasnik

3

4

5

6

7

8

9                         UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
10                                AT SEATTLE

11  -----------------------------------------------------x
    JOSEPH JEROME WILBUR, *et al.*,              No. C11-1100RSL
12
            Plaintiffs
13
            v.                                    STATEMENT OF
14                                                INTEREST OF THE
    CITY OF MOUNT VERNON, *et al.*,               UNITED STATES
15
            Defendants.
16  -----------------------------------------------------x

17

18

19

20

21

22

23

24

25

**TABLE OF CONTENTS**

INTEREST OF THE UNITED STATES ........................................................................ 3

BACKGROUND ....................................................................................................... 4

DISCUSSION .......................................................................................................... 5

    I.    The Court Has Broad Authority to Enter Injunctive Relief, Including the Appointment of an Independent Monitor, if It Finds a Deprivation of the Right to Counsel................ 6

    II.   Appointment of an Independent Monitor Is Critical to Implementing Complex Remedies to Address Systemic Constitutional Violations................................................. 7

    III.   If the Court Finds Liability in this Case, its Remedy Should Include Workload Controls, Which Are Well-Suited to Implementation by an Independent Monitor........ 9

CONCLUSION........................................................................................................ 10

U.S. Statement of Interest              - ii -              U.S. Department of Justice
Case No. C11-01100 RSL                        Civil Rights Division, Special Litigation Section
                                          950 Pennsylvania Avenue, NW
                                          Washington, D.C. 20530
                                            (202) 514-2000

1

2

## TABLE OF AUTHORITIES

3

4

**Cases**

5

*Best et al. v. Grant County*, No. 04-2-00189-0 (Kittitas Cty. Sup. Ct., filed Dec. 21, 2004) ......... 7

6

*Brown v. Bd. of Educ.*, 349 U.S. 294 (1955) ............................................................... 6

7

*Brown v. Plata*, 131 S. Ct. 1910 (2011) ..................................................................... 6

8

*Cruz v. Beto,* 405 U.S. 319 (1972) ............................................................................ 7

9

*Eldridge v. Carpenters 46*, 94 F.3d 1366 (9th Cir. 1996) .............................................. 7

10

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ........................................................ 2, 3, 4

11

*Hurrell-Harring v. New York*, 930 N.E.2d 217 (N.Y. 2010) ........................................... 5

12

*Labor/Community Strategy Center v. Los Angeles County*, 263 F.3d 1041 (9th Cir. 2001) ......... 6

13

*Madrid v. Gomez*, 889 F. Supp. 1146 (N.D. Cal. 1995) ................................................. 7

*Miranda v. Clark County, NV*, 319 F.3d 465 (9th Cir. 2003) ......................................... 1

14

*Missouri Public Defender Comm'n v. Waters*, 370 S.W.3d 592 (Mo. 2012) ...................... 5

15

*Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536 (9th Cir. 1987) .......... 7

16

*State v. Citizen*, 898 So.2d 325 (La. 2005) ................................................................ 5

17

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971) ................................. 6

18

*Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1992) ............................. 6

19

*United States v. City of Pittsburgh*, No. 97-cv-354 (W.D. Pa., filed Feb. 26, 1997) .................... 8

20

*United States v. City of Seattle*, No. 12-cv-1282 (W.D. Wash., filed July 27, 2012) .................... 8

21

*United States v. Dallas County*, No. 3:07-cv-1559-N (N.D. Tex., filed Nov. 6, 2007) ................ 8

22

*United States v. Delaware*, No. 1-11-cv-591 (D. Del., filed Jun 6, 2011) ..................................... 8

23

*United States v. King County, Washington*, No. 2:09-cv-00059
      (W.D. Wash., filed Jan. 15, 2009) ........................................................................... 8

24

25

**Statutes**

28 U.S.C. § 517 ......................................................................................................... 3

42 U.S.C. § 14141 ..................................................................................................... 3

42 U.S.C. § 1983 ....................................................................................................... 1

**Other Authorities**

Yale Law Journal Symposium Issue, 122 Yale L.J. __ (June 2013) .............................. 4

ABA Standing Committee on Legal Aid and Indigent Defendants Report,
    *Gideon's Broken Promise:  America's Continuing Quest for Equal Justice*
    (December 2004) ............................................................................................... 4, 6

ABA Standing Committee on Legal Aid and Indigent Defendants, *Eight Guidelines
    of Public Defense Workloads* (August 2009)........................................................ 10

*ABA Ten Principles of a Public Defense Delivery System* .................................... 2, 4, 9

Attorney General Eric Holder Speaks at the American Film Institute's Screening of
    *Gideon's Army*, June 21, 2013, *available at*
    http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130621.html .............. 4

Attorney General Eric Holder Speaks at the Justice Department's 50th Anniversary
    Celebration of the U.S. Supreme Court Decision in *Gideon v. Wainwright*,
    March 15, 2013, *available at*
    http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-1303151.html ............ 3

Attorney General's Committee on Poverty and the Administration of Federal Criminal
    Justice, *Final Report* (1963) ............................................................................... 5

Cara H. Drinan, *The Third Generation of Indigent Defense Litigation*, 33 N.Y.U.
    Rev. L. & Soc. Change 427 (2009)...................................................................... 5, 6

http://www.justice.gov/atj/........................................................................................ 4

http://www.justice.gov/atj/idp/ ................................................................................. 4

http://www.justice.gov/crt/about/spl/findsettle.php.................................................... 8

Mem. of Agreement Regarding the Juvenile Court of Memphis and Shelby
    Counties, Tennessee (2012)............................................................................. 3, 10

National Right to Counsel Committee, *Justice Denied: America's Continuing
    Neglect of Our Constitutional Right to Counsel* (2009) .......................................... 4

U.S. Statement of Interest       - iv -       U.S. Department of Justice
Case No. C11-01100 RSL       Civil Rights Division, Special Litigation Section
      950 Pennsylvania Avenue, NW
      Washington, D.C. 20530
      (202) 514-2000

Note, *Gideon's Promise Unfulfilled: The Need for Litigated Reform of
   Indigent Defense*, 113 Harv. L. Rev. 2062 (2000) ....................................................... 6

NACDL, *Minor Crimes, Massive Waste* (2009) ............................................................. 5

Steven W. Perry & Duren Banks, U.S. Bureau of Justice Statistics,
   *Prosecutors in State Courts, 2007 Statistical Tables* (2012) .................................... 5

1

## <u>STATEMENT OF INTEREST OF THE UNITED STATES</u>

The United States files this Statement of Interest to assist the Court in answering the question of what remedies are appropriate and within the Court's powers should it find that the Cities of Mount Vernon and Burlington violate misdemeanor defendants' right to counsel.  The United States did not participate in the trial in this case and takes no position on whether Plaintiffs should prevail on the merits.  The United States files this SOI to provide expertise and a perspective that it may uniquely possess.  If the Plaintiffs prevail, it is the position of the United States that the Court has discretion to enter injunctive relief aimed at the specific factors that have caused public defender services to fall short of Sixth Amendment guarantees, including the appointment of an independent monitor to assist the Court.  The United States has found monitoring arrangements to be critically important in enforcing complex remedies to address systemic constitutional harms.

In discussing the remedies available to the Court in this Statement, the United States will address questions (1) and (3) of the Court's Order for Further Briefing, with particular focus on the role of an independent monitor.  (Dkt. # 319.)  To answer the Court's first question, the United States is unaware of any federal court appointing a monitor to oversee reforms of a public defense agency, but the Ninth Circuit has recognized a federal court's authority in this area under 42 U.S.C. § 1983.  *Miranda v. Clark County, NV*, 319 F.3d 465 (9th Cir. 2003).  The United States is aware of one case in which a federal court, through a Consent Order instituting reforms of a County public defender agency, received reports from the county regarding the progress of those reforms.  *Stinson v. Fulton Cnty. Bd. of Comm'rs*, No. 1:94-CV-240-GET (N.D. Ga. May 21, 1999).  However, the Court did not have the benefit of an independent monitor to assist it in assessing the implementation of the reforms.

1

2           Also, an independent monitor is currently monitoring systemic reform of a juvenile

3   public defender system through an agreement between the United States and the Shelby County

4   (TN) Juvenile Court ("Shelby County").

5           Finally, it is worth noting that but for removal to federal court by the Cities here, this

6   matter would have proceeded in state court, and state court litigation over the crisis in indigent

7   defense is not at all unusual.  Those cases bear out the practicality—and, at times, the

8   necessity—of court oversight in this area.

9           In answer to the Court's third question, a number of states have imposed "hard" caseload

10  standards,[1] but the United States believes that, should any remedies be warranted, defense

11  counsel's *workload* should be controlled to ensure quality representation.  "Workload," as

12  defined by the *ABA Ten Principles of a Public Defense Delivery System,* takes into account not

13  only a defender's numerical caseload, but also factors like the complexity of defenders' cases,

14  their skills and experience, and the resources available to them.  Workload controls may require

15  flexibility to accommodate local conditions.  Due to this complexity, an independent monitor

16  would provide the Court with indispensible support in ensuring that the remedial purpose of

17  workload controls is achieved.

18          The Washington State Bar's Standards for Indigent Defense, incorporated by its Supreme

19  Court in its criminal rules, considers the importance of workloads in evaluating the efficacy of

20  defender services.  Washington's move to implement workload controls is a welcome

21  recognition of its obligation under *Gideon*.  The United States recognizes that these standards are

22  the result of work commenced at least since 2003 by the Washington State Bar Association's

23  Blue Ribbon Commission on Criminal Defense and supported by the State Legislature, the

24

25

---

[1] For example, Arizona, Georgia, and New Hampshire have specific caseload limitations.  A number of states have "soft" caseload caps by using a weighted system.  See attached Exhibit 1 for a description of select jurisdictions.

Washington Defender Association, and the Washington Association of Prosecuting Attorneys, among others.  These workload controls are scheduled to go into effect October 2013.[2]

## INTEREST OF THE UNITED STATES

The United States has authority to file this Statement of Interest pursuant to 28 U.S.C. § 517, which permits the Attorney General to attend to the interests of the United States in any case pending in federal court.  The United States has an interest in ensuring that all jurisdictions—federal, state, and local—are fulfilling their obligation under the Constitution to provide effective assistance of counsel to individuals facing criminal charges who cannot afford an attorney, as required by *Gideon v. Wainwright*, 372 U.S. 335 (1963).  The United States can enforce the right to counsel in juvenile delinquency proceedings pursuant the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 (Section 14141).  As noted above, the United States is currently enforcing Section 14141's juvenile justice provision through a comprehensive out-of-court settlement with Shelby County.[3]  An essential piece of the agreement, which is subject to independent monitoring, is the establishment of a juvenile public defender system with "reasonable workloads" and "sufficient resources to provide independent, ethical, and zealous representation to Children in delinquency matters."  *Id.* at 14-15.

As the Attorney General recently proclaimed, "It's time to reclaim Gideon's petition – and resolve to confront the obstacles facing indigent defense providers."[4]  In March 2010, the Attorney General launched the Access to Justice Initiative to address the access-to-justice crisis. Indigent defense reform is a critical piece of the office's work, and the Initiative provides a

---

[2] The United States does not by this mean to endorse or detract from the efforts of these entities.
[3] Mem. of Agreement Regarding the Juvenile Court of Memphis and Shelby Counties, Tennessee (2012), *available at* http://www.justice.gov/crt/about/spl/findsettle.php.
[4] Attorney General Eric Holder Speaks at the Justice Department's 50th Anniversary Celebration of the U.S. Supreme Court Decision in *Gideon v. Wainwright*, March 15, 2013, *available at* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-1303151.html.

centralized focus for carrying out the Department's commitment to improving indigent defense.[5]
The Department has also sought to address this crisis through a number of grant programs.[6]  The
most recent is a 2012 $1.2 million grant program, *Answering Gideon's Call: Strengthening
Indigent Defense Through Implementing the ABA Ten Principles of a Public Defense Delivery
System* administered by the Bureau of Justice Assistance.[7]  In light of the United States' interest
in ensuring that any constitutional deficiencies the Court may find are adequately remedied, the
United States files this Statement of Interest on the availability of injunctive relief.

## BACKGROUND

The Plaintiffs' claims of deprivations of the right to counsel, if meritorious, are part of a
crisis impacting public defender services nationwide.  Fifty years ago, the Supreme Court held
that "any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial
unless counsel is provided for him."  *Gideon*, 372 U.S. at 344.  And yet, as the Attorney General
recently noted, "despite the undeniable progress our nation has witnessed over the last
half-century—America's indigent defense systems continue to exist in a state of crisis," and "in
some places—do little more than process people in and out of our courts."[8]

Our national difficulty to meet the obligations recognized in *Gideon* is well documented.[9]
*See*, *e.g*. ABA Standing Committee on Legal Aid and Indigent Defendants Report, *Gideon's
Broken Promise:  America's Continuing Quest for Equal Justice*, (December 2004).  Despite

---

[5] The office works with federal agencies, and state, local, and tribal justice system stakeholders to increase access to counsel, highlight best practices, and improve the justice delivery systems that serve people who are unable to afford lawyers.  More information is available at http://www.justice.gov/atj/.
[6] *See* Government Accountability Office, *Indigent Defense: DOJ Could Increase Awareness of Eligible Funding* 11-14 (May 2012), *available at* http://www.justice.gov/atj/idp/.
[7] Grants have been awarded to agencies in Texas, Delaware, Massachusetts, and Michigan.
[8] Attorney General Eric Holder Speaks at the American Film Institute's Screening of *Gideon's Army*, June 21, 2013, *available at* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130621.html.
[9] In March 2013, the Yale Law Journal held a symposium on the challenges of meeting Gideon's promise and published resulting articles in its most recent issue.  *See* 122 Yale L.J. __ (June 2013).

long recognition that "the proper performance of the defense function is . . . as vital to the health of the system as the performance of the prosecuting and adjudicatory functions," Attorney General's Committee on Poverty and the Administration of Federal Criminal Justice, *Final Report* 11 (1963), public defense agencies nationwide remain at a staggering disadvantage when it comes to resources.  Steven W. Perry & Duren Banks, U.S. Bureau of Justice Statistics, *Prosecutors in State Courts, 2007 Statistical Table*s 1 (2012) (noting that prosecution offices nationwide receive about 2.5 times the funding that defense offices receive); National Right to Counsel Committee, *Justice Denied: America's Continuing Neglect of Our Constitutional Right to Counsel* 61-64 (2009) (collecting examples of funding disparities).

Due to this lack of resources, states and localities across the country face a crisis in indigent defense.  Cara H. Drinan, *The Third Generation of Indigent Defense Litigation*, 33 N.Y.U. Rev. L. & Soc. Change 427 (2009) (describing crises nationwide).  In many states, remedying the crisis in indigent defense has required court intervention.  *E.g.*, *State v. Citizen*, 898 So.2d 325 (La. 2005); *Hurrell-Harring v. New York*, 930 N.E.2d 217 (N.Y. 2010); *Missouri Public Defender Comm'n v. Waters*, 370 S.W.3d 592 (Mo. 2012).  The crisis in indigent defense extends to misdemeanor cases where many waive their right to counsel and end up unnecessarily imprisoned.  NACDL, *Minor Crimes, Massive Waste* 21 (2009).[10]

### DISCUSSION

It is the position of the United States that it would be lawful and appropriate for the Court to enter injunctive relief if this litigation reveals systemic constitutional deficiencies in the Defendants' provision of public defender services.  Indeed, the concept of federal oversight to address the crisis in defender services has gained momentum in recent years.  *See, e.g,. Gideon's*

---

[10] The report is available at http://www.opensocietyfoundations.org/reports/minor-crimes-massivewaste.

U.S. Statement of Interest
Case No. C11-01100 RSL
- 5 -
U.S. Department of Justice
Civil Rights Division, Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
(202) 514-2000

1

2    *Broken Promise*, *supra*, at 41-42 (recommending federal funding); Drinan, *The Third Generation*

3    *of Indigent Defense Litigation*, *supra* (arguing federal judges are well suited to address systemic

4    Sixth Amendment claims); Note, *Gideon's Promise Unfulfilled: The Need for Litigated Reform*

5    *of Indigent Defense*, 113 Harv. L. Rev. 2062 (2000) (advocating systemic litigation).   (Again,

6    the United States takes no position on the merits of the underlying suit.)

7    **I.     The Court Has Broad Authority to Enter Injunctive Relief, Including the**
         **Appointment of an Independent Monitor, if It Finds a Deprivation of the Right to**
8        **Counsel.**

9            If Plaintiffs prevail on the merits of their claims, or as part of a consent decree, this Court

10   has broad authority to order injunctive relief that is adequate to remedy any identified

11   constitutional violations within the Cities' defender systems.  *Swann v. Charlotte-Mecklenburg*

12   *Bd. of Educ.*, 402 U.S. 1, 15 (1971); *see also Thomas v. County of Los Angeles*, 978 F.2d 504,

13   509 (9th Cir. 1992) (noting that courts have power to issue "broad injunctive relief" where there

14   exist specific findings of a "persistent pattern of [police] misconduct").  When crafting injunctive

15   relief that requires state officials to alter the manner in which they execute their core functions, a

16   court must be mindful of federalism concerns and avoid unnecessarily intrusive remedies.

17   *Labor/Community Strategy Center v. Los Angeles County*, 263 F.3d 1041, 1050 (9th Cir. 2001).

18   Courts have long recognized—across a wide range of institutional settings—that equity often

19   requires the implementation of injunctive relief to correct unconstitutional conduct, even where

20   that relief relates to a state's administrative practices.  *See, e.g.*, *Brown v. Plata*, 131 S. Ct. 1910

21   (2011) (upholding injunctive relief affecting State's administration of prisons); *Brown v. Bd. of*

22   *Educ.*, 349 U.S. 294 (1955) (upholding injunctive relief affecting State's administration of

23   schools).  Indeed, while courts "must be sensitive to the State's interest[s]," courts "nevertheless

24

25

must not shrink from their obligation to 'enforce the constitutional rights of all persons.'" *Plata*, 131 S. Ct. at 1928 (quoting *Cruz v. Beto,* 405 U.S. 319, 321 (1972)).

In crafting injunctive relief, the authority of the Court to appoint a monitor is well established. *Eldridge v. Carpenters 46*, 94 F.3d 1366 (9th Cir. 1996) (holding that district court's failure to appoint a monitor was an abuse of discretion where defendant insisted on retaining a hiring practice already held to be unlawfully discriminatory); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 543 (9th Cir. 1987); *Madrid v. Gomez*, 889 F. Supp. 1146, 1282 (N.D. Cal. 1995) (holding that the "assistance of a Special Master is clearly appropriate" because "[d]eveloping a comprehensive remedy in this case will be a complex undertaking involving issues of a technical and highly charged nature").

II.   **Appointment of an Independent Monitor Is Critical to Implementing Complex Remedies to Address Systemic Constitutional Violations.**

In the experience of the United States, appointing a monitor can provide substantial assistance to courts and parties and can reduce unnecessary delays and litigation over disputes regarding compliance. This is especially true when institutional reform can be expected to take a number of years. A monitor provides the independence and expertise necessary to conduct the objective, credible analysis upon which a court can rely to determine whether its order is being implemented, and that gives the parties and the community confidence in the reform process. A monitor will also save the Court's time.

In Grant County, Washington, an independent monitor was essential to implementing the court's injunction in a right-to-counsel case. *Best et al. v. Grant County*, No. 04-2-00189-0 (Kittitas Cty. Sup. Ct., filed Dec. 21, 2004). There, the monitor assisted the court and parties for almost six years by conducting site visits, assessing caseloads, and completing quarterly reports on the County's compliance with court orders. We note that the monitor's term in Grant County

U.S. Statement of Interest
Case No. C11-01100 RSL

- 7 -

U.S. Department of Justice
Civil Rights Division, Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
(202) 514-2000

was limited from the outset to a defined period, and the monitor's final report noted work that

still remained to be done.[11] In our experience, it is best to continue monitoring arrangements

until the affected parties have demonstrated sustained compliance with the court's orders.

In 2009, the United States entered a Memorandum of Agreement with King County, Washington to reform the King County Correctional Facility. *United States v. King County, Washington*, No. 2:09-cv-00059 (W.D. Wash., filed Jan. 15, 2009).  That successful reform process was assisted by an independent monitor.  Other significant cases involving monitors include: *United States v. City of Pittsburgh*, No. 97-cv-354 (W.D. Pa., filed Feb. 26, 1997) (police; compliance reached in 1999); *United States v. Dallas County*, No. 3:07-cv-1559-N (N.D. Tex., filed Nov. 6, 2007) (jail); *United States v. Delaware*, No. 1-11-cv-591 (D. Del., filed Jun 6, 2011) (mental health system); *United States v. City of Seattle*, No. 12-cv-1282 (W.D. Wash., filed July 27, 2012)(police).  In each of these cases, the independent monitor improved efficiency in implementation, decreased collateral litigation, and provided great assistance to the court.[12]

The selection of a monitor need not be a strictly top-down decision by the Court.  The parties may agree on who should fill the role of the monitor, but if they cannot, the Court can order them to nominate monitor candidates for the Court's consideration.  In addition, it should be noted that the cost of an independent monitor, however it is paid, should not reduce the funds available for indigent defense.

Finally, it should be noted that the appointment of an independent monitor can ensure public confidence in the reform process.  With allegiance only to the Court and a duty to report its findings accurately and objectively, the monitor assures the public that the Cities will move

---

[11] The monitor's final report and two of its quarterly reports are attached as Exhibit 2.
[12] Summaries of those cases, relevant pleadings, and reports from the monitors can be found at http://www.justice.gov/crt/about/spl/findsettle.php.

forward in implementing the Court's order, and will not escape notice if they do not.  Moreover,

the Cities' progress towards implementing the Court's order will be more readily accepted by a

broader segment of the public if that progress is affirmed by a monitor who is responsible for

confirming each claim of compliance asserted by the Cities.

### III.  If the Court Finds Liability in this Case, its Remedy Should Include Workload Controls, Which Are Well-Suited to Implementation by an Independent Monitor.

Achieving systemic reform to ensure meaningful access to counsel is an important, but

complex and time-consuming, undertaking.  Any remedy imposed by the Court may require

years of assessment to determine whether it is accomplishing its purpose, and the Court and the

parties may need independent assistance to resolve concerns about compliance.

One source of complexity will be how the Court and parties assess whether public

defenders are overburdened.  In its Order for Further Briefing, the Court asked about "hard"

caseload standards, which provide valuable, bright-line rules that define the outer boundaries of

what may be reasonably expected of public defenders.  *ABA Ten Principles*, *supra*.  However,

caseload limits alone cannot keep public defenders from being overworked into ineffectiveness;

two additional protections are required.  First, a public defender must have the authority to

decline appointments over the caseload limit.  Second, caseload limits are no replacement for a

careful analysis of a public defender's *workload*, a concept that takes into account all of the

factors affecting a public defender's ability to adequately represent clients, such as the

complexity of cases on a defender's docket, the defender's skill and experience, the support

services available to the defender, and the defender's other duties.  *See id*.  Making an accurate

assessment of a defender's workload requires observation, record collection and analysis,

interviews with defenders and their supervisors, and so on, all of which must be performed

quarterly or every six months over the course of several years to ensure that the Court's remedies

are being properly implemented.  The monitor can also assess whether, regardless of workload, defenders are carrying out other hallmarks of minimally effective representation, such as visiting clients, conducting investigations, performing legal research, and pursuing discovery.  ABA Standing Committee on Legal Aid and Indigent Defendants, *Eight Guidelines of Public Defense Workloads* (August 2009).  These kinds of detailed inquiries, carried out over sufficient time to ensure meaningful and long-lasting reform, are critical to assessing whether the Cities are truly honoring misdemeanor defendants' right to counsel, and they can be made most efficiently and reliably by an independent monitor.  As shown in Exhibit 2, these are the kinds of inquires made by the independent monitor in the Grant County, Washington case.  Also, should non-compliance be identified, early and objective detection by the monitor, as well as the identification of barriers to compliance, allow the parties to undertake corrective action.

An independent monitor may also obviate the need for the Court to dictate specific and rigid caseload requirements.  In the Shelby County juvenile justice enforcement matter, for example, the County is required to establish a juvenile defender program that provides defense attorneys with reasonable workloads, appropriate administrative supports, training, and the resources to provide zealous and independent representation to their clients, but the agreement does not specify a numerical caseload limit.  *See* Mem. of Agreement at 14-15.

## CONCLUSION

Should the Court find for the Plaintiffs, it has broad powers to issue injunctive relief. That power includes the authority to appoint an independent monitor who would assist the Court's efforts to ensure that any remedies ordered are effective, efficiently implemented, and achieve the intended result.

1

2                                       Respectfully submitted,

3                                       JOCELYN SAMUELS*
                                        Acting Assistant Attorney General
4                                       Civil Rights Division
                                        United States Department of Justice
5

6                                       ROY L. AUSTIN, JR. (DC 980360)*
                                        Deputy Assistant Attorney General
7                                       Civil Rights Division

8    Of Counsel:                        JONATHAN M. SMITH (DC 396578)
     Deborah Leff (DC 941054)*          Chief
9    Acting Senior Counselor for        Civil Rights Division
     Access to Justice                  Special Litigation Section
10   Telephone: (202) 514-7073
     deborah.leff@usdoj.gov             JUDY C. PRESTON (MD)*
11                                      Principal Deputy Chief
     Larry Kupers (DC 492450)*          Civil Rights Division
12   Senior Counsel                     Special Litigation Section
     Access to Justice
13   Telephone: (202) 514-7173             __/s/ Winsome G. Gayle_____
     Larry.B.Kupers@usdoj.gov           WINSOME G. GAYLE (NY 3974193)*
14                                      Trial Attorney
                                        Civil Rights Division
15                                      Special Litigation Section
                                        Winsome.Gayle@usdoj.gov
16
                                           __/s/_Paul Killebrew_____
17                                      PAUL KILLEBREW (LA 32176)*
                                        Trial Attorney
18                                      Civil Rights Division
                                        Special Litigation Section
19                                      Paul.Killebrew@usdoj.gov

20                                      950 Pennsylvania Avenue, NW
                                        Washington, DC  20530
21                                      Telephone:  (202) 514-2000
                                        Facsimile:  (202) 514-6273
22
                                        *Attorneys for the United States of America*
23
                                        *Conditional Admission is Pending
24

25

U.S. Statement of Interest                                    U.S. Department of Justice
Case No. C11-01100 RSL              Civil Rights Division, Special Litigation Section
                                                            950 Pennsylvania Avenue, NW
                                                                 Washington, D.C. 20530
                                                                        (202) 353-1077

1

2                        **CERTIFICATE OF SERVICE**

3          I hereby certify that on August 14, 2013, a copy of the foregoing was filed electronically.

4   Notice of this filing will be sent by email to all parties by operation of the Court's electronic
    filing system. Parties may access this filing through the Court's CM/ECF System.

5
                                         __/s/_ Winsome G. Gayle_____
6                                        WINSOME G. GAYLE*
                                         Trial Attorney
7                                        Civil Rights Division
                                         Special Litigation Section
8                                        U.S. Department of Justice
                                         950 Pennsylvania Avenue, NW
9                                        Washington, DC  20530
                                         Telephone:  (202) 514-2000
10                                       Facsimile:  (202) 514-6273
                                         Winsome.Gayle@usdoj.gov
11
                                         *Attorney for the United States of America*
12
                                         * Conditional Admission is Pending
13

14

15

16

17

18

19

20

21

22

23

24

25