UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
JOSEPH JEROME WILBUR, *et al.*,

                  Plaintiffs,

      v.

CITY OF MOUNT VERNON, *et al.*,

                  Defendants.
_____

No. C11-1100RSL

ORDER AWARDING FEES AND COSTS

This matter comes before the Court on "Plaintiffs' Motion for Award of Attorneys' Fees and Expenses." Dkt. # 331. Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

Plaintiffs prevailed at trial, convincing a skeptical fact finder that the system of public defense in Mount Vernon and Burlington was constitutionally deficient, that the adjustments the Cities made mid-litigation did not remedy the situation, and that injunctive relief was necessary to ensure that indigent criminal defendants have the assistance of counsel to which they are entitled. Because no monetary relief was requested, plaintiffs' counsel essentially litigated the case on a pro bono basis. Plaintiffs request an award of $2,439,081.52 in fees plus $43,496.50 in expenses as prevailing parties under 42 U.S.C. § 1988.

Section 1988 authorizes an award of "reasonable attorney's fees" in order to

---

[1] This matter can be decided on the papers submitted. Plaintiffs' request for oral argument is DENIED. The Court further finds that notice to the class regarding this motion is unnecessary.

ORDER AWARDING FEES AND COSTS

encourage individuals and attorneys to take on the burden of vindicating "important civil and constitutional rights that cannot be valued solely in monetary terms." City of Riverside v. Rivera, 477 U.S. 561, 574 (1986). See also S. Rep. No. 94-1011, at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5910 ("If private citizens are to be able to assert their civil rights, and if those who violate the Nation['s] fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court."). In determining a presumptively reasonable fee amount, courts apply the lodestar method of multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013).

**A. Reasonable Hourly Rates**

An hourly rate is reasonable if it falls within the range of "prevailing market rates in the relevant community" given "the experience, skill, and reputation of the attorney." Dang v. Cross, 422 F.3d 800, 813 (internal citations omitted). "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). In this case, class counsel have set forth their education, years of experience, practice areas, normal hourly rates, and contribution to the litigation. They have also provided declarations from three experienced and respected members of the bar of this Court to the effect that the rates charged by class counsel are reasonable based on their years of experience and the prevailing range of rates in the Seattle/Tacoma legal community. Two of the three declarants are managing partners of their law firms, one of whom shares responsibility for reviewing the prevailing rates charged in the market and periodically adjusting his firm's rates accordingly. All three declarants agree that experienced, well-regarded, civil litigators in this community can charge hourly rates above those charged in this case. Of particular relevance is evidence that partners working on behalf of plaintiffs in civil rights cases charge between $400 and $600 per

hour on both hourly and contingent bases. The rates charged by associates varies greatly with years of experience, but the evidence shows that large and mid-sized firms in the area can charge up to $300 per hour for the work of their associates.[2]

Defendants, for their part, offer evidence showing that their counsel charged $250-265 per hour in this litigation and that other respected and experienced defense lawyers charge $250-275 for their services. While it is undisputed that attorneys who defend civil rights lawsuits for municipalities charge less than $300 per hour, the economic forces that drive that market – including taxpayer financing, long-term defense contracts, and the likelihood of recurring business – are substantially different from the circumstances in which a plaintiff or class of plaintiffs seeks counsel to help them vindicate their rights. Trevino v. Gates, 99 F.3d 911, 925 (9th Cir. 1996) ("Private attorneys hired by [the] government . . . are not in the same legal market as private plaintiff's attorneys who litigate civil rights cases.").[3] Defendants do not challenge plaintiffs' evidence regarding the fees charged when pursuing consumer protection, wage, or employment discrimination claims. Rather, they argue that civil rights litigation is fundamentally different in some way, such that a different prevailing market rate applies. Whether the cause of action arises under § 1983, Title VII, the Fair Labor Standards Act, or a consumer protection statute, the individual or class of individuals is seeking to vindicate their rights. The scope of work and the services rendered by plaintiffs' counsel are very similar regardless of the source of the rights. Defendants offer no analysis to support their argument that the market for representation in a civil rights case varies significantly from the market related to these other statutory and constitutional claims.

---

[2] Although one of the declarants is of the opinion that Ms. Fisher's charge of $330 per hour is reasonable, the market data provided suggests that associates with four years of experience are generally billed at a lower rate (somewhere around $260 per hour).

[3] The Court does not, therefore, find Higher Taste v. City of Tacoma, C10-5252BHS (Dkt. # 65) (W.D. Wash. Sept. 3, 2013), persuasive.

ORDER AWARDING FEES AND COSTS         -3-

To the extent defendants are implying that persons complaining of excessive force or the deprivation of counsel under § 1983 are simply too poor to pay the market rates, that is exactly why Congress enacted § 1988 – to ensure that they can find competent counsel to help them vindicate important rights. The fact that counsel did not charge the indigent members of the plaintiff class for their services does not and cannot mean that a reasonable rate for those services was $ 0. "Determination of a reasonable hourly rate is not made by reference to rates actually charged the prevailing party." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986). The reasonable rate for the lodestar analysis, as discussed above, is based on the prevailing market rate for similar services by lawyers of comparable experience, skill, and reputation. Where there is a divergence between the rate negotiated with an individual client and the prevailing market rate, the market rate governs. Welch v. Metropolitan Life Ins. Co., 480 F.3d 942 (9th Cir. 2007).

Nor is the Court persuaded that awards in other civil rights actions compel the conclusion that $250 or $275 is always the rate at which these cases should be compensated in this community. First, for every Levine v. City of Bothell, C11-1280MJP, in which a fee of $250 per hour was found reasonable, there is an Ostling v. City of Bainbridge Island, C11-5219RBL, in which a survey of attorneys in the greater Seattle area (including one of the law firms involved here) led to an award of $550 per hour. Second, the low rate allowed in Levine was the result of a number of factors not present in this case: prevailing counsel failed to provide any evidence in support of his fee request other than his own declaration, he had previously stated that his hourly rate was only $275, and Judge Pechman was obviously unimpressed with counsel's performance during the litigation. Levine, C11-1280MJP (Dkt. # 74 at 2) (W.D. Wash. Jan. 15, 2013). In this case, class counsel has presented sufficient evidence of the prevailing market rate for prosecuting a civil rights lawsuit, and there is no reason to suspect that counsel fall outside of the category of "experienced, skilled, and respected" litigators referenced in the declarations. In fact, the quality of the representation afforded by class counsel

ORDER AWARDING FEES AND COSTS             -4-

throughout the proceeding was superb. The Court has no trouble concluding that counsel's experience, skill, and reputation would command the highest hourly rate that the market would bear. Finally, the complexity of this litigation was significant, requiring nuanced analyses of the Sixth Amendment case law, privilege and representational issues, and theories of municipal liability in the context of a systemic challenge to a system of public defense. The market would compensate attorneys providing comparable services at the top of the market range.

The Court finds that class counsel's hourly rates are generally within the prevailing market range. Counsel shall be compensated for the reasonable hours billed at the following rates:

| Attorney | Rate |
|---|---|
| Matthew Zuchetto | $330 |
| Toby Marshall | $375 |
| Jennifer Rust Murray | $285 |
| Nancy Talner | $400 |
| Sarah Dunne | $380 |
| James F. Williams | $580 |
| J. Camille Fisher | $260 |
| Beau C. Haynes | $190 |
| Breena M. Roos | $465 |
| Erika L. Nusser | $225 |

With regards to support staff, plaintiffs have provided the education, years of experience, skills, contributions, and hourly rate of each individual. They have not, however, provided any indication of the prevailing market rate for comparable paralegals, legal assistants, and law clerks. Defendants do not oppose a rate of $90 per hour or a lower requested rate. Thus, support staff will be billed at the following rates:

ORDER AWARDING FEES AND COSTS          -5-

| | | |
|---|---|---|
| | Brianna Bledsoe | $90 |
| | Jennifer L. Boschen | $90 |
| | Kristy Bergland | $90 |
| | Bradford Kinsey | $90 |
| | Joel Y. Higa | $90 |
| | Adam Webster | $80 |
| | Christine Stanley | $90 |

**B. Reasonable Hours Expended**

In order to determine the number of hours to be compensated, the Court must consider "whether, in light of the circumstances, the time could reasonably have been billed to a private client." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). The Court starts with counsel's billing records, then makes deductions for hours that were not reasonably billed, such as those that are "excessive, redundant, or otherwise unnecessary." Gonzalez, 729 F.3d at 1202-03 (quoting McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir. 2008)). Defendants seek reductions in the number of hours to account for redundant staffing decisions (attributed to the pro bono nature of the representation), unnecessary motions, and pre-litigation investigative activities. Defendants also seek the wholesale exclusion of any fees that were block-billed, related to the fee petition, or reflect counsels' overhead expenses rather than the costs of litigation.[4]

**1. Redundant Staffing**

Plaintiffs' counsel have already excluded from the fee petition approximately 18% of their hours after determining that they were duplicative or otherwise could have been spent more efficiently. Defendants identify additional entries as unnecessary or duplicative, focusing

---

[4] In their margin notes on the billing records, defendants also point out a duplicative entry on September 17, 2012. The second entry for 2.1 hours of Mr. Marshall's time will be deleted.

ORDER AWARDING FEES AND COSTS     -6-

primarily on the time it took for each new timekeeper to review the file (*e.g.*, entries on 4/11/11 and 7/29/11), instances in which more than one timekeeper reviewed a document or researched an issue (*e.g.*, entries on 7/5/11 and 5/10/12), multiple billings for meetings or activities in which multiple timekeepers participated (*e.g.*, entries on 8/1/11 and 7/27/12), and time spent keeping abreast of the activities of other timekeepers (*e.g.*, entries on 11/28/11 and 12/1/11).  While the Court is left with the overall impression that counsel managed this case efficiently and professionally, it is clear that having four separate organizations involved occasionally resulted in duplication of effort and, at the very least, required many hours of conferencing and correspondence in order to keep everyone informed and on the same page.  If this case were being contemporaneously billed to a paying client, such duplication and oversight would likely have been excised by cutting the hours of junior timekeepers or not billing the hours spent updating the senior partner on the case.  On the other hand, complex litigation often involves issues and tasks that require the expertise and participation of a number of individuals:  some duplication is necessary to produce top notch work product and to achieve success in the litigation.  Ultimately, the line between necessary and unnecessary duplication is not bright, but where the timekeeping entry reveals little more than plaintiff-side communication with no strategic input from, substantive value added by, or action items assigned to the timekeeper, the time has been cut.  After reviewing the specific entries to which defendants raised objection, a total of 219 additional hours have been cut from the various timekeeper's records.

**2.  Unnecessary Motions**

Class counsels' written advocacy throughout the litigation was superb.  The Court would have to search the lengthy docket to find an argument, much less a motion, that was asserted by plaintiffs and could legitimately be labeled "unnecessary."  Plaintiffs' submissions were eminently reasonable, especially in light of the litigation strategy adopted by defendants, and ultimately informed the way plaintiffs tried and won this case.

ORDER AWARDING FEES AND COSTS            -7-

### 3. Pre-Filing Investigation

There is no hard and fast rule against compensation for hours spent before the complaint is filed. "The time that is compensable under § 1988 is that reasonably expended *on the litigation*." Webb v. Bd. of Educ. of Dyer Cnty., 471 U.S. 234, 242 (1985) (emphasis in original, internal quotation marks omitted). Rule 11 requires counsel to perform a reasonable pre-filing inquiry to ensure that the claims asserted are warranted by both the law and the evidence: conducting this pre-filing inquiry is therefore a necessary part of the litigation and should be compensated. On the other hand, "it is difficult to treat time spent years before the complaint was filed as having been 'expended on the litigation' or to be fairly comprehended as 'part of the costs' of the civil rights action" for purposes of § 1988. Id.

A review of the billing records suggests that the first few months of counsels' investigation involved general research regarding indigent defense funding, reform, and systems in Washington and the potential claims and mechanisms available for correcting deficiencies. While it may be nothing more than a function of cryptic timekeeping entries, the first mention of Mount Vernon occurs at the beginning of 2011. The Court will not presume that generalized research regarding a particular area of law, unrelated to these defendants, was expended "on this litigation." A total of 45.05 hours expended before January 17, 2011, have been cut.

### 4. Block Billing

Where a timekeeper's billing entry identifies a number of activities but only a single block of time, it makes it very difficult for the Court to separate compensable hours from non-compensable hours and a reduction in the claimed hours may be justified. Mendez v. Cnty. of San Bernardino, 540 F.3d 1109, 1128-29 (9th Cir. 2008).[5] The vast majority of the entries to

---

[5] Even where all of the activities listed in the billing entry are recoverable, block-billing may have a tendency to increase the overall time recorded. If that is the case, the Court has the authority to reduce block-billed hours by an appropriate percentage to ensure that the hours are reasonable. Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007). Although defendants identify a number of time entries as "BB" with no other objection stated, they do not request or justify any particular

ORDER AWARDING FEES AND COSTS     -8-

which defendants object on this ground are either compensable or can be read in conjunction with the surrounding entries to accurately determine how much time was spent on a particular activity. Where the block-billing has made it impossible to differentiate between compensable and non-compensable time, the entry has been cut, for a total of 38.9 hours.

**5. Fees Related to the Fee Petition**

Defendants argue that hours related to the fee petition should be cut because the petition was unnecessary. The argument is factually and legally untenable. There is no rule or procedure which would have required plaintiffs to attempt to resolve the fee issues informally: they had only fourteen days in which to submit the petition and none of the meet and confer requirements apply. Nor is there any reason to suspect that the parties could have reached an agreement on the amount of fees. Defendants have raised numerous objections to the request and the parties remain almost $1.5 million apart in their estimations of the value of class counsels' services. The fee petition was necessary, and the hours expended are reasonable.

**6. Travel Time**

The travel time reflected in the entries is reasonable and would have been billed to a paying client. Grove v. Wells Fargo Fin. Cal., Inc., 606 F.3d 577, 580-81 (9th Cir. 2010). No reduction is warranted.

**7. Overhead Costs**

Defendants have identified a significant number of time entries that should be deleted because they reflect the overhead incurred by class counsel to operate their law firms/ organizations and would not normally be charged to a paying client. "Overhead" is generally defined as expenses related to the operation of the business that are normally subsumed in the attorneys' hourly rates rather than being billed as a separate line item. See Nadaraja v. Holder,

---

percentage reduction, instead asking that the Court simply exclude all block-billed hours. The case law does not support such a draconian reduction, which would be unrelated to the reasonableness of the hours expended on the identified tasks. Id.

1  569 F.3d 906, 921 (9th Cir. 2009).  Expenses such as rent, utilities, and stationary are
2  quintessential overhead costs:  they are not incurred because of or for an individual client, and
3  yet are necessary to counsel's ability to provide legal services.  Defendants argue that costs
4  related to parking, lodging, meals, postage, telephone, transportation expenses, and computer
5  research fall within the category of "overhead" and should be excluded.  These costs were
6  incurred because of the litigation, however, and defendants offer no legal or factual support for
7  the proposition that these costs constitute overhead or are not customarily billed to and paid by
8  clients.

9  Defendants also object to compensation for certain work performed by paralegals
10  and legal assistants.  This request has some merit.  Where a non-lawyer provides clerical support
11  (data manipulation, word processing, transmitting documents, etc.), clients would reasonably
12  expect that such tasks would be incorporated into the hourly rate charged by counsel.  Id.  If,
13  however, the non-lawyer provides services that involve legal concepts (substantively reviewing
14  documents, summarizing depositions, etc.), their work serves as a replacement for a more
15  expensive attorney and is appropriately billed.  See Missouri v. Jenkins by Agyei, 491 U.S. 274,
16  288 (1989).  Having reviewed defendants' objections, the Court finds that 17.8 hours were spent
17  performing clerical tasks that should not have been billed at an hourly rate.

18

19  For all of the foregoing reasons, the Court finds that the lodestar fee in this case is
20  $2,168,653.70 and the reasonable expenses come to $43,496.50.  Once a presumptively
21  reasonable fee amount is identified using the lodestar method, the court may adjust the amount
22  upwards or downward based on factors such as the results obtained and the level of success
23  compared with the initial claims.  "Where a plaintiff has obtained excellent results, his attorney
24  should recover a fully compensatory fee.  Normally this will encompass all hours reasonably
25  expended on the litigation, and indeed in some cases of exceptional success an enhanced award
26  may be justified."  Hensley v. Eckerhart, 461 U.S. 424, 434-35 (1983).  Given the scope of the

ORDER AWARDING FEES AND COSTS           -10-

1 | relief obtained and the overall excellence of class counsels' performance in this landmark
2 | litigation, they are entitled to a fully compensatory fee.

Dated this 15th day of April, 2014.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge